UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CASE NO. 5:07-CV-347-D

| | |
|---|---|
| LULU ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **PLAINTIFF'S MEMORANDUM** |
| ) | **OF LAW IN SUPPORT OF** |
| ) | **MOTION FOR** |
| N-F NEWSITE, LLC, ) | **PRELIMINARY INJUNCTION** |
| ) | |
| and ) | |
| ) | |
| HULU TECH, INC., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Lulu Enterprises, Inc. ("Lulu') Lulu seeks, through its motion for preliminary injunction, to protect its goodwill and reputation against Defendants' attempt to trade on its success and widespread public recognition, which Lulu achieved over a period of five years through dedicated service to its nearly 1.2 million registered subscribers. Defendants N-F NewSite, LLC and Hulu Tech, Inc. revealed their plans on August 29, 2007, when they announced that, beginning in October, they would offer products and services that are closely related, and are in some respects identical, to those that Lulu offers under its LULU names and marks. Defendants' announcement revealed that they would offer those products and services under the name and mark HULU.

Defendants' attempt to use a virtually identical name and mark to offer identical services smacks of a bad faith intent to confuse consumers and thereby divert from Lulu

present and future business opportunities for their own commercial gain. The harm to Lulu's business from this activity is severe and immediate, and threatens to undermine all that Lulu has achieved in the five years since its 2002 founding. Unless Defendants are enjoined from using the HULU names and marks, the continuing harm to Lulu will be irreparable. As explained in more detail below, Lulu is likely to succeed on all of its claims against Defendants, and therefore requests that the Court issue a preliminary injunction pending a trial on the merits of this action.

## FACTUAL BACKGROUND

Lulu is a Morrisville, North Carolina-based company engaged in web-based digital publishing and media distribution services. See Affidavit of Robert Young ("Young Aff.") ¶ 2. Lulu provides, under its distinctive LULU name and mark, and through related names and marks such as LULU.COM and LULU.TV, tools for content creators and owners to publish their work in digital format. Id. The LULU.COM website provides an online store for creators to sell their books, videos, and images to the public, while the LULU.TV website enables customers to view video, audio, images and podcast content in an arrangement whereby creators and owners receive a share of advertising revenue. Id.

Lulu's business has enjoyed great success since its inception in 2002. The company has nearly 1.2 million registered users of its services in more than 80 countries. Id. ¶ 4. LULU.COM has been a top 2500 worldwide website on Alexa.com, and in 2007, Lulu won a Web 2.0 Award as the best website for books. Id. LULU.TV has garnered widespread attention and publicity in both online and traditional local and national media, focusing on its LULU products and services. Id. ¶¶ 4, 5. Lulu continues to grow, as it

adds approximately 15,000 new registrations per week, and its website receives approximately 100,000 unique visitors every day. Id. ¶ 4.

In connection with its business, Lulu has used and promoted its LULU names and marks continuously since 2002. Lulu operates two websites incorporating its LULU mark—LULU.COM and LULU.TV—and it owns five applications for its LULU marks with the USPTO. Id. ¶¶ 7, 8.

On or about August 29, 2007, Defendant N-F NewSite, LLC ("NF") announced that it would begin using marks nearly identical to Lulu's marks—HULU and HULU.COM—to promote products and services that are closely related, and in some respects identical, to Lulu's services. Id. ¶ 10. To that end, on August 22, 2007 NF filed with the USPTO an application seeking to register the HULU mark for various products and services, among them:

> Broadcasting and streaming of audio-visual content in the fields of news, entertainment, sports, comedy, drama, music, and music videos via a global computer network; transmission of downloadable audio-visual content in the nature of full-length, partial-length, and clips from motion pictures, television programming, videos, music videos, and music . . . .
> \* \* \* \*
> [E]lectronic publishing services, namely publication of text, graphics, photographs, images, and audio-visual work of others; online electronic publishing services, namely publication of audio-visual content of others; online; production, distribution, and rental of audio-visual works in the fields of news, entertainment, sports, comedy, drama, music, and music videos; rental of video games . . . [and]
> \* \* \* \*
> Computer services, namely, providing a website featuring audio-visual content in the fields of news, entertainment, sports, comedy, drama, music, and music videos; providing a website featuring video and interactive games; hosting of digital content on the Internet; hosting and maintaining an online community featuring audio-visual content in the

3

> fields of news, entertainment, sports, comedy, drama, music, and music videos . . . .

