IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-cv-00347-D

LULU ENTERPRISES, INC.,

vs.

N-F NEWSITE, LLC,

and

HULU TECH, INC.,

|  | **MEMORANDUM OF DEFENDANT N-F NEWSITE, LLC IN RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** (Pursuant to Local Rule 7.1(e)) |

---

## APPENDIX

## UNREPORTED CASES

1. *Dimension Data N. Am., Inc. v. Netstar-1, Inc.*, 226 F.R.D. 528 (E.D.N.C. 2005)

2. *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)

3. *McDougal-Wilson v. Goodyear Tire and Rubber Co.*, 232 F.R.D. 246 (E.D.N.C. 2005)

4. *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381 (M.D.N.C. 1988)

US2000 10306710.1

Dockets.Justia.com

Westlaw.

226 F.R.D. 528                                                                                    Page 1
226 F.R.D. 528
**(Cite as: 226 F.R.D. 528)**

United States District Court,
E.D. North Carolina,
Western Division.
DIMENSION DATA NORTH AMERICA, INC.,
Plaintiff,
v.
NETSTAR-1, INC.; Michael Butters; and Ed
Norris, Defendants.
**No. 5:04-CV-977-FL(1).**

Feb. 2, 2005.

**Background:** Employer brought action against
former employees and their new employer for
monetary and injunctive relief based on alleged
breach of confidentiality agreements and
unauthorized disclosure of trade secrets. Employer
moved for expedited discovery in anticipation of
impending preliminary injunction motion.

**Holding:** The District Court, Flanagan, Chief
Judge, held that expedited discovery was not
reasonable.
Motion denied.

West Headnotes

**[1] Federal Civil Procedure** ⟨⟩1261
170Ak1261 Most Cited Cases
Where plaintiff requests expedited discovery in
preparation for a preliminary
injunction determination, an expedited discovery test
limited strictly to preliminary injunction factors is not
appropriate; rather, a standard based upon
reasonableness or good cause, taking into account the
totality of the circumstances, is more in keeping with
discretion bestowed upon the court in the Federal
Rules of Civil Procedure. Fed.Rules Civ.Proc.Rules
26(b), 30(a)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure** ⟨⟩1261
170Ak1261 Most Cited Cases
Expedited discovery in anticipation of impending
preliminary injunction motion was not reasonable in
employer's action against former employees and new
employer for breach of confidentiality agreements
and unauthorized disclosure of trade secrets;
expedited discovery was premature when employer

had not yet filed preliminary injunction motion,
discovery requested was not narrowly tailored to
obtain information relevant to preliminary injunction,
and employer had not shown irreparable harm from
delaying discovery until after parties' initial
conference, or until preliminary injunction
determination was pending. Fed.Rules Civ.Proc.Rule
26(b, d), 28 U.S.C.A.
**\*529** Robert C. Stephens, Hamilton, Gaskins, Fay &
Moon, Charlotte, NC, for plaintiff.

Christopher M. Olds, Kilpatrick Stockton, Kurt E.
Lindquist, II, Kilpatrick Stockton, Charlotte, NC, for
defendants.

ORDER

FLANAGAN, Chief Judge.

This matter is before the court on plaintiffs' motion
for expedited discovery, filed December 30, 2004.
(DE # 3). Defendants responded on January 21,
2005. In this posture, this matter is ripe for ruling.
For the following reasons, the court denies plaintiffs'
motion for expedited discovery.

STATEMENT OF THE CASE

Plaintiff filed a complaint in this case on December
27, 2004, seeking, *inter alia,* monetary and injunctive
relief against defendants based on their alleged
breach of confidentiality agreements and
unauthorized disclosure of trade secrets. The
individual defendants in this case, Michael Butters
and Ed Norris, are former employees of plaintiff
Dimension Data North America, Inc. ("DDNA"),
who left work with DDNA on December 3, 2004, and
began working with defendant NetStar-1, Inc.
("NetStar") on December 9, 2004.

Defendant Butters was served a copy of the
complaint by certified mail on December 29, 2004.
Defendants NetStar and Norris were served by
certified mail on January 3, 2005. On January 21,
2005, defendants filed a motion for extension of time
to respond to the complaint through and including
February 14, 2005. On January 21, 2005, defendants,
through counsel, also filed a memorandum in
opposition to plaintiff's motion for expedited
discovery.

In its motion to expedite discovery, plaintiff seeks to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

US2000 10306708.1

obtain expedited production of documents and depositions of defendants regarding the grounds for an impending preliminary injunction motion, which it plans to file after the discovery requested is complete. Specifically, plaintiff seeks:

1. "to obtain documents and depose Mr. Norris and Mr. Butters for the purpose of determining what knowledge they have about improper contacts between the Defendants and clients or prospective clients of DDNA;"

2. "to obtain documents and depose Netstar pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to depose someone familiar with Netstar's clients, revenues, and practices and policies regarding the solicitation of new employees and customers."

(Pl's Mot., p. 2). Plaintiff requests that defendants produce documents and attend their deposition in advance of the time otherwise **530** allowed by the Federal Rules of Civil Procedure so that plaintiff "may adequately prepare for a hearing on its Motion for Preliminary Injunction." (*Id.*). Specifically, plaintiff moves for an order by the court requiring defendants, by January 28, 2005, "to make available for copying and inspection documents responsive to Plaintiff's First Requests for Production of Documents attached ... as Exhibit A;" and to permit plaintiff "to take the depositions of each of the Defendants at any time after January 28, 2005 ... to be completed no later than February 28, 2005."

## FACTUAL SUMMARY

In support of its motion, plaintiff highlights several allegations of its complaint, which may be summarized as follows. Defendant Butters signed a confidentiality and non-disclosure agreement with plaintiff's predecessor in interest, TimeBridge, on April 27, 1998. Defendant Norris signed a confidentiality agreement and non-compete agreement with TimeBridge, on June 15, 2000. Upon merger between TimeBridge and DDNA, plaintiff acquired all right, title and interest to such agreements, and defendants Butters and Norris continued employment with plaintiff.

Plaintiff's business involves, in part, sales of technology integration services to customers. While employed with plaintiff, Butter was a "Sales Representative" and "Senior Account Manager," which gave him access to plaintiff's confidential and proprietary trade secrets. Norris was employed as a "Manager of Delivery Engineers" and as a "Solutions Architect," which gave him access to plaintiff's confidential and proprietary trade secrets and

information. Both Norris and Butters resigned from plaintiff as of December 3, 2004.

After their resignation, Butters and Norris informed plaintiff that they were going to work for NetStar and would be opening NetStar's Raleigh, North Carolina, office. Plaintiff alleges that, since joining NetStar, Norris and Butters have

"converted, misappropriated and disclosed DDNA's confidential and proprietary information and trade secrets including, but not limited to, bids and proposals, business methods, formulas, product specifications, contracts, customer or potential customer lists, marketing and technical information to third parties, including, but not limited to, Netstar and its principals and employees in violation of Butters' Confidentiality Agreement, Norris' Confidentiality Agreement, and North Carolina statutory and common law."

