IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-cv-00347-D

LULU ENTERPRISES, INC.,

    Plaintiff,

vs.

HULU, LLC, f/k/a N-F NEWSITE, LLC,

et al.,

    Defendants.

Declaration of Dr. Gerald L. Ford in Opposition to Plaintiff's Motion for Preliminary Injunction

I, Gerald L. Ford, declare as follows:

INTRODUCTION

1.  I am a partner in the marketing research and consulting firm of Ford Bubala & Associates, located in Huntington Beach, California, where I have been engaged in commercial marketing research and consulting for the past thirty-two years. I am also an emeritus faculty member of the School of Business Administration, California State University, Long Beach, where I held a full-time teaching position for twenty-five years, prior to my retirement in 1994. My professional experience is further summarized below in paragraphs 27 through 37.

2.  In the instant matter, at the request of Kilpatrick Stockton LLP, counsel for Defendants, Hulu, LLC, f/k/a N-F Newsite, LLC, et al, ("Hulu"), I designed and caused to be conducted two surveys to address the issue of the degree of awareness of the LULU internet sites for self publishing (i.e., LULU.COM) and video content (i.e., LULU.TV) among potential visitors to Defendant's internet site. Specifically, the two surveys were designed to measure the degree of unaided and aided

awareness of Plaintiff's internet sites among potential visitors to Defendant's internet site.

3. The results of the awareness survey regarding the LULU self publishing internet site, on a net basis after controlling the survey data for mismeasurement error, evidence that among the relevant universe of potential visitors to Defendant's internet site there is no significant degree of awareness of the LULU internet site. Specifically, based upon the results of this survey, a net of two percent (2.0%) of the relevant universe of respondents reported that they had ever heard of the LULU self publishing internet site.

4. The results of the awareness survey regarding the LULU video content internet site, on a net basis after controlling the survey data for mismeasurement error, evidence that among the relevant universe of potential visitors to Defendant's internet site there is no awareness of the LULU internet site. Specifically, based upon the results of this survey, a net of zero percent of the relevant universe of respondents reported that they had ever heard of the LULU video content internet site.

5. It is my opinion that the results of the surveys conducted in this matter clearly support a finding of no likelihood of confusion, based upon the lack of awareness of either the LULU self publishing site or the LULU video content site, among the relevant users of potential visitors to Defendant's internet site. Specifically, the survey results evidence that among individuals who would be likely to visit an internet site where you could watch a variety of TV shows, film

and TV clips, trailers, and select feature films for free, and decide when and what to watch, that this relevant universe is unaware of both the LULU self publishing internet site and the LULU video content internet site. Additionally, it is my opinion that the results of the surveys conducted in this matter would also support a finding that both the LULU self publishing internet site mark and the LULU video content internet site mark are commercially weak marks among potential visitors to Defendant's internet site.

## SURVEY BACKGROUND

6. The surveys conducted in this matter employed a random digit telephone interviewing protocol. The samples (i.e., the random digit telephone numbers) for the surveys were purchased from Survey Sampling, Inc., a nationally recognized provider of research samples and were based upon a probability sampling of random digit telephone numbers from all working telephone exchanges in the continental United States. In total, two hundred (200) interviews were completed in the survey that addressed awareness of the LULU self publishing internet site and two hundred (200) interviews were completed in the survey that addressed awareness of the LULU video content internet site.

7. The likelihood of reverse confusion survey conducted in this matter employed a traditional scientific experimental survey design consisting of test questions and an in-treatment control. In these surveys the in-treatment control was a name that was not an internet site but rather a fictitious name to provide a measure of mismeasurement error resulting from

such respondent behaviors as "yea saying" agreement bias or acquiescence.

8. The survey universe in this matter was comprised of randomly selected males and females fourteen (14) years of age or older. The potential respondent selection procedure employed in the two surveys was based upon computer-generated random digit telephone numbers. This provided respondents from both listed and unlisted telephone number households. The potential respondent from each respective household contacted was randomly selected based upon the "next-birthday" method.[1]

9. The sample selection, questions, questionnaire designs, and interviewing procedures employed in these surveys were designed in accordance with the generally accepted standards and procedures in the field of surveys. The surveys were also designed to meet the criteria for survey trustworthiness detailed in the Federal Judicial Center's Manual for Complex Litigation, Fourth.[2]

10. I was responsible for the design of the surveys, the surveys' questionnaires, and the instructions given to the

---

[1] See James H. Frey, Survey Research by Telephone, Second Edition, 1989, pages 110-115.

[2] For the proffered poll or survey, "...Relevant factors include whether: the population was properly chosen and defined; the sample chosen was representative of that population; the data gathered were accurately reported; and the data were analyzed in accordance with accepted statistical principles...In addition, in assessing the validity of a survey, the judge should take into account the following factors: whether the questions asked were clear and not leading; whether the survey was conducted by qualified persons following proper interview procedures; and whether the process was conducted so as to ensure objectivity..." See Federal Judicial Center, Manual for Complex Litigation, Fourth, Section 11.493, @ 102-104 (2004).

surveys' supervisors and interviewers, as well as for the procedures to be followed in conducting the interviews. Interviewing, data gathering, and response recordation were carried out, under the direction of Ford Bubala & Associates, by interviewers employed by an independent interviewing organization.  I personally trained the project supervisor at the professional interviewing service with respect to the surveys' designs, procedures, and related protocols.  To confirm their qualification and participation in the surveys approximately eighty-five percent (84.75%) of survey interviews were validated either by the survey supervisors' telephone monitoring of the interviews, while they were being conducted, or telephone callback of respondents.  Additionally, Ford Bubala & Associates also conducted telephone validation of approximately twenty percent (20.00%) of the interviews by recontacting, by telephone, survey respondents to confirm their qualification and participation in the survey.  Net unduplicated validations total approximately ninety percent (89.50%) of the survey interviews.[3] None of the interviews failed to validate.

        11.  The surveys conducted in this matter were administered under a double-blind protocol.  Specifically, not only were the respondents not informed as to the purpose or sponsor of the surveys, but similarly, both the survey supervisors and interviewers were not informed as to the purpose or sponsor of the surveys.

---

[3]  This level of validation exceeds industry standards of 10% to 15%.

12. Attached hereto, as Exhibit A, are the results of the surveys that addressed the issue of the degree of awareness of the LULU internet sites for self publishing and video content among potential visitors to the Defendant's internet site. Exhibit A, provides a synopsis of the survey methodologies, the survey screeners and questionnaires, response frequencies for the surveys' questions, and a listing of the surveys' responses. The Appendix to Exhibit A contains a sequential listing of the surveys' responses, copies of the supervisor and interviewer Instructions, which provide additional details of the surveys' protocols, and other survey-related background materials.

### SURVEY PROCEDURES AND QUESTIONS

13. The survey executed in this matter, as previously described, utilized a telephone protocol and employed a random probability selection process. After calling a telephone number and identifying a respondent who met the screening criteria or universe definition (i.e., male or female member of the household who will have the next birthday and was fourteen years of age or older),[4] survey respondents were read the following statements:

> In a moment, I am going to ask you some questions about internet sites

---

[4] In both of the surveys (i.e., the surveys addressing the issue of the degree of awareness of the LULU internet sites for self publishing and for video content) respondents qualified for inclusion if they met the following: (1) they accessed the internet at home, at work, at school, or somewhere else; (2) they accessed the internet via a high speed internet connection at home, at work, at school, or somewhere else; and (3) using a high speed internet connection, they would be likely to visit an internet site where they could watch a variety of past and current episodes of TV shows, film and TV clips, trailers, and select feature films all for free and they decided when and what to watch.