IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-cv-00347-D

LULU ENTERPRISES, INC.,

                 Plaintiff,

vs.

HULU, LLC,

            Defendants.

**DECLARATION OF DR. ERICH
JOACHIMSTHALER IN SUPPORT OF
DEFENDANT'S OPPOSITION TO
PRELIMINARY INJUNCTION**

I, Erich Joachimsthaler, make the following Declaration:

    1.    I am the Chief Executive Officer of Vivaldi Partners, a strategic marketing and

brand strategy consulting firm with headquarters in New York and offices in Buenos Aires, Los

Angeles, Munich, Hamburg, Dusseldorf, Zurich, and London.  I am over the age of twenty-one

and am competent to make this declaration.  I submit this declaration in support of defendant

Hulu LLC's opposition to preliminary injunction based on my own personal knowledge and the

review of documents mentioned herein.

**QUALIFICATIONS**

    2.    I have been a professional in the branding and marketing field for more than

twenty years.  I am the founder and Chief Executive Officer of Vivaldi Partners (formerly known

as The Brand Leadership Company), a strategic marketing and brand strategy consulting firm

with headquarters in New York and offices in London, Munich, and Hamburg.  Before founding

Vivaldi Partners, I co-founded a company with Professor David A. Aaker called Aaker -

Dockets.Justia.com

Joachimsthaler & Partners, which we sold in 1999 to Prophet, a brand strategy consulting firm. I served as a Chairman at Prophet before founding Vivaldi Partners.

3.     I have provided expert brand and marketing advice to a diverse set of clients in industries such as telecommunications, automotive, consumer products, technology, financial services, entertainment, and energy, among others. Over the past fifteen years, I have been involved in building strong brands for many clients in North America and Europe. I have worked for clients in launching new products and brands across many different industries. One particular focus has been the technology, media and entertainment areas. Some of my clients include Disney, Thomson, and Bertelsmann. In these companies, I have worked across traditional lines of businesses, such as books, music, and magazines, as well as their interactive and digital properties. In addition, I worked with small and large Internet companies in areas of search, electronic commerce, and the configuration of online products and services. As an academic, I pursued research into the areas of consumer behavior, cognitive psychology and marketing.

4.     I am a published authority on marketing strategy and building strong brands. My book, *Brand Leadership*, which I co-authored with David Aaker, was published by The Free Press in January 2000. My latest book, *Hidden in Plain Sight: How to Find and Execute Your Next Growth Strategy,* was published by Harvard Business Press in May 2007. I also have published extensively in academic journals such as the *Harvard Business Review, Journal of Marketing Research, Journal of Marketing, Journal of Consumer Research*, and *Sloan Management Review*.

5.     I have held faculty positions at the Darden Graduate School of Business Administration at the University of Virginia, the University of Southern California, and the

University of Houston.  In addition, I have been a Visiting Professor of Business Administration at IESE (Instituto Superiores de la Empresa) in Barcelona, Spain, one of the leading European business schools offering MBA and executive education programs where I teach and research until today.

6.       In 1988, I completed a post-doctoral fellowship at the Harvard Business School.  I received my Ph.D. in Business Administration, with emphasis on statistics and marketing, from the University of Kansas in 1985, where I also received my Master's Degree of Science, with emphasis in quantitative methods, in 1981.  In 1979, I received my Economics Degree from the Fachhochschule Giessen-Friedberg, Germany.

7.       I have served as an expert witness in several cases.  A more detailed summary of my training, past experience, and prior testimony appears as an appendix at the end of this testimony.

8.       I am being compensated at my normal and customary hourly rate of $700 per hour.  My consulting firm is also being compensated for the time spent by its research staff at their normal and customary hourly rates.

**MATERIALS REVIEWED**

9.       To carry out the foregoing assignment, I have reviewed and relied on, among other materials, the following:

- Original complaint of Lulu Enterprises, Inc.;

- Declaration of Lauren L. Sullins, and subsequent exhibits;

- Declaration of Daniel H. Marti, and subsequent exhibits;

- Various trademark searches concerning Hulu, Lulu, and Ulu;

- Various media articles concerning the litigation of Lulu v. Hulu;

- Deposition of Jason Kilar, CEO of Hulu LLC;

- Hulu.com and the staging version of the website;

- Lulu.com and Lulu.tv;

- Gerald Ford's report on recognition levels.

## SUMMARY OF OPINION

10.    Based on this material and work, I have concluded that users of Hulu.com and Lulu.com websites are not likely to be confused in the marketplace because:

A.  The Hulu.com and Lulu.com brands are markedly different;

B.  Cognitive processes of memory around brands cause the two brands to be distinct in users' minds;

C.  Users of Hulu.com and Lulu.com are in lean-forward experiences and thus highly involved and aware of the differences between the two websites;

D.  Consumer behavior is goal-driven, thus Hulu.com and Lulu.com will not be placed in the same consideration set by users;

E.  Navigation of the Internet is subject-matter driven, thus Hulu.com and Lulu.com will not be placed in the same competitive space.

