UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:07-CV-347-D

LULU ENTERPRISES, INC.,                )
                                       )
                    Plaintiff,         )      **REPLY IN SUPPORT OF PLAINTIFF**
                                       )      **LULU ENTERPRISES, INC.'S**
v.                                     )      **MOTION FOR PRELIMINARY**
                                       )      **INJUNCTION**
N-F NEWSITE, LLC  and HULU TECH,       )
INC.,                                  )
                                       )
                    Defendants.        )

       In its brief, Defendant N-F NewSite, LLC ("N-F") seeks to avoid the imposition of a

preliminary injunction by adopting strained and/or mistaken interpretations of the law,

reinventing the facts as disclosed by the record, and, in essence, asking the Court to believe a

story that N-F itself cannot get straight.  All the while, N-F cannot escape the simple fact that of

all the possible marks in the world under which it might offer digital content through the

Internet, it chose "HULU"; and did so with the knowledge that a company named Lulu was

already doing the exact same thing.  This reply brief addresses only a few of N-F's misguided

arguments; Lulu relies on its primary brief to address the rest.

**I.      LULU WILL SUFFER IRREPARABLE HARM IF ITS MOTION IS DENIED.**

       There can be no question that the injury to Lulu's goodwill and reputation occasioned by

N-F's improper use of the HULU name and marks is, by its very nature, irreparable—that is, not

adequately remediable through a monetary award.  See, e.g., Societe Des Produits Nestle, S.A. v.

Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir.1992) ("By its very nature, trademark

infringement results in irreparable harm because the attendant loss of profits, goodwill, and

reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately

Dockets.Justia.com

be compensated."); <u>Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.</u>, 754 F.2d 91, 95 (2nd Cir. 1985) ("[I]rreparable injury exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial.").

N-F seeks to avoid that basic conclusion by arguing that, because "Plaintiff has presented no evidence of a single instance of actual consumer confusion, and no lost sales" it can show only a "fear of confusion." (N-F Mem. 10.)[1] The problem with that argument, of course, is that Lulu is not required to prove <u>actual</u> confusion—particularly given that N-F has yet to launch its services. <u>See, e.g.</u>, <u>Commc'ns Satellite Corp. v. Comcet, Inc.</u>, 429 F.2d 1245, 1251 (4th Cir. 1970) (reversing district court's refusal to issue an injunction against trade name and trademark infringer and noting that "quite naturally, proof of actual confusion is slight because this suit was instituted when Comcet was still in its infancy.").

In any event, Lulu has obtained evidence of actual confusion in the form of consumer surveys and focus group evidence, which will be filed with the Court forthwith (with the Court's permission), and of which N-F has been made aware through informal discussions between counsel that began on or before September 27, 2007. Those surveys, as well as other evidence in the record, confirm that Lulu will be irreparably harmed if an injunction does not issue.

That harm will take at least two forms. First, consumers seeking Lulu's goods and services will be confused as to the source or origin of N-F's goods and services, resulting in lost

---

[1] N-F's selective placement of an ellipsis in the quotation from <u>John Lemmon Films, Inc. v. Atlantic Releasing Corp.</u>, 617 F. Supp. 992 (W.D.N.C. 1995) at page 9 of its brief plainly misrepresents that court's holding, and highlights the weakness of N-F's position in this regard. The <u>Lemmon Films</u> court's discussion of "feared confusion" as insufficient to establish irreparable harm was expressly tied to the fact that the defendant's allegedly infringing product would not be released until two years later. <u>Id.</u> at 995. As the court explained "[i]f the Plaintiff's film were to be released at the same time as the Defendant's film, the likelihood of this feared confusion might be less speculative. Fear of confusion <u>between films marketed and shown two years apart, however</u>, is insufficient evidence that irreparable harm will be suffered." <u>Id.</u> (emphasis added to portion omitted by N-F). Recognizing that this holding is inapplicable to a case such as this, in which the defendant plans to launch its services immediately— and indeed claims that it will be irreparably harmed if it is not permitted to do so—N-F deceptively omits from its quotation any mention of the two year delay that was the basis for the <u>Lemmon Films</u> court's statement.