Id. ¶ 11.  In addition, Defendant Hulu Tech, Inc. has registered the domain name HULU.COM, which it is currently using to promote Hulu's services.  Id. ¶ 13.

Media outlets and online blogs have already noted the striking similarity between LULU and HULU, commenting as follows:

- "Hulu's A Lulu Of A Name . . . 'Come on,' pleaded Forrester Research analyst James McQuivey.  'It sounds like they figured that all the good company names were already taken.'"  Gavin O'Malley, Hulu's a Lulu of a Name, Online Media Daily, Aug. 30, 2007 (available at http://publications.mediapost.com);

- "Hulu: NBC And Fox Hope It's a Real 'Lulu'"  Julia Boorstin, Hulu: NBC And Fox Hope It's a Real 'Lulu', CNBC.com, Aug. 29, 2007 (available at http://www.cnbc.com);

- "Reminds me of Lulu (what, with only one letter differentiating it)."  Posting of "Sam" to Mashable! - The Social Networking Blog, http://mashable.com (Aug. 29, 2007, 11:59:16); and

- "It also sounds a lot like Lulu, a custom online book publisher I've written about."  News Corp.-NBC site has a name: Hulu, Media Biz With Paul R. La Monica, http://mediabiz.blogs.cnnmoney.com (Aug. 29, 2007).

Young Aff. ¶ 14.  Given those comments, Lulu fears that Defendants' use of the HULU name and marks to promote closely related services will cause consumers, potential consumers, the general public, regulators, and the trade to mistakenly believe that Defendants are associated with Lulu, and that their HULU services are authorized or supplied by Lulu, or vice versa.  Id. ¶15.  Such confusion poses a devastating threat to Lulu's growing business, particularly given that Defendants are affiliated with NBC and News Corp.—two of the world's largest media outlets, either of which could broadly propagate the infringing HULU marks with relative ease.  Young Aff. ¶ 17.  To mitigate the confusion and harm that have already occurred, and to prevent future harm that could

severely injure its business, Lulu seeks to have Defendants' activities preliminarily enjoined, pending a trial on the merits of its claims.

## LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent the occurrence of irreparable harm not remediable by legal relief. See Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991). "The 'status quo' does not consist of a photographic replication of the circumstances existing at the moment suit was filed, but rather the last peaceable uncontested status that existed before the dispute arose." Faulkner v. Jones, 10 F.3d 226, 237-38 (4th Cir. 1993) (internal quotations omitted).

In Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977), the Fourth Circuit explained that a district court's first task in deciding whether to grant a motion for a preliminary injunction is to balance two factors: the threat of irreparable harm to the plaintiff should the court not issue an injunction, and the likely harm to the defendant if an injunction is ordered. See also Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997). After performing this balancing, the court then considers the third factor, which is the plaintiff's likelihood of success. See id. As the balance of harm moves in favor of the plaintiff, the plaintiff has a lesser burden in showing its likelihood of success. See id. Finally, the Court considers the fourth factor, the public interest. See id. "These four factors are to be weighed flexibly based on a sliding-scale approach; a strong showing by a party with regard to one factor reduces the need for that party to make a strong showing concerning other factors." WLR Foods, Inc. v. Tyson Foods, Inc., 861 F. Supp. 1277, 1281 (W.D. Va. 1994), aff'd, 65 F.3d 1172 (4th Cir. 1995), cert.

5

denied, 516 U.S. 1117 (1996) (citing Dan River, Inc. v. Icahn, 701 F.2d 278, 283 (4th Cir.1983)).