(Pl's Mem., p. 4 (citing Compl., ¶ 38)). Upon information and belief, Norris and Butters have used such confidential and proprietary information to solicit business on behalf of NetStar "from DDNA clients who were part of Mr. Norris' and Mr. Butters' portfolio while at DDNA, including, among others, General Parts, Inc., MBM Corporation, and North Carolina Farm Bureau." (*Id.* (citing Compl., ¶ 40)). "Cisco Systems, Inc., whose products DDNA resells, has notified DDNA that General Parts, Inc. and MBM Corporation have informed Cisco Systems that they want to transfer their business from DDNA to Netstar." (*Id.* (citing Compl., ¶ 41)).

In opposition to the motion to expedite discovery, defendants have alleged additional facts, providing, *inter alia*, information concerning DDNA's and NetStar's overlapping competitive market, and affidavits by Norris and Butters denying any prohibited conduct under contract or law.

## DISCUSSION

Although specific standards for evaluating expedited discovery motions are not set out in the Federal Rules of Civil Procedure, the Rules provide the court with authority to direct expedited discovery in limited circumstances. As one court in this circuit recently noted, "Federal Rules of Civil Procedure 26(d), 30(a), 33(b), 34(b) and 36 give this Court the power to adjust the timing requirements imposed under Rule 26(d) and if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive v. Lathian Sys.,* 2003 U.S. Dist. LEXIS 22868, *11-12, 2003 WL 23018270, *4, (unpublished) (D.Va., Dec. 5, 2003).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

226 F.R.D. 528
226 F.R.D. 528
(Cite as: 226 F.R.D. 528)

Page 3

Specifically, Rule 26(d) provides that "except ... when authorized under these rules or by order ... a party may not seek discovery **531** from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). Rule 26(b) provides the court with broad discretion in structuring discovery, stating "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

The rules pertaining to each category of discovery also allow for alterations in timing based upon court order. For instance, Rule 34 states that "Without leave of court ... a request may not be served before the time specified in Rule 26(d)." Fed. R. Civ. P. 34(b) (pertaining to production of documents). Rule 33(a) and Rule 36 provide identical authority with regard to interrogatories and requests for admission. Finally, pertaining to depositions, Rule 30 states that "A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if ... a party seeks to take a deposition before the time specified in Rule 26(d)." Fed. R. Civ. P. 30(a)(2) (emphasis added).

In Crown Crafts, Inc. v. Aldrich, 148 F.R.D. 151, 152 (E.D.N.C.1993), for purposes of evaluating an expedited discovery request, this court followed the approach of a New York district court and applied several preliminary injunction factors:

> [C]ourts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

148 F.R.D. at 152 (quoting Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y.1982)).

The approach in Crown Crafts and Notaro, borrowing portions of the preliminary injunction standard, has been criticized by other courts. For instance, in Merrill Lynch, Pierce, Fenner & Smith v. O'Connor, 194 F.R.D. 618, 623 (N.D.Ill.2000), the court noted that "where, as here, a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request." See Merrill Lynch, 194 F.R.D. at 624.

Rather, "it makes sense to examine the discovery request, as we have done, on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." Id.

Recently, courts have found the reasonableness test used in Merrill Lynch to be more adaptable to the varying circumstances in which expedited discovery is requested. See e.g., Entertainment Technology Corp. v. Walt Disney Imagineering, 2003 WL 22519440, 2003 U.S. Dist. LEXIS 19832, (unpublished) (E.D.Pa., Oct. 2, 2003); Pod-Ners, LLC v. Northern Feed, 204 F.R.D. 675, 676 (D.Colo.2002) ("Rule 26(d), Fed.R.Civ.P., allows [the court] to order expedited discovery upon a showing of good cause"); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 614 (D.Ariz.2001) ("[A]bsent credible authority to the contrary, the court adopts a good cause standard."); Semitool, Inc. v. Tokyo Electron Am., 208 F.R.D. 273, 275 (D.Cal.2002) (noting that Notaro and Crown Crafts were decided before the amendments to Rule 26); Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc., 1998 WL 404820, 1998 U.S. Dist. LEXIS 10511, (unpublished) (E.D.Pa., July 15, 1998) (finding Notaro test inapplicable where parties anticipate later preliminary injunction determination).

[1] Under the circumstances of this case, where plaintiff requests expedited discovery in preparation for a preliminary injunction determination, an expedited discovery test limited strictly to the Notaro factors is not appropriate. Rather, a standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 30(a)(2).

[2] In this case, the court finds that expedited discovery is not reasonable at this stage of the proceedings. This conclusion is informed by several factors. First, plaintiff's **532** motion for expedited discovery is not reasonably timed, where, as here, plaintiff has not yet filed a temporary restraining order or a motion for preliminary injunction, setting out in detail the areas in which discovery is necessary in advance of a determination of preliminary injunctive relief. In the Fourth Circuit, where the circumstances permit, courts have allowed parties to engage in expedited discovery in preparation for a hearing on preliminary injunction. See e.g., KBG Holding Corp. v. Union Bank, 56 Fed.Appx. 111, 114

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4th Cir.2003) ("The parties engaged in expedited discovery in preparation for the ... hearings on the competing motions for preliminary injunction."); *CIENA Corp. v. Jarrard,* 203 F.3d 312, 315 (4th Cir.2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1220 (4th Cir.1980) (noting that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing"). Here, as no such hearing or determination is pending, expedited discovery is premature. Of course, as this case develops, if the need for a hearing arises, expedited discovery, or other form of bifurcated or limited discovery, may be appropriate.

Second, the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination. Rather, plaintiff requests discovery covering a broad range of NetStar's business practices before and after Butter and Norris joined the company. For example, in Exhibit A to its motion, plaintiff seeks "All of Netstar's accounts receivables listings between June 1, 2004, involving entities in North Carolina." (Request # 9). Plaintiff also seeks "All Documents relating to or containing any information about any communications Netstar, Mr. Norris or Mr. Butters had with any North Carolina individuals of entities regarding the provision of services by Netstar...." (Request # 3). These requests, as well as many others in Exhibit A, are overly broad where, in its complaint, plaintiff alleges a loss of business from only three corporate customers due to actions on the part of Butters and Norris. (Compl., ¶ ¶ 40-41). An expedited discovery request could be more narrowly tailored to focus on information believed to be probative to the preliminary injunction analysis.

Third, plaintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26, or at least until a preliminary injunction determination is pending before the court. Assuming, *arguendo,* that plaintiff's allegations regarding breach of confidentiality agreements are correct and that plaintiff will prevail at trial on the merits, the damage associated with such breach in the intervening time period can be readily calculated and awarded to plaintiff. Plaintiff has not otherwise alleged that its

entire business will be irreparably damaged or lost due to the actions of defendants in the intervening time period. Finally, plaintiff has not alleged that the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken now. Accordingly, the court finds that plaintiff will not be irreparably harmed by engaging in standard discovery procedures as set out in the Federal Rules of Civil Procedure.

In summary, given the timing of plaintiff's motion, the absence of narrowly-tailored discovery requests in advance of a preliminary injunction hearing, and the lack of evidence that plaintiff will be irreparably harmed by delaying the discovery requested until after the Rule 26 conference or in advance of a preliminary injunction hearing, expedited discovery is not reasonable.

CONCLUSION

Based on the foregoing, plaintiffs' motion for expedited discovery is DENIED. At this time, the case will proceed at the pace set forth in the Federal Rules of Civil Procedure.