## DETAILED ANALYSIS

### A.  The Hulu.com and Lulu.com brands are markedly different

11.    The word brand originates from the Old Norse word "brandr," which means to burn.  Indeed, branding or burning was (and is) the method by which farmers mark their livestock to identify who owns them.[1]  In this sense, a brand is a distinguishing name and/or symbol intended to identify service or goods.[2]  There are two important components of a brand: *tangible* and *intangible*.  The *tangible* component of a brand refers to the physical manifestation of a brand including a name like *Levi's Strauss* or *Bulgari*, a logo like the scripted *Virgin Megastore* logo or the *AT&T* world logo, an image such as the *Marlboro* man or a product design like Apple's *iPod*, or a combination of the above.  In the case of a website, the physical manifestations of a brand include the visual design, the colors used, the layout of the website, the functionalities offered, or the tone of the copy.  The physical manifestation, however, is only one elementary and basic component of the brand.

12.   The more important components of the brand and those that give meaning are the intangible components. As David Ogilvy, the advertising guru, wrote in his book, *Confessions of an Adman*, a "brand is a consumers' idea of a product."  Ogilvy refers here to consumers' thoughts, feelings, perceptions and emotions that develop over time and create associations about the brand.

---

[1] Keller, Kevin L. (2003), *Strategic Brand Management: Building, Measuring, and Managing Brand Equity,* 2nd Ed., Englewood Cliffs, NJ: Prentice-Hall, p. 3
[2] David A. Aaker and Erich Joachimsthaler, *Brand Leadership,* The Free Press, 2001. David A. Aaker, *Managing Brand Equity*, The Free Press, 1991

13.    Based on my review of the Lulu.com website, the Lulu.tv website and my perusal of the forums on these websites, I would expect internet users familiar with the Lulu.com and Lulu.tv websites to recall primarily category or product-specific associations of Lulu. These are associations related to the self-publishing nature of the business. To the extent that there is a brand at all, there will be supporting identity-forming brand associations such as creative, empowering and independent. The personality of the brand might be user friendly, specialized, community and welcoming.

14.    Based on limited information - my review of the Hulu.com teaser website, the staging website for Hulu.com and the deposition of Jason Kilar - I have attempted to derive what brand associations users will have once the Hulu.com website has launched and the brand develops.  The primary brand associations are category or product specific associations, related to the video downloading of quality content and to other destination sites for professional and high quality video material: *on demand*, *easy access*, *convenient*. Identity-forming brand perceptions could include associations such as *authoritative*, *original* and *high quality*. The personality of the Hulu brand will be *contemporary*, and *entertaining* yet *professional*.

15.    An important aspect of a brand is the relationship between a brand and a consumer and the role of brand has in consumers' everyday life and how the brand enmeshes within the cultural context of people.[3] In my opinion, the relationship that Lulu creates with users is that of an "enabler" who will help them accomplish their publishing goals by providing the appropriate tools and audiences for specific activities such as publishing, selling, and connecting with other like-minded users. In contrast, the role of the Hulu brand is very different. It is that of an "entertainer", providing the world's premium content when, where and how users

---

[3] Erich Joachimsthaler, *Hidden in Plain Sight: How to Find Your Company's Next Growth Strategy*, Harvard Business School Press, 2007.

want it.[4] The site will be visited in many different contexts of consumers' everyday lives. These contexts are very different from activities that would motivate a visit to Lulu.com; they concern entertainment experiences, such as enjoying an evening at home during week days, getting together with friends to watch a favorite TV show, relaxing on the weekends, and so on.

16.    In conclusion, Hulu and Lulu will be very different sites and to the extent that they develop as brands, they will invoke very significantly different brand associations. The roles of these brands and the extent to which they enmesh into our cultural contexts and daily behaviors are very different. Hence, they will create very distinct brand identities for their respective websites over time.

**B. Cognitive processes of memory around brands cause Hulu.com and Lulu.com to be distinct in users' minds**

17.    Cognitive processes of memory play an important role in decision since people rely on their memory when deciding which website to visit.[5] The memory traces – in other words, the information stored in memory about brand – contain the brand associations that make up a brand's identity at the user level. Individuals' memory for brand-related information is what they carry around with them when searching for, and deciding about which website they want to visit and use.[6] Therefore, the content of users' memories for a website is absolutely essential for establishing and maintaining its brand identity.