customers and sales to Lulu.  Equally disastrous, however, is the overwhelming effect that would result from the N-F's planned "ubiquitous distribution" of the HULU name and marks, and its ready access to nationwide media outlets to promote its goods and services.[2]  See Insider Chatter.com, NBC on Why Hulu.com IS a YouTube Killer: OMMA Report, http://blog. insiderchatter.com/2007/09/24/nbc-on-why-hulucom-is-a-youtube-killer-omma-report (last visited October 11, 2007) (attached as Exhibit C).  Consumers exposed to the mass-distributed HULU name and marks, who then encounter Lulu's similar marks, goods and services, may well assume that Lulu's goods and services actually originate with N-F, or worse, that Lulu is the unauthorized infringer of N-F's marks.  This so-called "reverse confusion," and the attendant harm to Lulu's goodwill and reputation, would be catastrophic to Lulu's growing business.  See, e.g., Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998) ("Dreamwerks notes that whatever goodwill it has built now rests in the hands of DreamWorks; if the latter should take a major misstep and tarnish its reputation with the public, Dreamwerks too would be pulled down.");  Fisons Horticulture, Inc. v. Vigoro Industries, Inc., 30 F.3d 466, 474 -475 (3rd Cir. 1994) ("In reverse confusion the junior user saturates the market with a similar trademark and overwhelms the senior user. The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark-its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.") (internal citations omitted).

---

[2] As an aside, N-F's representation that Lulu initiated this lawsuit "in part for publicity" (N-F Mem. 4 n.5), is as unsupported as it is irrelevant to the merits of this action.  N-F's suggestion is flatly contradicted by testimony that N-F's counsel elicited during the deposition of Lulu's CEO, Bob Young:  "There was substantially less time spent on this than other [PR] initiatives because once we got the story out, once we realized the press was actually interested in the story and after the story had been picked up for a couple of days, we specifically refused to comment or promote the story any further . . . . We were trying to dissuade journalists from writing the story." (Young Dep. 188:16-25 (emphases added).)

## II.    N-F HAS FAILED TO ESTABLISH THAT IT WILL SUFFER IRREPARABLE HARM IF IT IS ENJOINED FROM USING THE "HULU" NAME AND MARKS.

There are various problems with N-F's argument that it will suffer "substantial" harm if it not permitted to launch.  First and foremost, Lulu's motion does not seek to enjoin N-F from launching its goods and services; it merely seeks to prevent the use of the HULU name and marks, which N-F began using one week prior to the filing of this action.  There is nothing keeping N-F from launching its services under a different name, and indeed N-F conducted business under a different name—NewSite—for all but one week since the venture was conceived "almost a year ago."  (N-F Mem. 11.)  In this regard, Augusta National, Inc. v. Executive Golf Management, Inc., 996 F. Supp. 492 (D.S.C. 1998), is instructive.  There, the court considered whether the defendant, who had adopted the trade name "JUNIOR MASTERS" in conjunction with the provision of academic and golf instructional services, would be harmed by the issuance of a preliminary injunction.  The court concluded it would not, and issued the preliminary injunction, explaining that defendant had used other trade names, and that

> [T]he requested injunction would not disrupt the Defendants from continuing to provide their combination of academic and golf instructional services . . . . The injunction would require, however, that the Defendants not continue to use the term "JUNIOR MASTERS" in conjunction with those services, but that should not prove particularly burdensome since the Defendants are already using and are known by other trade names . . .

Id. at 497.  Here too, Lulu does not seek to disrupt N-F from providing goods and services, but only to prevent the use of a name and marks that are confusingly similar to its own.  As a result, N-F's arguments regarding the supposed "economic harm" it will suffer—namely, carrying costs for equipment and personnel and lost advertising revenue—miss the mark:  those costs can be easily avoided by launching goods and services under a noninfringing name and mark.