As explained further below, Lulu has amply satisfied the Fourth Circuit standards for injunctive relief.

## ARGUMENT

### I. LULU WILL SUFFER IRREPARABLE HARM IF NO INJUNCTION ISSUES

Defendants' use of the HULU mark and domain name have placed Lulu's goodwill, built over the five years since Lulu's founding in 2002, in immediate and continuing jeopardy. That Lulu has already suffered significant harm is undeniable: since Defendants' August 29, 2007 announcement, news articles and online blogs have repeatedly referred to Lulu's marks in ways that tend to suggest an association with Defendants' venture. Young Aff. ¶ 14. The impact of that mistaken impression on Lulu's reputation, and the stature of its award-winning website, cannot be underestimated. This harm to Lulu will continue and intensify so long as Defendants continue to use their offending marks. Through their unlawful actions, Defendants have effectively taken control of Lulu's goodwill, threatening to undo all that Lulu has achieved through five years of dedicated service to its nearly 1.2 million registered users.

The nature of the injury inflicted by Defendants' conduct gives significant weight to this factor in the Blackwelder analysis. The Fourth Circuit has recognized the irreparable nature of harm to a business's goodwill or future prospects. In Federal Leasing, Inc. v. Underwriters at Lloyd's, it explained that where "the continuation of [movant's] present predicament endangers its relations with customers and investors, the good will built up by a heretofore successful enterprise; such damage is 'incalculable . . .'" Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 500 (4th Cir. 1981)

(quoting Blackwelder, 550 F.2d at 197). See also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994) ("when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied").

Moreover, while the loss of future prospects and other monetary damages resulting from the harm inflicted by Defendants may, in some respects, be compensable (and, therefore, not irreparable), Lulu seeks to protect more than mere acceleration of compensable damages through its requested injunctive relief. Lulu seeks to protect the continuing viability of its business as a going concern. And indeed, "the right to continue a business is not measurable entirely in monetary terms." Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2nd Cir. 1970) (quoted with approval in Federal Leasing, 650 F.2d at 500).

## II. THE DEFENDANTS WILL SUFFER NO LEGALLY COGNIZABLE HARM IF AN INJUNCTION IS GRANTED

The injunctive relief sought by Lulu poses no risk of legally cognizable harm to Defendants—who have no legitimate interest in the continuing use of the infringing marks, and who, in any event, have yet to engage in any substantial commercial activity in connection with those marks. Lulu, for its part, seeks only to preserve the status quo ante pending the litigation of this action. See, e.g., Blackwelder, 550 F.2d at 194-95 ("the balance-of-hardship test correctly emphasizes that, where serious issues are before the court, it is a sound idea to maintain the status quo antie litem, provided that it can be done without imposing too excessive a burden upon the defendant, for otherwise effective relief may become impossible.").

Courts have recognized that any supposed "harm" an intellectual property infringer may suffer by virtue of having his activities enjoined is negligible in the balance-of-hardships analysis. Indeed, as the First Circuit recognized (in the related context of copyright infringement) in <u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600 (1st Cir. 1988), to hold otherwise would, in effect, protect an infringer's unlawful activity:

> Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense "merits little equitable consideration." "Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed" . . . . It would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted.

<u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600 (1st Cir. 1988) (citations omitted; quoting <u>Helene Curtis Indus. v. Church & Dwight Co.</u>, 560 F.2d 1325, 1333 (7th Cir.1977)). As explained in further detail below, there is a strong likelihood that Defendants' use of the HULU marks will be found to infringe upon Lulu's rights in its LULU marks. As a result, any supposed "harm" Defendants might suffer by virtue of being restrained from using the HULU marks cannot serve as a valid defense to Lulu's requested injunctive relief.