226 F.R.D. 528

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

95 F.R.D. 403                                                                                                    Page 1
95 F.R.D. 403, 35 Fed.R.Serv.2d 580
**(Cite as: 95 F.R.D. 403)**

▷     United States District Court, S. D. New York.
James F. NOTARO, George Longworth, and Pearse
M. O'Callaghan, for themselves
and all persons similarly situated, Plaintiffs,
v.
Edward I. KOCH, individually and as Mayor of the
City of New York and as
candidate for Governor of State of New York,
Defendant.
**No. 82 Civ. 5773 (DNE).**

Sept. 17, 1982.

Officers and members of Liberal party, alleging that candidate for Governor intended to fire Liberal party members from state payroll if he was elected, brought suit pursuant to section 1983, seeking permanent injunction. On plaintiffs' request for leave of court to take candidate's deposition within 30 days following commencement of action, the District Court, Edelstein, J., held that plaintiffs failed to meet requirements for expedited discovery.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure** 🗝1383
170Ak1383 Most Cited Cases
Courts should not grant leave to take deposition prior to expiration of 30 days after service of summons and complaint, without some showing of necessity for expedited discovery. Fed.Rules Civ.Proc. Rule 30(a), 28 U.S.C.A.

**[2] Federal Civil Procedure** 🗝1383
170Ak1383 Most Cited Cases
When plaintiff requests leave of court to take deposition prior to expiration of 30 days after service of summons and complaint, courts should require plaintiff to demonstrate irreparable injury; some probability of success on merits; some connection between expedited discovery and avoidance of irreparable injury; and some evidence that injury that will result without expedited discovery is greater than injury that defendant will suffer if expedited relief is granted. Fed.Rules Civ.Proc. Rule 30(a), 28 U.S.C.A.

**[3] Federal Civil Procedure** 🗝1383
170Ak1383 Most Cited Cases
In action alleging that candidate for state Governor intended to fire Liberal party members from state payroll if he was elected Governor, officers and members of Liberal party were not entitled to leave of court to take candidate's deposition prior to expiration of 30 days following commencement of action, where suit appeared to be premature, plaintiffs had not established that Liberal party members were actually afraid that threat would be carried out and plaintiffs had not yet formed a specific remedy. Fed.Rules Civ.Proc. Rule 30(a), 28 U.S.C.A.; U.S.C.A.Const.Amend. 1.

**\*404** Herzfeld & Rubin, Peter J. Kurshan, of counsel, New York City, for plaintiffs.

Cleary, Gottlieb, Steen & Hamilton, Evan A. Davis, of counsel, New York City, for defendant as candidate for Governor.

Frederick A.O. Schwarz, Stephen Kramer, of counsel, New York City, for defendant as Mayor.

MEMORANDUM OPINION

EDELSTEIN, District Judge:

The plaintiff James Notaro is Secretary and Executive Director of the Liberal Party of New York State ("Liberal Party"). The Plaintiff George Longworth is the Assistant Commissioner of the Division of Human Rights of New York State and a member of the Liberal Party. The Plaintiff Pearse O'Callaghan is the Director of the Division of Cemetaries of New York State and a member of the Liberal Party. These plaintiffs allege that the defendant, Edward Koch ("Koch"), as Mayor of the City of New York, individually and as a candidate for Governor of New York State in the Democratic primary, has violated their constitutional rights of freedom of speech and freedom of expression. Pursuant to 42 U.S.C. s 1983 they seek a permanent injunction.

The plaintiffs allege on the basis of newspaper reports that the defendant has, or that his campaign workers have, compiled lists of Liberal Party members in New York State. The plaintiffs contend that Koch intends to fire Liberal Party members from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.R.D. 403, 35 Fed.R.Serv.2d 580
**(Cite as: 95 F.R.D. 403)**

the state payroll if he is elected Governor of New York State. They further allege, that Koch has released, or has caused to be released, information indicating that he intends to so fire Liberal Party Members, and that these actions have threatened Liberal Party Members and chilled their First Amendment rights.

The plaintiffs request leave of the court to take the deposition of Koch within thirty days following the commencement of the action. Under Fed.R.Civ.P. 30(a), the plaintiff must obtain leave of the court "to take a deposition prior to the expiration of 30 days after service of the summons and complaint **\*405** upon any defendant," with exceptions not relevant here.

(1) This provision protects defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel. See 4A Moore's Federal Practice, P 30.54 (1982). This important protection maintains the fairness of civil litigation. Courts should not grant leave without some showing of the necessity for expedited discovery. The court must protect defendants from unfairly expedited discovery.

Few opinions discuss motions for expedited discovery. Those that do, focus on the availability of expedited discovery to depose a person who will soon become unavailable.[FN1]

FN1. The cases cited by parties on the question of expedited discovery do not control the issue here. All involved ex parte requests. Babolia v. Local 456, 11 F.R.D. 423, 424 (S.D.N.Y.1951), Gibson v. Bagas Restaurants, Inc., 87 F.R.D. 60, 62 (W.D.Mo.1980) and Schwartzbaum, Inc. v. Evans, Inc., 279 F.Supp. 422, 424 (S.D.N.Y.1968), although each implied in dicta that some unusual circumstances would be required for expedited discovery with notice.

There is a dearth of law on the availability of expedited discovery to speed relief where compelling need is shown.[FN2] Nevertheless, in some cases a plaintiff could need expedited discovery to speed relief.[FN3] In such cases, however, the court must fashion standards for granting leave that protect the defendant.

FN2. Potential unavailability of a witness is not the only reason for courts to allow expedited discovery. Rule 30(b) expressly allows special notice and expedited deposition of an individual who might become unavailable through certain circumstances. Hence the leave of the court provision in Rule 30(a), which is discretionary, allows the court to grant expedited depositions for other reasons.

FN3. Usually a plaintiff can obtain a preliminary injunction if he needs speedy relief. Conceivably, however, a plaintiff could lack the information needed to succeed on a motion for a preliminary injunction, but still require fast relief. In such a case, expected to be a rare one, expedited depositions might serve justice.

(2) The plaintiffs herein do not seek an early deposition to protect the effectiveness of discovery. Plaintiffs contend that without expedited discovery and the resulting earlier trial they will suffer irreparable damage, which they assert establishes compelling need for expedited discovery. In such circumstances, courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.[FN4] The plaintiffs' papers are as yet incomplete in these requirements.

FN4. The court finds support for these four elements in the law of remedies. These four requirements parallel those showings necessary to obtain a preliminary injunction. A preliminary injunction is another, more extreme way of speeding relief to plaintiffs, and these prerequisites have been established by courts to protect defendants from the potential damages of speeded up remedies.

(3) The plaintiffs have yet to fill in some gaps in their legal arguments. The defendant's actions do not fall within the rule that bars certain dismissals on the basis of political affiliation. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). That rule covers only actual or imminent dismissals. On this basis the suit would appear to be premature. Due to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.R.D. 403                                                                                        Page 3
95 F.R.D. 403, 35 Fed.R.Serv.2d 580
**(Cite as: 95 F.R.D. 403)**

the prematurity problem their claim rests only on the allegation that a contingent threat, which cannot in any event be carried out for several months, nonetheless currently chills First Amendment rights.

But the plaintiffs must offer more evidence that a reasonable fear of the alleged threat exists. Before the threatened action can occur, the defendant must win the Democratic primary. He must then win the election. He must survive until he is inaugurated, and he must carry out the alleged threat despite his affidavit denying any intent to carry out any such threat.