---

[4] www.hulu.com/more.html
[5] J. W. Alba and J. W. Hutchinson (1987), "Dimensions of Consumer Expertise," *Journal of Consumer Research*, 13 (4), 411-54
[6] J. W. Alba and J. W. Hutchinson (1987), "Dimensions of Consumer Expertise," *Journal of Consumer Research*, 13 (4), 411-54

18.    Memory consists of associations among individual elements (e.g., ideas, images, experiences). These associations are often conceptualized as networks of nodes, representing individual memory elements that are connected to one another.[7] Memory networks are frequently represented as having central nodes that refer to the focal object around which the memory is organized and associated nodes, linked to the central node, that refer to information stored in memory about the focal object. For instance, it is generally believed that our knowledge about a person (e.g., our father) is organized around a central node referring to this person (e.g., "Dad"), which is connected to the various attributes we associate with this person (e.g., "profession = writer," "hard working," "born on February 15, 1942"; "married to Mom", etc.). The amount of information contained in a given memory network, and how tightly the nodes are interconnected, depends primarily on the experiences that the person has had with the focal object (e.g., person, event, or website).[8] For example, the memory network for a spouse will have many highly interconnected nodes, whereas the memory network for a distant relative will be much simpler.

19.    With respect to users' memory for websites, it is generally believed that the brand name often serves as a central node in a brand-related network.[9] In some case, the brand's visual identity (e.g., its logo, typeface, layout) can be so closely connected to the brand name that it operates in virtually the same way as the brand's central node.[10] Other elements or nodes in a brand's memory network, sometimes called a brand's "memory trace," represent beliefs about

[7] John R. Anderson (1983), *The Architecture of Cognition*. Cambridge, MA: Harvard University Press

[8] J. W. Alba and J. W. Hutchinson (1987), "Dimensions of Consumer Expertise," *Journal of Consumer Research*, 13 (4), 411-54

[9] Kevin L. Keller (2003), *Strategic Brand Management* (2nd Edition ed.). Upper Saddle River, NJ: Prentice Hall

[10] Keller Kevin L. Keller (2003), *Strategic Brand Management* (2nd Edition ed.). Upper Saddle River, NJ: Prentice Hall; B.H. Schmitt and A. Simonson (1997). *Marketing aesthetics: The strategic management of brands, identity and image*. New York: The Free Press

the brand's main attributes and benefits (e.g., functionality, quality, usefulness), experiences with

the product whether direct (e.g., personal experience) or indirect (e.g., word-of-mouth), and other

beliefs or feelings about the brand (e.g., knowledge about the company that owns and produces

the website, feelings about the website's functionality). The figure below illustrates how brand-

related memories may be organized as a network.



20.    In the case of Lulu.com, a typical user's memory network may look as follows:



21.    In the case of Hulu.com, we can imagine that a future user's memory network may look like this:



22.    The content and structure of a brand's memory network are unique to each brand.[11] The website itself and its associated marketing activities which is managed through proactive brand management, such as newsletters or banner ads are focused on creating and sustaining the types of associations in users' minds that will translate into a strong brand identity, strong and positive attitudes toward the brand, and ultimately repeat visits and loyal usage. Most

---

[11] K. L. Keller (1993), "Conceptualizing, Measuring, and Managing Customer-Based Brand Equity," *Journal of Marketing*, 57 (1), 1-22; Kevin L. Keller (2003), *Strategic Brand Management* (2nd Edition ed.). Upper Saddle River, NJ: Prentice Hall

brand names tend to be associated with a category label that operates at a level of abstraction that reflects how people functionally organize their world.[12]

23.    The content and structure of someone's brand network will depend on his/her level of awareness and familiarity with the brand.  According to Dr. Gerald Ford, there is a "lack of awareness of either the Lulu self publishing site or the Lulu video content site":  when responding to an aided question regarding self-publishing websites, 7% of those surveyed said they had heard of Lulu, but 5% also responded that they had heard of a fictitious in-treatment control Internet site by the name of Moho.[13]  Dr. Ford further states: "Once there is an adjustment for mismeasurement error, the percent of respondents who had heard of an Internet site for self publishing by the name of Lulu is two percent (7% - 5% = 2%)."[14]  For the net 2% polled that are aware of Lulu.com, some may be simply aware of the website, while others may be frequent visitors and contributors.  For people simply aware of the website, the category in memory for Lulu.com could be "self-publishing" or "user-generated content"; for those who are frequent visitors and contributors, the category may be "creative community".  Similarly, I anticipate that future visitors to Hulu.com would categorize the website as "TV entertainment" in their memory.

24.    In conclusion, the perceptions, beliefs and experiences that users have of Lulu and that users will most probably have of Hulu cause the two brands to be distinct in users' minds.