Second, N-F seeks to rely on the supposed harm to its "marketing and branding" of the Hulu name and marks, and argues that an injunction would "require [it] to recreate the image it

attempted to establish in the marketplace and cast a cloud on [its] reputation . . . ." (N-F Mem. 12.)  N-F expressly waived its right, however, to "use evidence of [its] operations or any goodwill or name recognition it has established" after September 13, 2007 to oppose this motion, in exchange for Lulu's agreement to forego hearing on its motion for a temporary restraining order.  (9/13/07 E-Mail from Jay Silver to Leslie O'Toole and Tom Segars, attached hereto as Exhibit A.)  As a result, the only "reputation" or "image" relevant to this motion is that which was created between N-F's public announcement of the name, on August 29, and September 13, a period of approximately two weeks.  In that regard, the only evidence in the record, beyond Jason Kilar's self serving declaration regarding the "e-mails and comments" he has received— none of which were produced to Lulu or submitted to the Court—are copies of news articles that reflect a very <u>negative</u> response to the HULU name (<u>See</u> Lulu Mem. 10.)

Third, and perhaps most importantly, N-F's brief places great emphasis on the "extraordinary steps" it has taken to "reach the public stage of its launch."  N-F has conceded, however, that it has no plans to reach the "public stage of its launch" in the immediate future.  In the short term, N-F plans only to conduct a private beta test with a selected group of users that is meant "to ensure that [its] technology will work as intended, receive feedback from this initial group of users, and then incorporate that feedback to make improvements as [it] expand[s] the launch to a broader audience."  (Kilar Decl. ¶ 27.)  N-F has failed to explain how the inability to use the name and mark "HULU" in connection with this private beta test, which apparently is meant only to address the technical performance of its website, will injure it in any respect.

## III.    LULU IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS.

N-F directs the bulk of its arguments regarding Lulu's claim of unfair competition to establishing (1) that Lulu's marks are "weak," (2) that the goods and services it plans to offer are

"distinct and unrelated" to Lulu's services, and (3) that Lulu's users are sophisticated, and hence are unlikely to be confused.  None of those arguments are persuasive.

### A.     The LULU Name and Marks are Distinctive and Have Considerable Strength.

N-F's argument in this regard rests on two fundamental misunderstandings of the law. First, N-F suggests that the LULU marks are "conceptually weak," because they are "at best suggestive."  (N-F Mem. at 18.)  Not so.  The LULU marks fall into that category of "arbitrary" marks, namely, those that are "comprised of words in common usage," but "neither suggest any mental image of the associated product nor describe it in any way."  Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996).  "Suggestive" marks, by contrast, "conjure images of the associated products."  Id. N-F has failed to explain how the word "Lulu" conjures any images associated with Lulu's digital media content.  Because it is undisputed that arbitrary marks "are inherently distinctive, and therefore receive the greatest protection against infringement," there can be no question that the LULU marks are conceptually strong.  Larsen v. Terk Technologies Corp., 151 F.3d 140, 148 (4th Cir. 1998).

Second, N-F suggests that Lulu's marks are weak because (1) its research reveals a number of third party names and marks that incorporate the word "lulu," or similar words; and (2) a telephone survey conducted by its expert suggests that of the people surveyed, only 2% were aware of Lulu and its business.  As to the first argument, the law is clear that third party uses of a plaintiff's trademark or trade names do not significantly undermine a mark's strength unless those trademarks or trade names are used in connection with the provision of goods in the same field or market.  See Synergistic Int'l LLC v. Korman, 470 F.3d 162, 174 (4th Cir. 2006) (finding that the plaintiff's "GLASS DOCTOR" mark was strong despite the fact the word "doctor" was commonly used in other industries, because "it is not commonly used in businesses

dealing with glass or windshield installation and repair.")[3]  N-F's brief fails to identify a single instance in which the mark "lulu" is actually being used in connection with goods and services that are related to those offered by Lulu, and hence N-F's evidence in this regard fails to establish that Lulu's marks are "weak."

Similarly unconvincing is N-F's "awareness survey," which supposedly shows that Lulu is not well known in the relevant market.  One fundamental flaw in that survey is that it violates N-F's own edict that "[t]rademarks must be considered in the manner in which they appear in the marketplace."  (N-F Mem. 3.)   Rather than exposing survey respondents to the Lulu mark as it commonly appears in the marketplace – i.e. in written form on the LULU.COM website or its associated goods and services, expert Gerald Ford conducted a telephone survey, despite the fact that consumers will rarely, if ever, be exposed to the LULU name and marks over the telephone. Because Lulu is a web-based business, any "awareness" study would be required, according to N-F's own argument, to gauge consumers' awareness of the mark in a web-based setting.  In that very basic respect, therefore, the Ford study lacks credibility.