Any supposed harm to Defendants will also be minimal in light of the fact that Defendants are not using the HULU marks in connection with an established commercial enterprise. Rather, Defendants' business is in its infant stages, as is evidenced by their apparent plans to Beta test their web-based service beginning in October. Young Aff. ¶

10 & Ex. F. That an injunction would not interfere with any ongoing customer relationships thus further weighs in favor of Lulu's requested relief. See, e.g., Bowe Bell & Howell Co. v. Harris, 145 Fed. App'x 401, 404, 2005 WL 1655030, at *2 (4th Cir. 2005) (harm to defendants from injunction was relatively small where their business was "still evolving") (attached as Exhibit A).

### III. THE BALANCE OF HARDSHIPS WEIGHS DECIDEDLY IN LULU'S FAVOR

Defendants' continued use of the HULU marks threatens irreparable injury to Lulu's invaluable goodwill, and to its continuing operations as a successful, award-winning company, if an injunction does not issue. By contrast, if an injunction is granted, Defendants will, at most, be temporarily prevented from launching a business that is still in its infant stages, and that relies on conduct that is likely to be found unlawful in any event. The balance of hardships, therefore, weighs decidedly in Lulu's favor.

### IV. LULU IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

Where, as here, the balance of hardships tips decidedly in favor of the plaintiff, a preliminary injunction should issue "if, at least, grave or serious questions are presented" as to the merit's of the plaintiff's claims. North Carolina State Ports. Auth. v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir. 1979); see also Direx Israel, 952 F.2d at 812. Although Lulu need only raise serious questions that go to the merits of its claims, Lulu in fact can demonstrate that it is highly likely to succeed on the merits of those claims.

> A. **Lulu will Likely Prove That Defendants Are Engaging In False Designation of Origin and Unfair Competition in Violation of 15 U.S.C. § 1125(a).**

To prevail on its claims of false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), Lulu need only show that it has "a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." Synergistic Intern., LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006) (quoting Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir.1995)).

### 1. Lulu's LULU marks are valid and protectible.

Lulu's ownership of valid and protectible marks is indisputable. Lulu has used the LULU marks in commerce continuously since 2002, and is the owner of five federal trademark applications for those marks. Young Aff. ¶ 7. As to those marks' distinctiveness, the LULU marks fall into the category of "arbitrary" marks—those that are "comprised of words in common usage, but, because they do not suggest or describe any quality, ingredient, or characteristic of the goods they serve, are said to have been arbitrarily assigned." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996). As arbitrary marks, the LULU marks are considered "inherently distinctive, and thus receive the greatest protection against infringement." Id.

LULU's marks, moreover, have also acquired strong secondary meaning, as is evidenced by their widespread use and promotion, and recognition by news media outlets and industry organizations. Young Aff. ¶¶ 4, 6. See Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245, 1248 (4th Cir. 1970) (plaintiff's mark had acquired strong secondary meaning where company had expended significant sums in promoting its

services under the mark, had used the mark to make millions of dollars in sales, and national magazines and newspapers had frequently referred to plaintiff by its trade name).

### 2. Defendants' Use of the HULU marks is likely to cause confusion among consumers

Having established its interest in valid and protectible trademarks, Lulu will also be able to establish that Defendants' use of the HULU marks is likely to cause confusion among consumers. To aid in determining whether a defendant's use of a mark is likely to cause confusion among consumers, the Fourth Circuit has identified seven factors that should be considered:

(1) the strength or distinctiveness of the plaintiff's mark;

(2) the similarity of the two marks;

(3) the similarity of the goods and services that the marks identify;

(4) the similarity of the facilities that the two parties use in their businesses;

(5) the similarity of the advertising the two parties use;

(6) the defendant's intent; and

(7) actual confusion.

Synergistic Intern., 470 F.3d at 170-71 (quoting Lone Star Steakhouse, 43 F.3d at 933). "Not all of these factors will be relevant in every trademark dispute, and there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue." Id. Here, virtually all of those factors demonstrate that Defendants' use of the HULU marks is likely to cause confusion among consumers.