**\*406** In addition, the plaintiffs have not established that Liberal Party members are actually afraid that the threat would be carried out. So far the only members to come forward are apparently fully advised that the law protects them from political dismissal, and the Liberal Party has shown no hesitancy to defend the rights of its members in court.

In addition, the plaintiffs have not yet framed a specific remedy. An injunction might prove difficult because it would impose restrictions on Koch's campaign and might restrict protected First Amendment activity. Finally, since the plaintiffs do not complain that Koch has acted in his capacity as Mayor of New York City, there may not be the necessary state action that would implicate the plaintiffs' federal, constitutional and civil rights. The plaintiffs have not yet touched on this jurisdictional aspect of their case.

The plaintiffs may well be able to overcome these obstacles. Some were neglected in the complaint; others were not fully discussed. As yet, however, the plaintiffs have not made a strong enough showing to justify expedited relief.

The plaintiffs have also not made a sufficient showing of irreparable injury. Possible plaintiffs are protected from political dismissal, which in any event cannot occur until January, 1983. True, if the defendant's actions affect Liberal Party members' behavior that in turn affects the election outcome, the harm might be irreparable, at least for four years. Nevertheless, that possibility appears speculative. The only support that the alleged threatened firing will occur is a newspaper article quoting a Koch campaign worker, and this has been contradicted by Koch's affidavit. Further, the eventuality of Koch becoming governor remains months distant and uncertain. There is no showing that many Liberal

Party members feel threatened, or that they have changed their behavior, or that such a change could affect the election.

The plaintiffs have also failed to show the connection between the relief sought and the avoidance of the irreparable harm. There is time for relief before the November election even under the normal process of discovery.

On the final element for obtaining the expedited discovery, the plaintiffs have not shown that the irreparable injury looms greater than the injury to the defendant of expedited discovery. In a deposition of the defendant as a candidate under the inquisition of counsel for an opposition political party without sufficient advance notice, the possibility of an incidental embarrassment is great.[FN5]

> FN5. The fact that the defendant has retained counsel does not indicate that he does not need the protection of the 30 day rule. Furthermore defendants would have to show more than that the underlying reason for the rule is partially absent here to obtain an exemption from it. The plaintiffs must show a "valid, affirmative reason" for expedited discovery. Balobia, supra at 424.

In the heat of campaigning parties use many tactics to gain a political advantage. Before interfering in an election campaign, a court should find a strong legal basis and clear injury supporting judicial action. While this caution is not controlling, it warns this court away from an expedited discovery when weaknesses-as yet unexplained by the plaintiffs-exist in the arguments that attempt to establish the prerequisites for the relief the plaintiffs seek.

The plaintiffs motion for expedited discovery is denied. Nevertheless, the allegations of the plaintiffs if true, constitute a record of grave political wrongdoing. Hence this denial is without prejudice to the plaintiffs to move again for expedited discovery at such time as they can better establish their case.

95 F.R.D. 403, 35 Fed.R.Serv.2d 580

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

232 F.R.D. 246                                                                                              Page 1
232 F.R.D. 246
(Cite as: 232 F.R.D. 246)



United States District Court,
E.D. North Carolina,
Western Division.
Della McDOUGAL-WILSON, Plaintiff,
v.
GOODYEAR TIRE AND RUBBER COMPANY,
d/b/a Just Tires, and Goodyear International
Corporation, Defendants.
**No. 5:04-CV-33-BO(2).**

May 24, 2005.

**Background:** Former employee brought employment discrimination action against her former employer, alleging claims under Title VII and § 1981. Employer filed motion to quash and for a protective order concerning employee's deposition of employer, and employee moved to compel discovery, and to quash and for a protective order.

**Holdings:** The District Court, Dever, J., held that:

(1) employee failed to overcome presumption that deposition of employer should take place at its principal place of business;

(2) even if self-critical analysis privilege existed, it did not protect employer's affirmative action plans from disclosure;

(3) employer would not be compelled to produce computer generated employee profiles of all its employees in North Carolina from 1995 to present;

(4) employer would not be compelled to produce irrelevant information and information of a personal nature from its employee personnel files;

(5) employer would not be compelled to produce associate change forms, transfer forms, and exit notifications as part of employee personnel files;

(6) employer would not be compelled to produce social security numbers of each of its employees as to whom it had produced documents; and

(7) employer's memorandum in support of its motion to quash and for a protective order would not be stricken.

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure** 1383
170Ak1383 Most Cited Cases
Former employee failed to overcome presumption

that deposition of corporation, her former employer, should take place at corporation's principal place of business in Ohio, and, thus, employee's notice of deposition in North Carolina would be quashed. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure** 1271.5
170Ak1271.5 Most Cited Cases
Discovery is not limitless; the court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[3] Witnesses** 184(1)
410k184(1) Most Cited Cases
Even if the self-critical analysis privilege existed, it did not protect former employer's affirmative action plans from disclosure in employment discrimination action brought by former employee, where contents of employer's affirmative action plans were relevant and discoverable.

**[4] Federal Civil Procedure** 1591
170Ak1591 Most Cited Cases
Former employer would not be compelled to produce computer generated employee profiles of all its employees in North Carolina from 1995 to present, in former employee's discrimination action, where producing the records of over 1,000 employees who were not similarly situated to employee would be unduly burdensome and oppressive, and was unlikely to lead to discovery of relevant and admissible evidence.

**[5] Federal Civil Procedure** 1591
170Ak1591 Most Cited Cases
Former employer would not be compelled to produce irrelevant information and information of a personal nature from its employee personnel files, such as medical, family, or insurance documentation or documentation regarding safety training, in employee's discrimination action.

**[6] Federal Civil Procedure** 1591
170Ak1591 Most Cited Cases
Former employer would not be compelled to produce associate change forms, transfer forms, and exit notifications as part of employee personnel files, in former employee's discrimination action, where employee did not specifically request these items

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

earlier in discovery, and employer's production of the documents where found in a given, responsive personnel file for certain store managers obviated need for any further discovery on the issue.

**[7] Federal Civil Procedure** 🔑**1591**
170Ak1591 Most Cited Cases
Former employer would not be compelled to produce social security numbers of each of its employees as to whom it had produced documents from its personnel files, so as to allow former employee to locate employees in connection with her employment discrimination action against employer, where disclosure of employees' social security numbers would raise concerns of their privacy, and employer had produced information regarding employees' last known contact information.

**[8] Federal Civil Procedure** 🔑**1591**
170Ak1591 Most Cited Cases
Former corporation would not be compelled to produce disciplinary documents for all employees under supervision of two supervisors, in former employee's discrimination action, where geographic and temporal scope of the request for such documents was overly broad, and release of that information for employees who were not similarly situated to former employee was unwarranted.

**[9] Federal Civil Procedure** 🔑**1272.1**
170Ak1272.1 Most Cited Cases
Discovery in an employment discrimination action is limited to the employing unit unless the plaintiff provides a valid need to extend beyond that unit.

**[10] Federal Civil Procedure** 🔑**1615.1**
170Ak1615.1 Most Cited Cases

**[10] Federal Civil Procedure** 🔑**1625**
170Ak1625 Most Cited Cases
Former employer's memorandum in support of its motion to quash and for a protective order would not be stricken in former employee's discrimination action, where employee was not prejudiced as a result of employer's initial failure to abide by the governing page limitations for its memorandum.
 **\*248** Clarence Andrew McGuffin, Joyce L. Davis, Joyce L. Davis and Associates, Raleigh, NC, for Plaintiff.