**C. Users of Hulu.com and Lulu.com are in lean-forward experiences and thus are highly involved and aware of the differences between the two websites.**

---

[12] David A. Aaker and Kevin Lane Keller (1990), "Consumer Evaluations of Brand Extensions," *Journal of Marketing*, 24 (January), 27-41; Joan Meyers-Levy and Alice M. Tybout (1989), "Schema Congruity as a Basis for Product Evaluation", *Journal of Consumer Research*, 16 (june), 39-53
[13] Declaration of Gerald Ford, paragraph 17.
[14] *Id.*

25.     Using the Internet to visit Hulu.com and Lulu.com is a lean-forward experience because it requires the user to take an active role, as opposed to a lean-back experience, which is usually passive.[15] This holds true for every segment of consumers that adopt new technologies like the internet for their daily usage including early adopters, mainstream consumers, and sidelined citizens.[16] Unlike other forms of mass-communications media, like a television or a radio, a website will remain stagnant unless the user gives the browser a direction to go in. Unless a user purposely types in www.hulu.com or www.lulu.com in the URL bar of an Internet browser, or clicks on a hyperlink that leads to one of these two websites, the browser will not go anywhere.  The Internet requires users to have a functional goal in mind – for example, seeking advice about self-publishing a novel, or watching a favorite TV show that you missed last night – and to become proactive in their use of the medium.  Beyond the initial input of the URL, the Internet requires that users take initiative, to provide feedback, to state preferences, to choose the most responsive sellers or service-providers.[17]  For Hulu.com or Lulu.com users, this would mean, for example, choosing one episode of a certain TV show to watch, or deciding to post on a particular board to seek advice.  In this sense, using Hulu.com and Lulu.com requires consumer interactivity, asking that web-users "lean forward" and participate actively with these two websites.

26.     In their state of leaning forward, Hulu.com and Lulu.com users are highly involved with these two websites and their offerings.  High involvement exists when we show interest in something, and we are eager to process information about it.  Using Hulu.com and

---

[15] David A. Aaker and Erich Joachimsthaler (2000), *Brand Leadership*, The Free Press, New York.
[16] The research firm Forrester Research has classified consumers into three types: Early Adopters, Main Stream Consumers, and Side-lined Citizens. This segmentation was then used to study the behavior of consumers across various technologies (Charlene Li (2007), "Technology Adoption Affects Social Computing and Brand Affinity," Forrester Research, October 4).
[17] Andrews, Fred.  "Ideas Into Action:  Regarding Customers as Business Collaborators."  *The New York Times:* February 9, 2000.

Lulu.com is very involving because the experiences are highly participatory, offer a good deal of control, and present opportunities for personalization. Furthermore, Hulu.com and Lulu.com leverage the highly involving nature of the Internet to create greater impact and deeper resonance with their users. As my co-author David Aaker and I wrote in the book, *Brand Leadership*:

> "Because greater involvement and active participation make the Web considerably more different from more conventional media, any impact – whether positive or negative – is likely to be more intense. Learning is more likely to be remembered and to influence future behavior; active involvement is more likely to create a bond between the brand and the person. The brand is more likely to become part of a person's world, and to do so in a vivid fashion."[18]

A manifestation of the high involvement between users and certain websites is how users define themselves through the websites they frequent. For example, a loyal Lulu user may choose to post only on the Lulu.com forums, and snub the same forums on competitors like iUniverse or iPublish; a Hulu fan may choose to only access his/her favorite TV shows on Hulu and not on Joost.com or on the studio websites. This kind of loyalty to websites is frequent and attests to the level of involvement that the Internet draws. Moreover, user loyalty to Hulu or Lulu is likely to integrate the website into the user's daily life, thus creating a deep sense of intimacy and dependence between the user and the brand.

27.     In conclusion, because the usage of Hulu.com and Lulu.com is a lean-forward experience that is highly involving, users of the Hulu and Lulu websites will be highly aware of the differences between the two websites.

**D. Consumer behavior is goal-driven, thus Hulu.com and Lulu.com will not be placed in the same consideration set by users**

---

[18] Joachimsthaler, Erich and Aaker, David. *Brand Leadership*. Free Press, 2000.

28.     Consumer decision making is generally conceived as consisting of several distinct stages.[19] In the next several paragraphs, I will describe these stages. I will draw on the fundamental academic literature, empirical research over several years and also more recent research with a focus specifically on consumer behavior given the widespread use of the internet and other interactive technologies.[20] The first stage, called "problem recognition" or "need recognition," is the stage in which the consumer first experiences a problem or a need (e.g., "I have completed my short story collection"), and realizes that a product or service of a certain category may be needed (e.g., "I need a self-publisher for my writing").

29.     The second stage, called information search, is the stage in which the consumer gathers information to make the decision. Different types of information may be searched at this stage including (a) information about what options are available (e.g., "Who self-publishes short story collections?"), (b) information about the main attributes of the options (e.g., "How much does it cost to produce a book?"; "What printing and binding technique should I choose?"), and (c) information about how to make the decision (e.g., "I should ask other authors which self-publisher they recommend"). Typically, the extent of the information search depends on the amount of experience and familiarity that the consumer has with the decision and the product category.