More importantly, however, the Ford study is significantly undermined by other evidence that N-F has submitted regarding the awareness of Lulu in the marketplace.  N-F argues forcefully that the only users relevant to the likelihood of confusion analysis are those that reside within the United States.  (N-F Mem. 22.)  To that end, evidence submitted in connection with the declaration of Lauren L. Sullins confirms that the LULU.COM is well-known in the United States, being ranked among the **top 1500 websites** in terms of United States traffic:

---

[3] N-F relies on the unpublished decision in Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 Fed. Appx. 239, 244 (4th Cir. 2007) in support of its argument that use of the word "lulu" in connection with unrelated goods and services supports a finding that the LULU marks are weak.  N-F fails to mention, however, that the court's holding that the Plaintiff's "Renaissaince" mark was weak was based in large part on the fact that the mark was being used "by numerous businesses within [Plaintiff's] PTO class of products."  Id. at 244 n. 5

**Lulu.com traffic rank in other countries:**

| | |
|---|---|
| Italy | 1,266 |
| United Kingdom | 1,290 |
| United States | 1,445 |
| Canada | 2,155 |
| France | 2,546 |

(Sullins Decl. Ex. F).  LULU.COM's ranking among the top 1,500 websites in U.S. traffic severely undercuts Dr. Ford's conclusion that "both the LULU self publishing internet site mark and the LULU video content internet site mark are commercially weak marks among potential visitors to Defendant's internet site."  (N-F Mem. 23.)  That assertion is further undercut by Lulu's receipt of significant press coverage, including a July 3, 2006 New York Times article regarding Lulu and its video services (Compl. Ex. C.), as well as its receipt of a Web 2.0 award in 2007 as the best website for books (Young Aff. ¶ 4).  See, e.g., Kraft General Foods, Inc. v. Allied Old English, Inc., 831 F.Supp. 123, 129 (S.D.N.Y. 1993) (granting barbecue sauce manufacturer's motion for preliminary injunction upon finding that "Bulls Eye" mark had acquired considerable strength given that it "ha[d] been the subject of extensive unsolicited attention by the press and [was] consistently rated among the top three barbecue sauces.").

**B.    N-F Has Failed to Establish That the Goods and Services It Will Offer Are "Distinct" and "Unrelated" To Lulu's Goods and Services.**

N-F argues that the Court must compare the services now offered by Lulu under its marks with "those services that Hulu will have on launch," and that Lulu's motion cannot be based on "unsupported and/or speculative uses of the HULU mark on some unknown, future date."  (N-F Mem. 27.)  But Lulu's motion is not based on "unsupported and/or speculative uses of the HULU mark"; it is based on N-F's announced intention to use the HULU mark with goods and services identical to Lulu's own, and on N-F's failure to get its story straight in this regard.

N-F's assertions are contradicted by the testimony of its 30(b)(6) witness Jason Kilar. Excerpts of Kilar's 30(b)(6) testimony, which are being filed as a separate exhibit under seal, are

plainly inconsistent with his declaration's assertion that N-F "do[es] not intend to do what the video marketplace refers to as user generated material . . . ."  (Kilar Decl. ¶ 35) (See Exhibit B to Lulu Repl., filed under seal October 11, 2007.)  Having designated Mr. Kilar as its Rule 30(b)(6) deposition witness, N-F cannot rely on a subsequent declaration by Mr. Kilar in his personal capacity to alter N-F's answers to key questions regarding N-F's business plans.  See Rainey v. Am. Forest and Paper Ass'n, Inc., 26 F.Supp.2d 82, 94 -95 (D.D.C. 1998) ("By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party to prepare its designee to be able to give binding answers in its behalf.  Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition.").[4]

N-F's assertions are also contradicted by its USPTO application, and by its Responses to Lulu's First Set of Interrogatories.  (See Lulu Mem. Ex. R.)  Those responses confirm that "the goods and services on which [N-F] may use the Hulu mark . . . are listed in [N-F's] federal registration application."  (Id.) While N-F claims that its decision to offer those goods and services is "contingent on a variety of factors," those factors—"consumer response" and "financial and manpower constraints," for instance—govern every business decision, and hence are not limiting in any respect.