#### a. Strength and Distinctiveness of Lulu's Marks

As set forth above, Lulu's LULU marks are inherently distinctive, and have acquired considerable strength by virtue of Lulu's success and widespread recognition in

11

the news media. The attention and publicity that Lulu and its marks have received demonstrate conclusively that the LULU marks satisfy this factor. See Young Aff. ¶ 4.

### b. Similarity of the Two Marks

Defendants' HULU marks—HULU and HULU.COM, are nearly identical to Lulu's marks in both appearance and sound. Indeed, marks bearing less resemblance have been held to be confusingly similar and thus satisfy this factor. For example, in Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., the court found that the defendant's "Lollipops" mark was confusingly similar to the plaintiff's "Jellibeans" mark based in part on the "aural similarity" between the two marks, noting that "each name has three syllables, with an 'l' sound dividing the first and second syllables, and an 'e' sound dividing the second and third syllables, and that each name ends in a plural 's.'" Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 842 (11th Cir.1983) (applying the "likely to confuse" test under 15 U.S.C. § 1125).

Here too, there is a strong aural and visual similarity between the LULU and HULU marks: each has two syllables and four letters, and each ends with "ulu." The only difference between the marks being the first letter, this factor is clearly satisfied. In the words of Hulu CEO, Jason Kilar, "Why Hulu? Objectively, Hulu is short, easy to spell, easy to pronounce, and rhymes with itself." Young Aff. Ex. F. Incidentally, in each of these same respects that Defendants deem so important, Hulu is also identical to Lulu.

### c. Similarity of goods and services identified by the marks

Perhaps the most troubling aspect of Defendants' use of the HULU marks is that they apparently plan to use those marks to promote goods and services that are, at least in

some respects, virtually identical to those provided by Lulu. Lulu's business consists primarily of hosting digital content from publishers and owners, including authors, educators, video makers, musicians, businesses, professionals, and amateurs, enabling them to bring their products and services to their markets online via the Internet. Young Aff. ¶ 3. Lulu provides online publishing tools that content creators and owners can use to publish their works in digital format, and then enables those creators and owners to distribute that content through its dedicated marketplace, custom storefronts and advanced listing and distribution services. Id.

As explained in Defendants' August 22, 2007 application to the USPTO, Defendants intend to provide, under the HULU marks, "Education and entertainment services" that include "online electronic publishing services, namely publication of audio-visual content of others; online; production, distribution, and rental of audio-visual works in the fields of news, entertainment, sports, comedy, drama, music, and music videos;" and "Computer services" that include "hosting of digital content on the Internet, hosting and maintaining an online community featuring audio-visual content in the fields of news, entertainment, sports, comedy, drama, music, and music videos." Young Aff. ¶ 11. In short, Defendants' plan to offer, under the HULU marks, the very same services that Lulu currently provides to its nearly 1.2 million users under its LULU marks. This factor therefore strongly favors a finding of unfair competition under 15 U.S.C. § 1125(a).

        **d.**      **Similarity of facilities used by parties' businesses**

Defendants' stated intent to use the HULU marks in connection with "online electronic publishing services" and the "hosting of digital content on the internet"

confirms that they plan to use the same facilities to conduct their business—namely, websites and related technology—that Lulu uses in its business. That both Lulu and Defendants use their marks to conduct web-based businesses further supports a finding that Defendant's conduct is likely to cause confusion among consumers.

### e.    Similarity of advertising

Defendants have not yet fully launched their services, and it does not appear that they have engaged in any significant advertising aside from their August 29, 2007 website announcement. See Young Aff. Ex. F. Pending the discovery that Defendants have disseminated other advertising materials in connection with the HULU name and mark, Lulu submits that this factor should be considered neutral in the "likelihood of confusion" analysis.