 Patricia W. Goodson, Sabrina Presnell Rockoff, Sarah W. Fox, Kilpatrick Stockton, LLP, Raleigh, NC, for Defendants.

## ORDER

 DEVER, District Judge.

 Plaintiff Della McDougal-Wilson ("plaintiff") sued her former employer, Goodyear Tire and Rubber Company, and Goodyear International Corporation ("defendants") for allegedly violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina law. On March 26, 2004, the court entered a scheduling order.

 Near the close of discovery, defendant Goodyear Tire and Rubber Company ("Goodyear") filed a motion to quash and for a protective order concerning plaintiff's proposed Rule 30(b)(6) deposition of Goodyear. Plaintiff, in turn, moved to compel discovery on various matters. Also, the plaintiff moved to strike Goodyear's motion to quash and for a protective order and its supporting memorandum of law. For the reasons stated below, the court denies Goodyear's motion to quash and grants in part, and denies in part, Goodyear's motion for a protective order. The plaintiff's motion to compel is granted in part, and denied in part. The plaintiff's motion to strike Goodyear's motion to quash and for a protective order is denied.

## PROCEDURAL HISTORY
 On April 10, 2005, after unsuccessful negotiations between the parties, plaintiff served an amended deposition notice expressing her intention to depose Goodyear on a variety of topics pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. On April 13, 2005, Goodyear moved to quash the plaintiff's notice of deposition and for a protective order. On April 20, 2005, the plaintiff filed a motion to compel discovery on various issues against the defendants and moved to strike Goodyear's motion to quash and for a protective order because the supporting memorandum of law exceeded the page limits as set forth in the Local Rules. *See* Local Civil Rule 26.1(d), EDNC. On April 21, 2005, the plaintiff filed an addendum to her response to Goodyear's motion to quash and for a protective order, stating that the Rule 30(b)(6) deposition should not be limited to a one day (seven hour) time restriction. On April 22, 2005, the defendants filed a motion to expand retroactively the page limitations for its memorandum in support of their motion to quash and for a protective order. On May 12, 2005, the court disposed of the parties' dispute about page limits.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

232 F.R.D. 246
232 F.R.D. 246
(Cite as: 232 F.R.D. 246)

## DISCUSSION
### I. Goodyear's Motion to Quash

Goodyear seeks to prevent the Rule 30(b)(6) deposition. *See* Goodyear Mem. at **\*249** 4-5. Alternatively, Goodyear asks the court to limit the requested discovery and provide Goodyear with additional time to prepare witnesses. *See id.* at 5-17. Goodyear also asks that the deposition take place at Goodyear's principal place of business in Akron, Ohio. *See id.* at 7-8. Plaintiff responds that the timing and the proposed location of the deposition in North Carolina are appropriate. *See* Pl. Response at 1-4. Plaintiff also responds that the temporal, geographical, and topical parameters in the Rule 30(b)(6) notice are reasonable. *See id.* at 4-10. Finally, plaintiff contends that the court should not arbitrarily establish time limits on the deposition "when the length of that deposition is largely under Defendant's control." *Id.* at 10.

[1] The plaintiff may depose Goodyear under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Absent agreement, however, the deposition will not take place any earlier than June 23, 2005. The deposition will take place in Akron, Ohio at defendant's principal place of business. *See* 7 James Wm. Moore et al., *Moore's Federal Practice,* § 30.20[1][b][ii] (3d ed.2005) (collecting cases). Although the plaintiff correctly notes that the court has the power to permit a Rule 30(b)(6) deposition to take place at a place other than the corporation's principal place of business, the plaintiff has failed to overcome the presumption that the deposition of a corporation should take place at the corporation's principal place of business. Finally, the plaintiff will have a total of eight hours to conduct the Rule 30(b)(6) deposition. The court does not believe that the length of the deposition is under the defendant's control and further finds eight hours to be ample time to conduct an appropriate Rule 30(b)(6) deposition in this case.

### II. Goodyear's Motion For Protective Order

Turning to Goodyear's specific requests to limit the topics to be covered in the deposition, the geographic and temporal scope of the plaintiff's requested topics will be limited. Specifically, the plaintiff seeks discovery from 1995 to date in the geographical area encompassing the Goodyear Districts where Goodyear managers David Montgomery and Jeff Stewart have worked. *See* Pl. Response at 4. According to Goodyear, plaintiff was a store manager

in a Goodyear retail store in Cary, North Carolina from 1996 to August 2002 when her employment was terminated. Plaintiff's immediate supervisor from 1996 until October 2001 was district manager Dave Montgomery. In October 2001, Goodyear retail stores in Wake County, including plaintiff's store, were converted to Just Tires stores and became a new district with Jeff Stewart as the district manager.

[2] Discovery is not limitless. The court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed.R.Civ.P. 26(c). The court limits the plaintiff's definition of "The Districts" to North Carolina stores in Dave Montgomery's district from 1999 to October 2001, and to Wake County-Durham County stores in Jeff Stewart's district from October 2001 to August 2002. All of the plaintiff's deposition topics will be geographically and temporally limited accordingly unless otherwise specified in this order.

The court now addresses Goodyear's remaining requests on a topic by topic basis.

*A. Topic 3--Goodyear's Affirmative Action Plans from 1996 Forward*

[3] Defendant seeks to avoid producing any affirmative action plans as privileged self-critical analysis. Plaintiff responds that the self-critical analysis privilege has been "expressly rejected" by the Supreme Court and the United States Court of Appeals for the Fourth Circuit. Pl. Response at 5 (citing *Univ. of Pa. v. Equal Employment Opportunity Comm'n,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Virmani v. Novant Health, Inc.,* 259 F.3d 284 (4th Cir.2001)). The court has reviewed these cases and concludes that they do not stand for so broad a proposition. Instead, the court embraces the more specific conclusion that even if the self-critical analysis privilege exists in this Circuit, it does not protect Goodyear's affirmative action plans from disclosure in this case. Courts in this Circuit have made clear that this particular privilege is "of recent origin and one that is **\*250** narrowly applied even in those jurisdictions where it is recognized." *In re Air Crash at Charlotte, N.C. on July 2, 1994,* 982 F.Supp. 1052, 1054 (D.S.C.1995); *cf. Warren v. Legg Mason Wood Walker, Inc.,* 896 F.Supp. 540, 542 (E.D.N.C.1995) (noting that "two recent decisions by United States District Courts in the Fourth Circuit have concluded that the Fourth Circuit does not recognize the self-critical analysis

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

privilege"). Assuming that this privilege is valid in the Fourth Circuit, courts in the Circuit have been especially hesitant to apply this privilege in the employment discrimination context to preclude discovery of relevant documents. *See, e.g., Witten v. A.H. Smith & Co., 100 F.R.D. 446, 449-54 (D.Md.1984)* (finding that privilege did not bar disclosure of defendant's affirmative action plans and EEO-1 reports, including self-evaluative portions), *aff'd per curiam,* 785 F.2d 306 (4th Cir.1986) (unpublished table decision); *accord Deel v. Bank of Am., N.A.,* No. CIV.A.7:04CV00150, 227 F.R.D. 456, 459-60 (W.D.Va.2005) ("Assuming that the self-critical analysis privilege is a valid privilege at federal common law, the Court finds that the defendant has not developed sufficient facts to justify its application here."). In *Etienne v. Mitre Corp.,* 146 F.R.D. 145 (E.D.Va.1993), the court explained that most courts have held that affirmative action plans are not protected by the privilege. *Etienne,* 146 F.R.D. at 148 (citing *Reynolds Metals Co. v. Rumsfeld,* 564 F.2d 663, 667 (4th Cir.1977)).