30.     The next stage is called consideration set formation. Because product choice often involves a multitude of alternatives, consumers almost always narrow down the set of options or alternatives to a more manageable subset called the consideration set. The consideration set is the set of options that "the consumer considers seriously when making a purchase and/or

---

[19] Wayne D. Hoyer and Deborah J. MacInnis (2003), *Consumer Behavior* (3rd ed.). Boston, MA: Houghton Mifflin
[20] Brian Haven (2007), Marketing's New Key Metric: Engagement, Forrester Research, August 8.

consumption decision".[21] Consideration sets have been found to contain typically between three and six alternatives across a broad range of product categories.[22] Generally, it is only after they have narrowed down the options to this smaller set that consumers proceed with a more formal evaluation of the options.[23]

31.     The notion of consideration set is particularly important for this case.  A consumer hoping to self-publish their short story collection will likely consider affordable, web-based companies like Lulu.com, iUniverse.com, and Xlibris.com vs. established, third-party publishers like Random House or Penguin Press.  Consumers doing their own short video and wanting to share it would go to Lulu.TV or Youtube.com.  Notably, their consideration set would not include an entertainment site like Hulu.com, which allows users to view premium, professionally-produced video content like "The Office" or "The Simpsons." After all, the product or service offered by Hulu.com does not allow the consumer to satisfy their goal of sharing materials of their own creation.  The inverse is also true: a consumer hoping to find premium television shows, yet ends up on Lulu.com, will not be able to satisfy their goals of watching popular, nationally syndicated TV shows.

32.     In conclusion, the nature of the consumer decision-making process is such that the Hulu.com and Lulu.com would not be placed in the same consideration set since they satisfy fundamentally different consumer goals.

---

[21] John R. Hauser and Birger Wernerfelt (1990), "An Evaluation Cost Model of Consideration Sets," *Journal of Consumer Research*, 16 (4), p.393
[22] *Id.*
[23] J. Edward Russo and Abraham D. Horowitz (1994), "Expert Systems for Consumers."  In Beherns, G., K.P. Kaas, B. Neibecker, V. Trommsdorff, and P. Weinberg (eds.), Konsumentenforschung, Munich: Verlag-Vahlen, 367; John W. Payne (1976), "Task Complexity and Contingent Processing in Decision Making: An Information Search and Protocol Analysis," *Organizational Behavior and Human Performance*, Vol. 16, 694

**E. Navigation of the Internet is subject matter driven, thus Hulu.com and Lulu.com will not be placed in the same competitive space**

33.     The Internet has become one of the most popular tools for consumers to conduct an information search.   In fact, a study done by Pew Internet and American Life Project reports that "the act of using the Internet to answer basic questions is second only to email in its popularity as an online activity and easily one of the most essential functions of the Internet." In contrast to the beginning of the Internet era, when people tended to "surf" the Internet by clicking from one website to another in a "stream-of-conscious mode", today's Internet users behave in a more utilitarian way.  91% of Internet users access email and/or uses a search engine to find information.

34.     Internet search engine enable consumers to gathers information by subject matter. Using the example cited above, a consumer can type their goal (i.e., self-publishing a short story collection) in a search engine like Google or Yahoo.  Searching "self publishing" on Google, for example, yields Lulu.com as the first non-sponsored link:



As pictured above, the search results for "self publishing" include Lulu.com and other self-publishing websites; however, Hulu.com is not mentioned anywhere on this page.  Thus, consumers seeking out a self-publishing website would only be made aware of Lulu, and not Hulu.  In a similar fashion, searching for a particular professionally-produced, premium content television show (i.e. The Office) will eventually yield Hulu.com as one of the first 10 results on a search engine.  Even now, before the launch of Hulu.com, a consumer searching "The Office" on Google will not be made aware of Lulu.com, nor Lulu.TV:



35.    The fact that neither of the content-based searches (i.e., searching for "self publishing" versus "The Office") result in both Hulu and Lulu to show up on the results page indicates that the two websites do not inhabit the same competitive space, and are unlikely to cross paths on a search engine – indeed, the only results that mention both Hulu and Lulu in the same line are those that concern this litigation.

36.    In the unlikely event that Hulu and Lulu happen to appear adjacent to each other on a results page, the search result blurbs would clarify any possible confusion.  The one- or two-

lines written below the URL of a search engine result are usually descriptive of the target

website's functions and properties.  For example, Hulu.com's search result blurb reads:

> "**hulu**. Sign up for an invite to the **Hulu** private beta, coming in October : **...**
> Home | **Hulu** Terms of Use | **Hulu** Privacy Policy."