In sum, and as set forth more fully in Lulu's primary brief, N-F's planned "premium video" offerings are in fact closely related, if not identical, to the services that Lulu currently offers.  And because N-F has stated its intent to use the Hulu mark in connection with all of the goods and services listed in its USPTO application, subject only to its own business judgment, its

---

[4] Notably, and as demonstrated in the sealed Exhibit B, Mr. Kilar's declaration also differs in important respects from his 30(b)(6) deposition testimony regarding N-F's knowledge and intent in adopting the HULU name and marks.  Again, Mr. Kilar's attempt to alter sworn testimony given in his capacity as N-F's corporate designee is plainly improper, and should be disregarded.

supposed "plan" only to offer "premium video" upon launch cannot be credited as a basis for denial of the requested injunctive relief.

      **C.**    **The Alleged Sophistication of Lulu's Users Does Not Negate a Finding of Likelihood of Confusion.**

N-F also asserts that the "the nature of Plaintiffs' business is such that people involved in 'self-publishing' and creating their own works are sophisticated and highly involved, which reduces the risk of any likelihood of confusion." (N-F Mem. 31.)  That argument, however, completely ignores that <u>creation</u> of digital content is only one component of Lulu's highly diversified business, which also includes the <u>purchase</u> and <u>sale</u> of digital content and is directed toward the public at large.  As Lulu's CEO Bob Young testified:

Q.  Is there a predominant customer in your customer base?

A.  No.  It's one of the remarkable things about doing business on the internet.  It's a buffet style.  It's self-serve . . . .  <u>You get the whole range of humanity going</u> and they decide what they consider of value from our service.

(Young Dep. 29:24-30:13) (emphasis added).  For its part, N-F's announced intention to engage in a strategy of "ubiquitous distribution" that brings its goods and services to "98%" of Internet consumers (<u>see</u> Exhibit C) confirms that its target market is also the general public, rather than some limited subset of "sophisticated users."  Thus, as <u>Sara Lee</u> (the case upon which N-F relies) explains, the supposed sophistication of some users is largely irrelevant:  "buyer sophistication will only be a key factor when the relevant market is not the public at-large."  81 F.3d at 467.

<u>**CONCLUSION**</u>

For the foregoing reasons, and for all of those set forth in Lulu's primary brief, Lulu respectfully requests that the Court enter a preliminary injunction preventing N-F from using its confusingly similar "HULU" name and marks, pending a trial on the merits of this action.

Respectfully submitted this the 11th day of October, 2007.

ELLIS & WINTERS LLP


/s/ Thomas H. Segars
Leslie C. O'Toole
N.C. State Bar. No. 13640
Thomas H. Segars
N.C. State Bar. No. 29433
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
*Attorneys for Lulu Enterprises, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served a true and correct copy of the foregoing REPLY IN SUPPORT

OF PLAINTIFF LULU ENTERPRISES, INC.'S MOTION FOR PRELIMINARY

INJUNCTION by hand delivery, addressed to counsel for defendant N-F NewSite, LLC as

follows:

> Hayden J. Silver, III
> JaySilver@kilpatrickstockton.com
> Betsy Cooke
> bcooke@kilpatrickstockton.com
> Kilpatrick Stockton LLP
> 3737 Glenwood Ave., Suite 400
> Raleigh, NC 27612
> Facsimile: 919-420-1800;

and by depositing a copy thereof in the United States mail, postage prepaid, first class, addressed

to counsel for defendant N-F NewSite, LLC as follows:

> William H. Brewster
> bbrewster@kilpatrickstockton.com
> Sara Maurer
> smaurer@kilpatrickstockton.com
> Kilpatrick Stockton LLP
> 1100 Peachtree Street, Suite 2800
> Atlanta, Georgia 30309
> Facsimile: 404-815-6555

This the 11th day of October, 2007.

                                    /s/ Thomas H. Segars
                                    Thomas H. Segars