### f.    Actual confusion

The Fourth Circuit has noted that this factor, among all others, "is often paramount. When the plaintiff's mark is strong and the defendant's use of a similar mark 'has actually confused the public, [the court's] inquiry ends almost as soon as it begins.'" Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001) (quoting Sara Lee, 81 F.3d at 467). Here, repeated association of the HULU marks with Lulu's marks in news articles and online blogs confirms that actual confusion concerning the origins of LULU's services and/or the existence of a connection between Lulu and Defendants' businesses already exists. Young Aff. ¶ 14. Moreover, because Defendants are affiliates of NBC and News Corp.—two of the world's largest media outlets—the confusion created might even suggest to consumers that it is Lulu, rather than Defendants, who has engaged in wrongful infringement, thereby undermining Lulu's

reputation and goodwill.  Id. ¶ 17.  Consideration of this factor, therefore, confirms not only that there is a strong likelihood that Defendants' use of the HULU marks will cause confusion among consumers, but that such confusion in fact already exists.

### B. Lulu Will Likely Prove That Defendants Are Engaging In Cyberpiracy in Violation of 15 U.S.C. § 1125(d)

To establish a violation of 15 U.S.C. § 1125(d), which was enacted as part of the Anticybersquatting Consumer Protection Act ("ACPA"), Lulu must (1) prove that Defendants had a bad faith intent to profit from using the HULU.COM domain name, and (2) that the HULU.COM domain name is identical or confusingly similar to, or dilutive of, Lulu's distinctive LULU mark. See 15 U.S.C. § 1125(d)(1)(A); People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001).

Here, Defendants' use of the HULU.COM domain name, which is confusingly similar to (and differs by only one letter from) Lulu's LULU.COM domain name and its distinctive LULU mark, strongly suggests a bad faith intent to profit.  Among the factors that courts may consider in determining whether such bad faith is present is whether the defendant's conduct suggests "an intent to divert consumers from the [plaintiff's] online location to a site accessible under the domain name that could harm the goodwill represented by the mark . . . for commercial gain . . . by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site."  15 U.S.C. § 1125(d)(1)(B)(i)(A)(V).  Moreover, while the statute also enumerates other factors to be considered, courts interpreting § 1125(d) have made clear that "'a court may rely on other indicia of bad faith intent to profit,'" as "'[t]he most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'"

15

Venetian Casino Resort, LLC v. Venetiangold.Com, 380 F.Supp.2d 737, 741 (E.D. Va. 2005) (quoting Harrods Ltd. v. Sixty Internet Domain Names, 157 F.Supp.2d 658, 666 (E.D.Va.2001)).

The unique circumstances of this case present a strong likelihood that Defendants will be found to have used the HULU.COM domain with bad faith intent to profit. As explained in more detail above, the close similarity between the HULU.COM domain name and Lulu's well-established and popular LULU marks and LULU.COM domain name, are undeniable. Relatedly, the services Defendants propose to offer through the HULU.COM website—among them "online electronic publishing services" and "hosting of digital content on the internet"— bear a close similarity to those offered at LULU.COM.

Under these circumstances, it is evident that Defendants are seeking to capitalize on Lulu's goodwill, and on the popularity of the LULU.COM website, by adopting a domain name that is confusingly similar. In so doing, Defendants seek to divert consumers away from the LULU.COM website to the HULU.COM website, which offers similar services—and thereby to profit from the confusing similarity between the two domain names. Such actions are undoubtedly sufficient for purposes of finding "bad faith intent to profit" under § 1125(d), and thus Lulu is also likely to prevail on this claim.

### C. Lulu Will Likely Prove That Defendants Have Engaged In Unfair Trade Practices in Violation of N.C. Gen. Stat. § 75-1.1

In general, in order to succeed on a claim under N.C. Gen. Stat § 75-1.1, a plaintiff "must prove (1) that the defendant was engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or had the capacity or tendency to

deceive, and (3) that the plaintiff suffered actual injury as a result of the defendant's actions. Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996) (citations and internal quotation marks omitted).