The self-critical analysis privilege does not protect the defendant's affirmative action plans from disclosure in this case. The contents of the affirmative action plans are relevant and discoverable. Nonetheless, the request for Goodyear's affirmative action plans from 1996 to date is overbroad. Accordingly, questioning on this topic will be limited to the race and gender components of the affirmative action plans and also will be limited to include only the portions of those plans encompassing Montgomery's and Stewart's districts for the time period 1999-2004. [FN1]

> FN1. The defendants state in their response to plaintiff's motion to compel that Goodyear's affirmative action plans for years prior to 2002 "are not maintained by Goodyear and cannot be located." Def. Response at 8. The absence of the plans for years 1999-2001 does not preclude plaintiff from questioning Goodyear about plans for those years. At the same time, the court recognizes that Goodyear simply may not know the answers to some questions. Plaintiff will have to decide how much of the eight-hour deposition to spend on this topic.

B. *Topic 5--Personnel Policies*

Discovery on this topic will be limited to application

of personnel policies to store managers in the Districts (as limited above). The topic as articulated in the notice of the Rule 30(b)(6) deposition is oppressive and unduly burdensome. *See* Fed.R.Civ.P. 26(c).

C. *Topic 6--Network and Hotline Reports on Concerns*

Plaintiff seeks all "reports on concerns" made to the Network or the Hotline relating to company policy violations in the Districts. The court will permit discovery of "reports on concerns" made by store managers about perceived race or sex discrimination in the Districts (as limited above). *See* Fed.R.Civ.P. 26(c).

D. *Topic 7--Personnel Concerns Raised by Non-Caucasian Employees*

The plaintiff wants to examine Goodyear on "[p]ersonnel concerns raised by any non-caucasian employee in The District and any resultant investigation (if any) and any resultant actions, if any." The court will narrow this topic to personnel concerns raised by non-caucasian store managers in the Districts (as limited above), and any resulting investigations and actions (if any).

E. *Topic 8--Personnel Actions and Discrimination Reports and Investigations*

Discovery on this topic will be limited to personnel actions and discrimination reports and investigations of racial or gender discrimination made by store managers in the Districts (as limited above).

F. *Topic 9--Adverse Actions Against Store Managers as a Result of Not Making Budget, Sales, or Unit Goals*

The court will permit the plaintiff to examine Goodyear on this topic as to store managers in the Districts (as limited above).

**\*251** G. *Topic 10--Personnel Information for Dave Montgomery and Jeff Stewart*

The plaintiff shall be permitted to examine Goodyear on this topic as it is currently formulated. Montgomery and Stewart were the decision-makers, and their personnel information during their time as Goodyear employees is discoverable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

232 F.R.D. 246                                                                    Page 5
232 F.R.D. 246
**(Cite as: 232 F.R.D. 246)**

H.   *Topic   11--Benefits   and   Compensation Information for Della Wilson*

The information sought in this topic is relevant, and plaintiff shall be permitted to examine Goodyear on this topic.

I. *Topic 12--Audits of Stores of Tim Burks*

The plaintiff seeks information regarding audits of stores of Tim Burks, a store manager.  Goodyear asserts that it has produced all audits of Tim Burk's stores that could be located and that both auditors-- Don Everson and Robert Coale--have been deposed.

Goodyear need not provide additional information that it does not have.  Nonetheless, if the plaintiff wants to use a portion of her eight-hour Rule 30(b)(6) deposition to question Goodyear on audits of Tim Burk's stores, the court will permit such questions.

J. *Topic 13--Manipulation of Profits, Bonus or Incentive Programs, or LAW Dollars*

Discovery for this topic will be limited to incidents of manipulation of store profits, bonus or incentive programs, or LAW Dollars by store managers in the Districts (as limited above).  The topic also will include any resulting investigation or actions taken against employees.

K. *Topic 14--Application of Retail Store Operational Policies*

This topic is overbroad.  This topic is hereby limited to the application of retail store operational policies concerning transfers, human resource policies, compensation, and store manager responsibilities in the Districts (as limited above).

L. *Topics 16 and 17--Store Performance and Analysis of Store Performance*

The plaintiff seeks an understanding of and analysis of financials and performance of stores in the Districts (Topic 16) and store performance in each store in the District, including a plethora of financial information about the stores (Topic 17).  Plaintiff claims that she needs all of this information about all of these stores to show that males were assigned to "hot" stores and to show damages (i.e., placement in a better store would have meant greater compensation).

The parties are now near the end of discovery. Extensive discovery has been conducted.   For whatever reason, plaintiff has not made a targeted request about a specific store or handful of comparatory stores.  The broad requests in Topic 16 and Topic 17 will not be allowed.  *See* Fed.R.Civ.P. 26(c).

M.   *Topic   18--Compensation   Policies   and Procedures Applicable to Store Managers*

Discovery on this topic is limited to compensation policies and procedures applicable to store managers in the Districts (as limited above).

**III. Plaintiff's Motion to Compel**

Plaintiff seeks to compel discovery on a variety of topics.  Plaintiff claims that all of the information she seeks to compel has been requested in earlier interrogatories and requests for production.  Pl. Mem. at 1-11.  Defendants respond that much of the information requested by the plaintiff is unnecessary or irrelevant and notes that this motion to compel was filed five (5) months after the defendants objected to most of the discovery requests in question. Def. Response at 2. Some of the topics at issue in this motion are discussed above in reference to Goodyear's motion to quash and for a protective order. The court will proceed on a topic by topic basis for the sake of clarity, referring to the discussion of Goodyear's motion to quash when appropriate.

***252** A. *Employee Profiles of All North Carolina Employees*

[4] Plaintiff requests that the defendants produce the computer generated Employee Profiles of all Goodyear employees in North Carolina from 1995 to present. Pl. Mem. at 1-2. Producing the records of over one thousand employees who were not similarly situated to the plaintiff is unduly burdensome and oppressive and is unlikely to lead to the discovery of relevant and admissible evidence. Because Goodyear already produced the profiles for all similarly situated employees,  further  discovery  on  this  topic  is unnecessary.

B. *Personnel Files, including Associate Change Forms, Transfer Forms, and Exit Notification Forms*

[5] Goodyear has produced available personnel files for store managers.   *See* Def. Response at 4-5.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

232 F.R.D. 246
232 F.R.D. 246
**(Cite as: 232 F.R.D. 246)**

Page 6

Plaintiff's motion to compel the personnel files of employees who were not similarly situated to the plaintiff is denied for the same reasons as set forth in reference to Category A. *See, e.g., Cason v. Builders Firstsource-Southeast Group, Inc., 159 F.Supp.2d 242, 247-48 (W.D.N.C.2001).* Further, Goodyear's withholding of irrelevant information and information of a personal nature (e.g., medical, family, or insurance documentation or documentation regarding safety training) is legitimate and those portions of the personnel files will not be compelled. For those individuals whose files Goodyear has agreed to produce but has been unable to locate, Goodyear shall continue its good faith efforts to locate and produce them (if located). Goodyear shall produce (if it has not done so already) the complete personnel files of Jeff Stewart and David Montgomery.