In contrast, Lulu.com's search result blurb reads:

> "Looking for self publishing resources? **Lulu**.com lets you publish and sell and
> print on demand books, e-books, online music, images, custom calendars and **...**"

As a further point of comparison, Lulu.TV's search result blurb states:

> "The Home for Open Media. Come check out our vlogs, videos, mashups, tunes,
> clips, podcasts, vidcasts and shorts. Upload and share. Watch and rate."

Even on a results page from searching "Lulu", these blurbs clarify any possibility of mix-

up between many different businesses named "Lulu" through the short blurb – a person

looking for Lulu, the self-publishing website, will read the two-line descriptor, and will

accordingly avoid Lulu the Dim Sum restaurant, Lulu the fashion retailer, and so forth.





These blurbs make clear that Hulu.com and Lulu.com (and even Hulu.com and Lulu.TV) are substantially different websites, thus minimizing any possible confusion should the two appear next to each other on a search results page.

37.      In conclusion, consumers' subject matter driven navigation of the Internet ensures that Hulu.com and Lulu.com will not be placed in the same competitive space.  The sites relate to distinct subject matters (i.e., entertainment and self-publishing) and would not be displayed together in a search engine's results page during a consumer's information search.

## CONCLUSION

38.      To conclude, I believe that all the above factors overwhelm the similarity of the website names in abstract, and thus ensure recognition of the difference between the two marks in the marketplace.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ___ day of _October_, 2007.

_____
Erich Joachimsthaler

**Exhibit A: Full Resume, Publications, Academic Credentials**

a)      ERICH A. JOACHIMSTHALER, Ph.D.

**Residence**:                                          **Office:**
311 Amsterdam Avenue, # Ph-B              125 Park Avenue, Suite 1500
New York, New York 10023                    New York, New York 10017

Tel. 1-917-441-9141                            Tel. 1-212-965-0900
Cell 1-917-679-8614                             Fax 1-212-965-0992

Email: ej@vivaldipartners.com

**Education**

| | | | |
|---|---|---|---|
| Post-Doctoral Research Fellow | 1987 | - | 1988 | Harvard Business School |
| Doctor of Philosophy | 1981 | - | 1985 | University of Kansas Business Administration Specialization: Marketing and Quantitative Methods |
| Master of Science | 1980 | - | 1981 | University of Kansas Marketing Research |
| Vordiplom | 1979 | - | 1980 | University of Frankfurt Economics |
| Diplom Betriebswirt | 1976 | - | 1979 | Fachhochschule Giessen-Friedberg Business Administration and Computer Science/ |

**Doctoral Dissertation**            "Lp-Norm Estimation in Discriminant Analysis."
                                            Chairs: John L. Lastovicka and Kenneth O. Cogger

**Academic Experience**

2004   -            Visiting Professor of Business Administration
                     Department of Marketing, Instituto Estudios Superios de la Empresa
                     (IESE), Barcelona

1994   -   1998     Rust Visiting Professor of Business Administration

|  |  | Colgate Darden Graduate School of Business Administration University of Virginia, Charlottesville |
|---|---|---|
| 1989 | - 1994 | Associate Professor of Marketing Department of Marketing, Instituto Estudios Superios de la Empresa (IESE), Barcelona |
| 1985 | - 1987 | Assistant Professor of Marketing Department of Marketing, University of Houston, Houston |
| 1982 | - 1984 | Adjunct Professor of Management Institute of Safety and Systems Management, University of   Southern California, Los Angeles |
| 1981 | - 1985 | Graduate Instructor in Marketing School of Business and School of Journalism, University of Kansas, Lawrence |

## Work Experience

| 1999 |  | Founder and Chief Executive Officer, Vivaldi Partners, a strategic consulting firm with a focus on strategy, innovation, marketing and building of strong brands |
|---|---|---|
| 1998 | - 1999 | Chairman, Prophet Brand Strategy, New York and San Francisco. |
| 1995 | - 1998 | Aaker-Joachimsthaler & Partners (AJ&P), Charlottesville and Berkeley. AJ&P was acquired by Prophet Brand Strategy in January of 1999. |
| 1990 | - 1994 | Alza Limited - Strategic Marketing and Reseach Consultancy, Barcelona. |

## Professional Memberships

American Marketing Association (AMA)
The Institute of Management Science (TIMS) - Marketing College
The Advertising Research Foundation
The Conference Board

## PERSONAL INFO

Erich is married to Daniela Laura Gomez. Daniela was born in Santa Fe, Argentina and is an audiologist with a specialty for cochelar implants. They have two daughters, Sara, and Sophia and one son, Julian.

**PUBLICATIONS**

**A. Publications**

Brand Strategy and International Marketing

Capturing the Ecosystem of Demand, **Advertising Age,** 2007, with Agathe Blanchon-Ersham.