North Carolina's Unfair Trade Practices statute provides that commerce "includes all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b). Defendants' activities—the use of its HULU marks to promote their web-based consumer services, and their registration, maintenance, and public promotion of a domain name to carry out that purpose—undoubtedly affect "commerce" as that term has been interpreted by North Carolina courts. See Prince v. Wright, 141 N.C. App. 262, 268, 541 S.E.2d 191, 197 (2000) ("'Commerce' in its broadest sense comprehends intercourse for the purpose of trade in any form.").

Defendants' conduct was also unfair and had the capacity to deceive. The statute's prohibitions encompass "any conduct that a court of equity would consider unfair," and courts have explained that a practice is unfair if it "is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Polo Fashions, Inc. v. Craftex, Inc. 816 F.2d 145, 148 -149 (4th Cir. 1987). In Polo Fashions, the court held that the defendant's acts of trademark infringement and unfair competition under the Lanham Act also gave rise to liability and treble damages under North Carolina's Unfair Trade Practices statue. Id. at 147-48. Here too, Defendants' acts of adopting confusingly similar marks and registering a confusingly similar domain name, for the purpose of offering services that are virtually identical to those offered by Lulu, are unfair and have a tendency to deceive, and thus are cognizable under the Unfair Trade Practices statute. Cf. Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 404, 248 S.E.2d 739, 746

17

(1978) ("'passing off' of one's goods as those of a competitor has long been regarded as unfair competition").

Finally, and as discussed with respect to the irreparable harm that Lulu will suffer if Defendants' activities are permitted to continue, Lulu has suffered, and will continue to suffer, actual injury by virtue of Defendants' unfair trade practices, thereby satisfying the third element required for recovery under N.C. Gen. Stat. § 75-1.1.

### D. Lulu Will Likely Prove That Defendants Have Engaged in Common Law Trademark Infringement and Unfair Competition

North Carolina common law protects against the unfair acts of a defendant when they damage a plaintiff's legitimate business. Polo Fashions, 816 F.2d at 145.. Such damage can occur "when a rival adopts for his own goods a sign or symbol in an apparent imitation of another's that would likely mislead prospective purchasers and the public as to the identity of the goods." Id. (citing Yellow Cab Co. v. Creasman, 185 N.C. 551, 117 S.E. 787, 788 (1923)). Thus, like the law of federal trademark infringement, "North Carolina's law of unfair competition is 'the child of confusion'" and activities that are likely to confuse consumers constitute actionable torts. Polo Fashions, Inc. v. Gordon Group, 627 F.Supp. 878, 891 (M.D.N.C. 1985) (quoting Charcoal Steak House, Inc. v. Staley, 263 N.C. 199, 203, 139 S.E.2d 185, 187 (1964)).

Here, as explained in detail above, Defendants' actions in adopting, for their own commercial gain, marks that are confusingly similar to Lulu's marks, are likely to deceive consumers, and thus defendants are liable at common law for trademark infringement and unfair competition.

V.  **THE PUBLIC INTEREST SUPPORTS ISSUING THE REQUESTED INJUNCTIVE RELIEF**

The final factor considered by courts in the <u>Blackwelder</u> analysis is the public interest. There can be no question that the public has an interest in protecting the victims of trademark infringement and unfair business practices. Granting Lulu's proposed relief will serve that interest, while maintaining the status quo and doing little or no harm either to Defendants or to the public at large. As a result, this factor clearly favors granting an injunction pending a trial on the merits. <u>See</u> <u>Blackwelder</u>, 550 F.2d at 197 (public interest is served where private action vindicates public policy, such as where a federal statute supplies the gravamen of a complaint).

## **CONCLUSION**

For the reasons set forth above, Plaintiff Lulu Enterprises, Inc. respectfully requests that the Court grant its motion for preliminary injunction.

Respectfully submitted this the 10th day of September, 2007.

ELLIS & WINTERS LLP

/s/ Leslie C. O'Toole
Leslie C. O'Toole
N.C. State Bar. No. 13640
Thomas H. Segars
N.C. State Bar. No. 29433
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
*Attorneys for Lulu Enterprises, Inc.*