[6] In regard to plaintiff's request to compel associate change forms, transfer forms, and exit notifications as part of employee personnel files, the defendants claim that these documents are not normally maintained as part of personnel files. Where such documents were in personnel files, the documents were produced. Nonetheless, because plaintiff did not specifically request these items earlier in discovery, their production will not be compelled at this late stage. Further, Goodyear's production of these documents where found in a given, responsive personnel file for certain store managers obviates the need for any further discovery on this issue.

C. *Social Security Numbers*

[7] Plaintiff seeks to compel Goodyear to produce social security numbers of each individual as to whom Goodyear has produced documents. Plaintiff states it needs the information to help locate former employees.

Goodyear legitimately redacted social security numbers from documents it produced out of concern for its employees' and former employees' privacy. Plaintiff has received last known contact information (e.g., last know address and phone number). That information is sufficient. The production of social security numbers will not be compelled.

D. *All Letters of Commitment and Performance-Related Documentation for all North Carolina Retail Employees in North Carolina Since 1995*

[8] Plaintiff seeks disciplinary documents for all

employees under the supervision of Dave Montgomery and Jeff Stewart from 1995 to present. As explained in reference to Goodyear's motion to quash, the geographic and temporal scope of this request is overly broad. Further, the release of this information for employees who were not similarly situated to the plaintiff is unnecessary. Goodyear's production of documentation regarding store managers in Wake County and Durham County from 1999 to November 2004 who were disciplined by the district managers who disciplined the plaintiff is sufficient.

E. *Affirmative Action Plans*

As explained, the self-critical analysis privilege does not shield Goodyear's affirmative action plans from discovery. The court accepts Goodyear's intention to release the affirmative action plans listed in its response to the plaintiff's motion to compel. Specifically, Goodyear will produce those portions of the **\*253** 2002, 2003, and 2004 affirmative action plans relating to race and gender components encompassing Montgomery's and Stewart's districts. The defendants state that Goodyear's affirmative action plans for years prior to 2002 are not maintained and therefore cannot be located. Def. Response at 8. Goodyear shall undertake good faith efforts to locate and produce the portions of the 1999, 2000, and 2001 affirmative action plans relating to race and gender encompassing Montgomery's and Stewart's districts.

F. *Female and Non-Caucasian Employees in Specified Positions; Nationwide*

[9] Plaintiff's request to compel information regarding female and non-caucasian employees from across the nation is denied. As the defendants correctly state, discovery is limited to the employing unit unless the plaintiff provides a valid need to extend beyond that unit. *See Rodger v. Electronic Data Sys., Corp., 155 F.R.D. 537, 540 (E.D.N.C.1994)* (rejecting plaintiff's request for company-wide discovery). At this late stage in the discovery process, plaintiff has provided no valid and specific justification to compel nationwide discovery on this issue. Her request is denied.

G. *Discrimination Complaints*

As alluded to in the discussion of Goodyear's motion to quash, plaintiff's request for all discrimination complaints for the last ten years is overbroad and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

232 F.R.D. 246
232 F.R.D. 246                                                                                    Page 7
**(Cite as: 232 F.R.D. 246)**

must be limited.  Goodyear has produced responsive information to these requests going back to 1999 and this production is satisfactory.  Plaintiff's request for more information is denied.

H. *Units, Budgets, and Operating Statements*

Plaintiff requests units, budgets, and operating statements for Wake County and Durham County stores for 2002 and 2003 and end-of-year operating statements for all North Carolina stores from 1995 forward.  To the extent that Goodyear has not produced the 2002 and 2003 financial information as to Tim Maybee and Ralph Van Aken, Goodyear shall produce it.  Otherwise, Goodyear has satisfactorily responded to plaintiff's requests for compensation information as described in the interrogatories and requests for production at issue.  As explained in regard to Topic L under Goodyear's motion for a protective order, the plaintiff has provided no satisfactory reason to compel production of this additional information at this late stage in discovery.

I. *Codes for Job Titles, Locations, and Departments*

Goodyear will produce documents showing job titles and department numbers as used on the Employee Profiles.  Thus, there no longer appears to be a dispute on this issue.

**IV. Plaintiff's Motion to Strike**

[10] Because plaintiff suffered no prejudice as a result of Goodyear's initial failure to abide by the governing page limitations for its memorandum in support of its motion to quash and for a protective order, the court denies her motion to strike.  *See Hughes v. Bedsole, 913 F.Supp. 420, 423 (E.D.N.C.1994)* (denying motion to strike defendant's summary judgment motion and supporting memorandum of law where plaintiff was not prejudiced by memorandum's exceeding the page limitations found in Local Rules).  On May 12, 2005, the court also granted the defendant's motion of April 22, 2005 to expand retroactively the page limitations for its previously filed memorandum of law. Accordingly, the motion to strike is denied.

**CONCLUSION**

For the foregoing reasons, the court DENIES Goodyear's motion to quash and GRANTS in part, and DENIES in part, the portion of the motion requesting a protective order.  Absent agreement, the Rule 30(b)(6) deposition shall not take place any

earlier than June 23, 2005.  The court GRANTS in part, and DENIES in part, the plaintiff's motion to compel discovery, and DENIES the plaintiff's motion to strike.  The documents to be produced pursuant to this order shall be produced no later than June 13, 2005.  Neither party is awarded expenses in connection with any of the motions.  In accordance with this court's order filed on May **\*254** 10, 2005, dispositive motions are due twenty (20) days from the completion of the Rule 30(b)(6) deposition.

232 F.R.D. 246

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

119 F.R.D. 381                                                                                                          Page 1
119 F.R.D. 381
**(Cite as: 119 F.R.D. 381)**

C

United States District Court,
M.D. North Carolina
,
Durham Division.
.
Marcus W. TURNER, Plaintiff,
v.
The PRUDENTIAL INSURANCE COMPANY OF
AMERICA, Defendant.
**No. C-87-545-D.**

March 18, 1988.

 Defendant insurance corporation moved to vacate insured's notice to depose one of defendant's officers in North Carolina or for protective order requiring deposition to be held in Florida where officer resided and worked.  The District Court, Russell A. Eliason, United States Magistrate, held that nature of insurance claim and relationship of parties supported decision to conduct deposition of insurer's officer in forum district.

 Motion denied.

West Headnotes

**[1] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
A party may unilaterally choose place for deposing an opposing party, subject to granting of protective order by district court designating a different place.
Fed.Rules Civ.Proc.Rule 26(c)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
District court is permitted to exercise broad discretion in determining appropriate place for examination of opposing party and attach conditions such as payment of expenses.

**[3] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
A deposition of a corporation through its agents or officers should normally be taken at principal place of business of corporation.

**[4] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases

Although there is initial presumption that defendant should be examined at his residence or principal place of business, a number of factors serve to dissipate presumption and may persuade district court to require deposition to be conducted in forum district or some other place, but ultimately district court must consider each case on its own facts and equities of particular situation.

**[5] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
In determining where deposition of opposing party should be held, district court initially considers cost of transportation and lost work to defendant, along with expense and inconvenience of moving large amounts of documents.