Profitable Growth through Opportunities in Plain Sight, **Absatzwirtschaft** Sonderausgabe 2006, with Markus Pfeiffer

Power-Brands der nächsten Generation, **Absatzwirtschaft** Sonderausgabe 2005, with Markus Pfeiffer

Don't Just Fit In – Stand out: In Search of Profitable Growth, **Absatzwirtschaft**, 2005.

Der Zweck heiligt die Mittel, **Absatzwirtschaft**, 2004.

Wie man mit Kontextrelevanz Wachstum schafft, **Absatzwirtschaft Online,** 2004.

Ist das Markenarchitektur-Konzept noch zeitgemaeß?, **Absatzwirtschaft Online**, 2004.

Muessen die Marken in Zukunft ihre Herkunft verleugnen?, **Absatzwirtschaft**, 2003.

Mitarbeiter: Die vergessene Zielgruppe fuer Markenerfolge, **Absatzwirtschaft**, 2002.

Je kleiner desto besser, **Absatzwirtschaft**, 2002.

Getting the most out of your branding effort, **Markenartikel,** 2002.

Aufbau von Marken im Zeitalter der Post-Massenmedien, **Moderne Markenfuehrung,** 2001, 3. Auflage, Franz-Rudolf Esch (Eds), Gabler Verlag, Wiesbaden, with David Aaker.

Top Marken Strategien: Markenwert schaffen und absichern, **Absatzwirtschaft,** 2000.

The Branding Relationship Spectrum: The Key to the Brand Architecture Challenge, **California Management Review**, 2000, with David A. Aaker.

Brand Leadership, **Brandweek,** 2000, with David A. Aaker.

Brand Leadership, **The Free Press**, New York, 2000, with David A. Aaker. Translated in German, Spanish, Italian, Finnish, Japanese, Korean, and Portugese.

The Lure of Global Branding, **Harvard Business Review,** 1999, with David A. Aaker.

Building Brands without Mass Media Advertising: Lessons from Europe, **Harvard Business Review**, 1997, with David A. Aaker.

IMOS: An International Market Opportunity Screening System, **Journal of International Marketing**, 1994, with Antonie Stam and V. Kumar.

After the Wall: Marketing Guidelines for Eastern Europe, **Sloan Management Review,** 1991, with John A. Quelch; reprinted in: Después del Muro: Pautas de Comercialización para Europa del Este, **Alta Dirección**, 1992 and European Marketing: Readings and Cases, Chris Halliburton and Reinhard Hünerberg, Addison-Wesley, 1993.

El Valor del País de Origin (The Value of Country of Origin Information), **Actualidad de Economia**, 1991.


Methodology

New Answers for Old Questions: Conjoint Analysis Takes the Guess Work out of Marketing Decisions, **Dirección Farmaceutica**, 1994, with Paul Green.

Mathematical Programming Procedures for the Classification Problem in Discriminant Analysis: A Review, **Multivariate Behavioral Research**, 1990, with Antonie Stam.

A Robust Mixed-Integer Approach to Establish Classification Rules for the Discriminant Problem, **European Journal of Operational Research**, 1989, with Antonie Stam.

Solving the Classification Problem in Discriminant Analysis Via Linear and Nonlinear Programming Methods, **Decision Sciences**, 1989, with Antonie Stam.

Four Approaches to the Classification Problem in Discriminant Analysis, **Decision Sciences**, 1988, with Antonie Stam.

4MODE1 AND 4MODE2: Fortran IV Programs for the Four-Mode Components Analysis Problem, **Journal of Marketing Research**, (Computer Abstracts), 1985, with John Lastovicka.

RELCON: A Program for the Estimation of Internal Consistency of Composites with Congeneric Measurement Properties, **Journal of Marketing Research**, (Computer Abstracts), 1985, with Lane Curtis.


Technology, Strategy and Industrial MarketingBuying/Selling

Decision Support System Implementation: A Meta Analysis, **Management Information Systems (MIS) Quarterly**, 1992, with Maryam Alavi.

Sales Resource Allocation with Multiple Conflicting Objectives: An Interactive Decision Support Aid, **Decision Sciences,** 1991, with Antonie Stam and Lorraine Gardiner.

Order (Market) Selection Given Multiple Conflicting Objectives and Goals: An Interactive Marketing-Manufacturing Decision Model, **Decision Sciences**, 1989, with Antonie Stam and Lorraine Gardiner.

Influence of Formalization on the Organizational Commitment and Work Alienation of Salespeople and Industrial Buyers, **Journal of Marketing Research,** 1988, with Ronald Michaels, William Cron, and Alan Dubinsky.

Multicriteria Issues in Marketing: A Sales Resource Allocation Example and Potential Areas of Future Research, **Lecture Notes in Economics and Mathematical Systems Series**, 1988, Springer Verlag, with Lorraine Gardiner and Antonie Stam.