**[6] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
A claim of financial hardship on behalf of plaintiff will not alone demonstrate exceptional or compelling need to alter general rule that defendant should be examined at his residence or principal place of business.

**[7] Federal Civil Procedure** ☞1383
170Ak1383 Most Cited Cases
Nature of claim and relationship of parties supported decision to conduct deposition of defendant insurance corporation's officer in forum district, rather than in state where officer resided and worked;  claim involved insured's attempt to have coverage determined for medical insurance policy, insured was small employer and insurer a large corporation, and insurer sold policies in various states and could be expected to have claims and actions brought by policyholders in those states.
 **\*382** William P. Daniell, Durham, N.C., for plaintiff.

 Robert L. Emanuel, Raleigh, N.C., for defendant.

ORDER

 RUSSELL A. ELIASON, United States Magistrate.

 Defendant moves to vacate plaintiff's notice to depose one of defendant's officers in Durham, North Carolina, or, in the alternative, it moves for a protective order requiring the deposition to be held in Jacksonville, Florida, where the officer resides and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

works. Plaintiff's notice of deposition requests that the defendant designate one or more of its officers or directors to testify concerning the guidelines, policies, and practices of defendant which relate to approval and acceptance of small group insurance policies and oral assurances of coverage for dependents, and the reason why defendant denied his claims for his son's medical care. This information is pertinent to plaintiff's claim. He attempted to get medical insurance coverage for his ground maintenance business. Plaintiff thought he had obtained coverage of the workers and their dependents. His son then contracted a serious illness, necessitating expensive medical treatment. Defendant refused to pay the medical claim, stating plaintiff did not have coverage on his son.

To comply with the notice of deposition, defendant selected an officer who resides in Jacksonville, Florida. It claims that all of its pertinent records and personnel are situated in Florida and that it should not be required to incur the extra expense of having the employee travel to North Carolina for the deposition. Plaintiff argues that all of the attorneys who will litigate this case are located in North Carolina, that defendant is a big corporation having offices and doing considerable business in this area, that the absence of the employee from work for one day and the price of her ticket would constitute a minimal burden on defendant, **383 and finally, that it was defendant who is responsible for designating someone at the Home Office to be the deponent. Plaintiff shows that he has a small business, that his son has incurred medical bills in excess of $50,000.00, and the expense of travel for him and his attorney to Florida would be a financial hardship to him.

Discussion

[1][2][3] Certain general principles apply in selecting the place to conduct a deposition. A party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)(2), Fed.R.Civ.P., designating a different place. 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2112 at 403 (1970). The Court is permitted to exercise a broad discretion in determining the appropriate place for examination and may attach conditions such as payment of expenses. *Id.* at 404-05. Because the plaintiff often chooses the forum, he will more likely be required to attend his deposition when set in the forum district. A defendant, on the other hand, does not choose the

forum and, therefore, the Court is more likely to protect it from a deposition set in the forum district. Finally, a deposition of a corporation through its agents or officers should normally be taken at the principal place of business of the corporation. *Id.* at 409-10; *Farquhar v. Shelden,* 116 F.R.D. 70 (E.D.Mich.1987).

[4] Although there is an initial presumption that a defendant should be examined at his residence or the principal place of business, a number of factors serve to dissipate the presumption and may persuade the Court to require the deposition to be conducted in the forum district or some other place. *Farquhar v. Shelden, supra.* Ultimately, the Court must consider each case on its own facts and the equities of the particular situation. *Leist v. Union Oil Co. of California,* 82 F.R.D. 203 (E.D.Wis.1979), and cases cited therein.

[5][6][7] Initially, the Court considers the cost of transportation and lost work to defendant, along with the expense and inconvenience of moving large amounts of documents. *See General Leasing Co. v. Lawrence Photo-Graphic Supply,* 84 F.R.D. 130 (W.D.Mo.1979). A claim of financial hardship on behalf of plaintiff will not alone demonstrate an exceptional or compelling need to alter the general rule. *Id.* at 131. However, as the disparity in burden and inconvenience increases between the parties, the Court will take that into account along with other factors in deciding whether to require defendant to submit to a deposition in the forum district. Factors which support holding the deposition in the forum district are:

(1) Counsel for the parties are located in the forum district. *Farquhar v. Shelden, supra; Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166 (S.D.N.Y.1985); *Leist v. Union Oil Co. of California, supra.*

(2) The defendant is a large corporation whose employees often engage in travel, only one or two employees will be required to travel to the deposition, and the document production is not oppressive. (A more extensive travel burden on defendant may likely invoke a protective order or an order requiring plaintiff to pay the travel expenses.) *Compare Sugarhill Records Ltd. v. Motown Record Corp., supra,* at 172; *Leist v. Union Oil Co. of California, supra;* with *Thompson v. Sun Oil Co.,* 523 F.2d 647 (8th Cir.1975)-(protective order granted).

(3) Significant discovery disputes may arise and judicial economy favors resolution by the forum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 F.R.D. 381                                                                                 Page 3
119 F.R.D. 381
**(Cite as: 119 F.R.D. 381)**

court or other similar concerns. *See Financial General Bankshares, Inc. v. Lance,* 80 F.R.D. 22 (D.D.C.1978).
(4) The nature of the claim and the relationship of the parties are such that an appropriate adjustment of the equities favors a deposition site in the forum district. *See Terry v. Modern Woodmen of America,* 57 F.R.D. 141 (W.D.Mo.1972) (insurance beneficiary).

 The cost to defendant of transporting the employee and any documents has not been shown to be exceptional.   On the other hand, several factors support plaintiff's position **\*384** that the deposition of one of defendant's agents should be in this District. All of the counsel are located here, and defendant is a large company whose officers may be expected to travel with minimal inconvenience.   Plaintiff, on the other hand, is a small business person who has large medical bills.    The disparity in the inconvenience and financial burden on the parties favors plaintiff. Finally, plaintiff only seeks to depose one person and it was defendant who chose an employee from the Home Office in Florida, rather than one from this area.

 In addition to the above factors, in this case the nature of the claim and the relationship of the parties supports a decision to conduct the deposition in the forum district.   The claim here involves plaintiff's attempt to have coverage determined for a medical insurance policy he purchased from defendant. Plaintiff is a small employer and defendant is a large insurance corporation.    Defendant sells insurance policies in various states and, therefore, can well be expected to have claims and actions brought by its policyholders in those states, especially, as to its medical policies. Defending lawsuits in various forums throughout this country is, therefore, one of the expected costs of doing business for defendant. *Compare Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 286-87 (4th Cir.1987) (insurance company required to defend policyholder in state where automobile accident occurred).   Under these circumstances, plaintiff's request to depose defendant concerning the policy in the state where the policy issued is both reasonable and expected, and defendant's claim of hardship in having to submit itself, through its officers, for deposition in the forum district is entitled to less sympathetic consideration. This additional factor decidedly tips the balance in plaintiff's favor, therefore, requiring defendant's officer to appear in this District for deposition.

 IT IS THEREFORE ORDERED that defendant's motion to vacate plaintiff's notice of deposition or for a protective order requiring the deposition of defendant's officer to be held in Jacksonville, Florida, is denied, and the parties shall forthwith arrange to conduct the deposition in Durham, North Carolina, and counsel for both sides shall confer to select a convenient time.

 119 F.R.D. 381

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.