Individual Difference Factors in the Satisfaction and Usage of a Marketing Decision Support System, **Journal of Marketing Research**, 1987, with George Zinkhan and Thomas C. Kinnear.

Role Stress Among Industrial Buyers: An Integrative Model with Implications for Marketing, **Journal of Marketing**, 1987, with Ronald E. Michaels and Ralph L. Day.


Methodology and Consumer Behavior

Measurement Validity of VALS and a Custom Lifestyle Typology with Multiplicative Factoring of Multimethod- Multitrait Matrices, **Journal of Marketing Research**, 1990, with John Lastovicka and John P. Murry.

Improving Personality-Behavior Relationships, **Journal of Consumer Research**, 1988, with John Lastovicka.

A Lifestyle Typology to Model Young Male Drinking and Driving, **Journal of Consumer Research**, 1987, with John Lastovicka, John P. Murry, and Gaurav Bhalla.

Optimal Stimulation Level, Exploratory Behavior Models, **Journal of Consumer Research**, 1984, with John Lastovicka.


**B. Books & Book Chapters**

*Hidden in Plain Sight: How to Find and Execute your Company's Next Big Growth Strategy*, Harvard Business School Press, 2007.

"Strategie und Architektur fuer Markenportfolios" in *Handbuch Markenartikel*, to be published in 2004, Manfred Bruhn, Gabler Verlag, Wiesbaden, with Markus Pfeiffer.

*Brand Leadership*, The Free Press, New York, 2000, with David A. Aaker. Translated in German, Spanish, Italian, Finnish, Japanese, Korean, and Portugese.

"Branding Challenges For Transitional Economy Firms in Local Markets," in *Marketing Issues in Transitional Economies*, 1999, Rajeev Batra, Kluwer Academic Publishers, Norwell, Massachusetts, with Jordi Garolera and Dana Pillsbury.

"Nestle Buitoni: The House that Mamma Built," in *Relationship Marketing: Strategy and Implementation*, 1999, Helen Peck, Adrian Payne, Martin Christopher, and Moira Clark, Butterworth-Heinemann, Oxford, with Edward Hickman.

**C. Working Papers & Teaching Notes, etc.**

Eastman Kodak: Digital & Applied Imaging, Darden Educational Material, 1996.

Energia General (Eg3): Retail Service Stations in Argentina, Darden Educational Material, 1996.

Nike Europe, IESE Case Publication No. M-968, 1995.

Renault SA, IESE Case Publication No. M-966, 1995.

Hugo Boss AG, IESE Case Publication No. M-965, 1995.

IBM Ambra, IESE Case Publication No. M-963, 1995.

ABB: Electrical Motors, Case Study, 1995.

CCNR-Coca-Cola Nestlé Refreshments, Case Study, 1995.

Corporate Brands, IESE Working Paper.

The Andrex Case Story, IESE Case Publication No. M-952, 1994.

The Nestlé Buitoni Case Story: The House that Mamma Built, IESE Case Publication No. M-953, with Edward Hickman, 1994.

Marketing Metamorphosis: From Products to Brands to Consumers, IESE Working Paper No. MN-282, 1994.

Building Global Brand-Consumer Relationships, IESE Working Paper No. MN-294, 1994.

Maintaining Global Brand-Consumer Relationships, IESE Working Paper No. M-293, 1994.

Conjoint Analysis Takes the Guess Work Out of Pharmaceutical Marketing Decisions, IESE Publication No.: MN-284, with Paul Green, 1994.

The Häagen-Dazs Story, IESE Case Publication No. M-940, with Peter Taugbol, 1994.

The Swatch Story, IESE Case Publication No. M-930, 1993.

Anfi del Mar, S.A., IESE Case Publication No. M-888, with Madhur Mehta 1993; Teaching Note No.: MT-8, and Supplementary Material No.: M-924.

RCI: Service Quality and Its Measurement, IESE Case Publication No. M-905 with Brian Hare, 1993; Teaching Note for RCI M-10.


## EXHIBIT B: EXPERT WITNESS EXPERIENCE

*Coty (Davidoff) v. CVS*

*Exide v. Enersys*

*Adidas America, Inc. & Adidas-Salomon AG v. Kmart Corporation*

*Adidas America, Inc. & Adidas AG, v. Payless ShoeSource, Inc.*

*Deere & Company v. MTD Holdings Inc., formerly known as MTD Products Inc*

*Verizon v. Nextel*

*United Parcel Service of America v. The Gator Corporation*

*Richard Bach and Russell Munson v. Forever Living Products*

*Nissan North America, Inc. & Nissan Motor Co., LTD. v. Audi AG and Volkswagen of America, Inc.*

*Remo Imports LTD. v. Jaguar Canada Inc. & Jaguar Cars Limited*