IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-cv-00347-D

| | |
|---|---|
| LULU ENTERPRISES, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>HULU, LLC<br>(formerly N-F NEWSITE, LLC),<br><br>and<br><br>HULU TECH, INC.,<br>      Defendants. | **DEFENDANT'S REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

In response to the Memorandum filed on October 9 ("Plaintiff's Brief"), Defendant Hulu replies:

**1. The Court's determination of likelihood of confusion must be based on the marks as they actually appear in the marketplace, not a description in an application.**

The Fourth Circuit repeatedly and specifically has held that a court must "look to how the two parties *actually use their marks in the marketplace* to determine whether the defendant's use is likely to cause confusion."[1] As Professor McCarthy explains:

> To arrive at a realistic evaluation of the likelihood of buyer confusion, the court must attempt to recreate the conditions under which prospective purchasers make their choices. A court should not indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers, for this is not the context in which purchasers are faced with the marks. "[T]he Lanham Act requires a court to analyze the similarity of the products in light of the way in which the marks are actually displayed in their purchasing context."

*McCarthy on Trademarks & Unfair Competition* §23:58 (2007) ("McCarthy") (citations omitted).

The Court's consideration must be focused not only on the mark itself, but also the services for which the mark is used,[2] as well as the context in which the consumer encounters the mark.[3]

---

[1] *CareFirst of Md., Inc. v. FirstCare, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (emphasis added); s*ee also Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992) ("we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer . . . as a whole as sold in the marketplace"). *See generally Restatement (Third) of Unfair Competition* § 21 cmt. c, at 229 (1995) ("[A]ny comparison should thus be based on the marks as they appear in the marketplace and not as they appear in the artificial context of the courtroom.").

1

Basing an infringement analysis on an application is inappropriate and error. In *CareFirst*, the Fourth Circuit expressly rejected the plaintiff's claim that the broad services listed in a filing with Trademark Office should control the likelihood of confusion analysis, noting that "because the marketplace provides the relevant forum for comparing services, there is no merit to [plaintiff's] claim that we should conduct this analysis using the services enumerated in [plaintiff's] federal registrations." *Id.* at n.6.[4]

2.  **In reality, the services provided by Hulu on launch will be distinct from those offered by Lulu, such that confusion is not probable.[5]**

The scope of business in which Plaintiff is actually engaged is narrow. Despite largely self-serving characterizations since filing this lawsuit, Plaintiff's pre-litigation description of its business is more accurate and telling. Plaintiff's primary business is providing publishing services and book publishing in particular. *See* Lulu Dep. 116:13-14; *see also* App. A, Ex. 5 to Def.'s Opp. to Mot. for Prelim. Inj. (Docket Entry 85). Plaintiff's documents repeatedly highlight this fact.[6] Even third parties

---

[2] "The point is that a decision-maker must attempt, as far as is humanly possible, to reproduce in the courtroom the conditions under which actual purchasers see the trademarks *and* goods." *McCarthy* § 23:58.

[3] "Courts consider marks in the context that a consumer perceives them in the marketplace, which includes their presentation . . . ." McCarthy § 23:58. *See generally Restatement (Third) of Unfair Competition* § 21, reporter's note to cmt. c, at 239 ("The comparison of the designations should replicate the market conditions under which the marks will be encountered by prospective purchasers.").

[4] The fallacy of using the application, rather than actual use, is made plain by the fact that the PTO, which must consider all of the goods and services in application when considering registrability (under §2(d)), can find a likelihood of confusion, but a district court can find no likelihood of confusion under §43(a), and thus no infringement involving the same mark. *See Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2nd Cir. 1988) (likelihood of confusion "resolved not by reference to a registration determination by the PTO but by application of the multi-factor balancing test"). *Cf. Miguel Torres, S.A. v. Cantine Mezzacorona*, 108 Fed. Appx. 816, 818 (4th Cir. 2004) ("in Board proceedings, the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in the applicant's registration vis-à-vis the goods and/or services recited in the opposer's registration, rather than what the evidence shows the goods an/or services to be").

[5] *See generally* McCarthy § 23:9 ("Likelihood of confusion is synonymous with 'probable' confusion – it is not sufficient if confusion is merely 'possible.'").

[6] *See* App. A, Ex. 5 ("As the *leading self-publishing resource,* Lulu.com is currently assisting over 150 colleges and universities with their publication needs."); Ex. 4 ("You're already creating content, now it's easier than ever before to *publish* it."); Ex. 8 ("The evolution of the Internet as a platform and the development of print-on-demand technology have allowed us to succeed as *publishers of niche content* and empower people to profit from their content with no upfront costs."); Ex. 9 ("Lulu is an industry leader in print-on-demand *book publishing*."); Ex. 7 ("Lulu.com has empowered creators to make their dreams a reality. Offering a *web-based platform for publishing*, Lulu.com is home to more than 300,000 creations with more than 4,000 new titles added each week.") (emphasis added).

2

characterize Plaintiff in this way.[7] While Plaintiff has minor aided public recognition for its self-publishing business, it has none for a broader video business.[8]

Plaintiff's continued characterization of Hulu's services based on Hulu's early and obsolete business plans, despite Hulu's clear testimony, is flawed. Plaintiff's CEO conceded that "in the technology industry," he had "yet to see a project unfold the way the project was initially described." Lulu Dep. 132:25-133:4. Repeated reliance on selective fragments to suggest Hulu is a haven for "user-generated" content or that it views YouTube as a competitor is wrong.[9] As Hulu testified in response to Plaintiff's questions, Hulu is entirely focused on distributing premium and professional content.[10]

3. **"Reminds me of" or "Sounds like"[11] does not equate to likelihood of confusion, much less evidence of actual confusion.**

It is a basic tenet of trademark law that "Confusion means more than . . . merely 'calls to mind.'"[12] As explained by Judge Rich's oft-quoted language in *Application of Ferrero*, 479 F.3d 1395, 1397 (C.C.P.A 1973):

---

[7] *See* App. A, Ex. 1 ("I am a Lulu user and I will not leave a *self publishing service* for a video sharing service."); Ex. 2 ("It makes no sense . . . *Lulu, a self publishing service provider*, sues Hulu, a beta application of what later will probably be (another) video sharing. . . Lulu is in no danger whatsoever because of Hulu. Hulu doesn't target the same market."); Ex. 3 ("Lulu, a company that helps users *self-publish books and multimedia content* . . . against Hulu, the . . . professional video site….").

[8] Plaintiff launched Lulu.tv as a avenue for creative expression as opposed to a media provider. *See* App. A, Ex. 6 ("Lulu.tv is about creators. Lulu.tv is in the business of nurturing and rewarding creators, rather than being a bulk clearing house for video material."). It is not structured to generate revenue and has been "experimental." Lulu Dep. 75:24-76:1 ("We have yet to come across the business model that will allow Lulu.tv as a stand-alone effort to grow quickly."); Lulu Dep. 135:18-20 ( "Lulu.tv has been an ongoing experiment to see what we could do for video creators . . . .").

[9] Plaintiff contends that Hulu somehow conceded that the parties are competitors when they requested that Plaintiff's CEO not be present for the "attorneys' eyes only" portion of the 30(b)(6) deposition, which related to sensitive, non-public information (e.g., third-party relationships, details about the site, etc.). In fact, that was something that Hulu did not want known outside of the company, whether friend or foe, competitor or not. By asking that he be excused, Defendant's counsel only said that this non-public information was "of the highest sensitive nature . . . . It's the launch of a business, a highly competitive nature." Hulu Dep., 53:3-7.

[10] *See* Hulu Dep. 75:20-25 ("In the early discussion stages of this joint venture the topic of user-generated was a topic put on the table . . . but that's not the focus of the business. It is focused on, as I have said publicly, premium online video content."); Hulu Dep. 87:2 ("I do not see [YouTube] as [a competitor], no.").

[11] *See* Pl.'s Br. 5 ("reminds" or "sounds like").

[12] McCarthy § 23:9; *see also M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1083 (9th Cir. 2005) ("reminded of" insufficient evidence of confusion); *Frosty Treats, Inc. v. Sony Computer Entm't*,

> The fact that one mark may bring another mark to mind does not in itself establish likelihood of confusion as to source. The very fact of calling to mind may indicate that the mind is distinguishing, rather than being confused by, two marks. In *Lever Brothers* we unanimously found SHUX registrable over LUX for like goods (off-the-shelf soap products) while fully conscious of the fact that purchasers seeing or hearing SHUX would almost certainly *think* of LUX-and at the same instant realize the distinction. Seeing a yellow traffic light immediately "calls to mind" the green that has gone and the red that is to come, or vice versa; that does not mean that confusion is being caused. As we are conditioned, it means exactly the opposite.

Even if a plaintiff's mark is famous (and here Lulu certainly is not), much more is required. *See Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.*, 703 F.2d 1372, 1374 (Fed. Cir. 1983) ("'Likely to cause confusion' means more than the likelihood that the public will recall a famous mark on seeing the same mark used by another. [T]o hold otherwise would result in recognizing a right in gross, which is contrary to principles of trademark law.").

In fact, the cited references (of "sounds like" or "reminds") actually reflect awareness such that customers affirmatively are not confused.[13]

### 4. The fact that marks "sound similar," or rhyme, is meaningless in the abstract without the marketplace factors providing the purchasing context, especially on the internet.

That one mark simply "sounds like" another mark is not sufficient to demonstrate likelihood of confusion.[14] In fact, it is error for the court to consider the similarity of the sounds of the marks in the abstract without taking into account the context of the marks.[15] To be clear, even identical marks are not

---

426 F.3d 1001, 1010 (8th Cir. 2005) (relevant inquiry not whether another mark is "call[ed] to mind" but, rather, whether any consumers are confused).

[13] *See, e.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) ("[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion" and that "[i]ndeed, such inquiries are arguably premised upon a lack of confusion between the products such as to inspire the inquiry itself"); *Fischer Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980) (questions as to possible affiliation between two companies is probative evidence of awareness of distinction between the two, not actual confusion).

[14] *See, e.g.*, *Standard Brands, Inc. v. E. Shore Canning Co.*, 172 F.2d 144, 146 (4th Cir. 1949) (no likelihood of confusion for phonetically similar marks V-8 for vegetable juice and VA for tomato juice); *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1139 (2d Cir. 1979) (same - DRIZZLER for men's golf jackets and DRIZZLE for women's coats); *Haven Capital Mgmt., Inc. v. Havens Advisors, L.L.C.*, 965 F. Supp. 528, 531 (S.D.N.Y. 1997) (same - HAVEN and HAVENS); *see also W.L. Gore & Assoc. v. Johnson & Johnson*, 882 F. Supp. 1454, 1458 (D. Del. 1995) (denying preliminary injunction "[a]lthough the words 'glide' and 'slide' rhyme" in GLIDE and EASY SLIDE).

[15] *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("While ['Streetwise' and 'Streetsmart'] sound similar, the trademarks themselves are not confusingly similar,

4

infringing notwithstanding use on related goods or services if proper consideration of all of the relevant factors indicate that confusion is not likely.[16] Where, as here, purchases are not made by pronunciation, but by links and e-mail, similarity of sound may be "insignificant." *Restatement (Third) of Unfair Competition* § 21 cmt. d, at 231.

5.  **The HULU Mark was adopted in good faith. Having conceived of HULU without knowledge of Plaintiff, and having selected HULU from the desired candidates during the naming process without knowledge of Plaintiff, the fact that Hulu became aware of multiple third-party uses of Lulu and Ulu marks before announcing its name cannot support a finding of bad faith.**

It is black letter law that "mere knowledge or awareness of the senior user's mark is not the same as an intent to confuse customers." *McCarthy* § 23:115.[17]

The "name 'hulu' was conceived without any knowledge of Lulu Enterprises or Lulu.com whatsoever." Kilar Decl. ¶ 51; Second Decl. of Jason Kilar ¶¶ 4, 7. Hulu learned of Plaintiff's existence only after the name HULU not only had been conceived, but selected as the single candidate from all of the

---

given the context in which a purchaser sees them."); *Lebow Bros. v. Lebowle Euroconf S.p.A.*, 503 F. Supp. 209, 212-13 (E.D. Pa. 1980) (similar pronunciation does not prove likely confusion in light of other factors weighing against liability); *see also Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 641 (6th Cir. 2002) (THERMOSCAN for electronic ear thermometers did not infringe THEMA-SCAN for thermal imagining examination services); *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 558 (10th Cir. 1998) (HEARTSPRINGS for educational materials and for residential school for disabled children).

[16] *See, e.g.*, *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 699 (E.D. Va. 2005) (RENAISSANCE for gift bags, etc. and for greeting cards); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1210 (1st Cir. 1983) (ASTRA for anesthetic and for blood analyzer machine); *Fed. Tel. & Radio Corp. v. Fed. Television Corp.*, 180 F.2d 250, 252 (2d Cir. 1950) (FEDERAL for radio supplies and television sets); *Pabst Brewing Co. v. Decatur Brewing Co.*, 284 F. 110, 113 (7th Cir. 1922) (BLUE RIBBON for beer and for malt extract); *J.C. Penney Co. v. Arctic Enterp., Inc.*, 375 F. Supp. 913, 915 (D. Minn. 1974) (EL TIGRE for tires and for snowmobiles); *Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 583 (S.D.N.Y. 1972) (MINI CINEMA for family movie theaters and for erotic movie theatre); *Keikhaefer Corp. v. Willys-Overland Motors, Inc.*, 236 F. 2d 423, 1019 (C.C.P.A. 1956) (HURRICANE - outboard motors and auto engines).

[17] *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987) ("inference of 'bad faith' requires something more than mere knowledge of a prior similar mark. That is all that the record here shows"); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004) ("plaintiff argues that [defendant] was aware of the existence and success of 'Wet Ones' and that a jury 'could infer from this alone that' [defendant] acted in bad faith. This is incorrect. Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith"); *U.S. Hosiery Corp. v. Gap, Inc.*, 707 F. Supp. 800, 814 (W.D.N.C. 1989) ("Defendant did become aware of Plaintiffs' use of the 'WORKFORCE' mark, but. . . that Defendant went ahead with its plans to use the 'WORK FORCE' mark because it perceived little likelihood of confusion. Defendant did anticipate that Plaintiffs might object to Defendant's use, but such anticipation does not necessarily evince a guilty heart.").

5

potential names generated. Second Kilar Decl. ¶¶ 6-8. Hulu was not aware of Plaintiff until after the selection, when it learned of "a laundry list of third-party uses of other LULU and ULU marks." *Id.* ¶ 52; *see also* Second Kilar Decl. ¶¶ 7-9.[18]

Hulu did not, and does not, believe that based "on what obviously was extensive third-party use of LULU, [the] HULU mark was [or is] likely to be associated, much less confused, with any one of them." Kilar Decl. ¶ 52. Under similar circumstances, the Fourth Circuit recently held that a defendant **"was justified in continuing its use of the [ ] mark if … [defendant] believed [plaintiff's] mark to be too weak to prevent [defendant's] use of the mark."** *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed. Appx. 239, 245 (4th Cir. 2007). Because no evidence suggests that Hulu was adopted to trade on Plaintiff's goodwill, this factor favors Hulu as a matter of law.[19]

### 6. Plaintiff's non-43(a) claims do not support a preliminary injunction.

Plaintiff's non-43(a) claims cannot support extraordinary relief. It is incongruous that Hulu, as a Fox-NBC Universal joint venture in the business of network TV programs and feature films, was created with a "bad faith intent to profit" from *one* of the *hundreds* of owners of a "lulu" name. The assertion that Hulu wants or needs to trade off a relatively unknown self-publishing website is without merit. The undisputed record (*see* Kilar Decl.¶¶ 51, 52; Second Kilar Decl. ¶¶ 7-9) is that Hulu "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful," and as a result, Hulu's actions fall squarely within the ACPA safe harbor. 15 U.S.C. § 1125(d)(1)(B)(ii).

---

[18] That defendant knew of plaintiff's mark before adoption from a trademark search report, does not support inference of bad faith intent. *See, e.g.*, *Astra Pharm. Prods., Inc*., 718 F.2d at 1208.

[19] *See, e.g*., *U.S. Conference of Catholic Bishops v. Media Research Ctr.*, 432 F. Supp. 2d 616, 628 (E.D. Va. 2006) ("the only evidence provided by Plaintiff about Defendant's intentions is [Defendant's] President's admission that he had heard of [Plaintiff] at the time that Defendant decided to use CNSNews.com. Such an admission does not address the central question of whether Defendant adopted its trademark to infringe upon Plaintiff's mark and trade on its goodwill. Because Plaintiff does not offer any evidence that Defendant adopted its mark in bad faith, the Court finds that the sixth *Pizzeria Uno* factor weighs in favor of granting Defendant's Motion for Summary Judgment").

**7. The balancing of harm test mandates denial of Plaintiff's Preliminary Injunction Motion.**

   **a.   Plaintiff Has Not Shown That It Will Suffer Harm**

Plaintiff admits that it has not suffered any harm to date from the existence of Hulu.[20] Plaintiff's Brief effectively admits that the majority of potential harm it could suffer is compensable and therefore, not irreparable warranting an injunction. *See Southtech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006) ("[I]t is axiomatic that purely economic injury, such as that resulting from lost sales, profits or market share, does not constitute irreparable harm sufficient to warrant injunctive relief." ).

Plaintiff's argument that it will suffer irreparable harm is a vague and indefinable allegation of injury to its goodwill.  Such "gradual erosion" of goodwill in Plaintiff's business constitutes minor harm that does not justify issuance of an injunction. *Va. Tech Found. Inc. v. Family Group Ltd.*, 666 F. Supp. 856, 859 (W.D. Va. 1987) (denying preliminary injunction because the harm Plaintiff pointed to was gradual erosion of its image and good will "rather than some . . . event from which it would suffer irrevocable harm").  Denying an injunction would, at worst, subject Plaintiff to "a continued gradual erosion of its image for a matter of a few months before the case is tried" as opposed to the real and "immediate tangible loss" that Hulu would suffer if an injunction were issued. *Id.*

   **b.   Hulu Will Suffer Real and Immediate Irreparable Harm if Enjoined**

The potential harm to third parties, including Hulu's distribution partners, advertising partners, content providers and technology partners, cannot be underestimated.[21]  The "Hulu" announcement was met with "universally positive" reception. *See* Hulu Dep. 113:1-11.  The existence of a few articles commenting on the odd meanings (or lack of meaning) of Hulu's name does not diminish the goodwill

---

[20] *See* Lulu Dep. 74:21-75:1 (". . . Lulu is growing . . . " Q. Has that changed any since August 29th? A. Only to the good."). *See also* Lulu Dep. 174:20-23 ("I do not know of any benefit or damage we've received to date from Hulu's announcement of the intention to use the Hulu.com name.").

[21] *See Lever Bros. Co. v. Mattel, Inc.*, 609 F. Supp. 1395, 1403 (S.D.N.Y. 1985) ("[A] preliminary injunction would do severe damage to [Defendant's] relationship with its customers and would render [Defendant's] investment in promoting the 'Snuggles the Seal' name virtually worthless."); *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 960 (Fed. Cir. 1984) (affirming denial of a preliminary injunction where the harm included interference with potential and current customers and suppliers, breach of existing sales contracts, and impact on jobs).

Hulu has established in its name nor equate it with *no* goodwill. Many companies, such as Google or Yahoo, started out with "empty vessel" names and have established tremendous goodwill.[22]

The fact that Hulu operated without a name for many months does not diminish the importance of the name now. Although the name HULU was not publicly announced until August 29, Hulu had already spent five months behind the scenes, and hundreds of thousands of dollars, to identify, screen and select the name. *See* Kilar Decl. ¶¶ 38, 46. Once the HULU name was announced, the public instantaneously associated it with the company's highly anticipated premium content website. *Id.* ¶ 47.

### 8. Discovery-related issues

Hulu timely and appropriately responded to Plaintiff's discovery. Plaintiff has not moved to compel discovery; the decision to raise these issues in Plaintiff's Brief highlights the weakness of its case on the merits.

#### a. Hulu's Document Redactions Are Proper

Hulu has neither hindered Plaintiff, nor prejudiced Plaintiff in preparing its October 9 filing. The Court's September 28 Protective Order does not prohibit redactions by the parties. Hulu redacted only two kinds of documents: (1) privileged communications and (2) a few documents containing highly sensitive, and non-responsive or plainly irrelevant, business information.[23]

Counsel for Plaintiff has been aware of the redacted confidential and sensitive commercial information since September 26. On September 28, counsel for Hulu offered to answer any specific questions about the redactions. *See* Letter from Hayden J. Silver (Sept. 28, 2007) (Ex. Y to Pl.'s Br.). Plaintiff next raised the issue on October 4 regarding Hulu's projected revenues, and Hulu produced

---

[22] App. A, Ex. 10 ("Hulu follows the naming of other Internet products that have no real meaning in any language. Notable examples include Google, Skype, Joost and others. Many of the products now have become standard bearers for the markets they serve."); Ex. 11 ("Hulu falls right in line with all the Web 2.0ish names out there . . . .").

[23] Although the redacted information is not relevant to these proceedings, Hulu agreed to make unredacted copies of all nonprivileged, responsive documents available for Plaintiff's counsel's review for them to confirm the redacted portions of these documents do not contain information responsive to Plaintiff's discovery requests. *See* Letter from Hayden J. Silver (Oct. 11, 2007) (App. A, Ex. 12).

unredacted copies of these items on October 5. Hulu also has made a supplemental production of a few documents, which addresses many of the issues previously raised by Plaintiff.[24]

Hulu's few redacted documents contain irrelevant and sensitive business information that is not responsive to Plaintiff's discovery requests  Accordingly, Hulu's decision to redact irrelevant but confidential information is both proper and justified.[25]

### b. Hulu's Has Properly Asserted the Attorney-Client Privilege

#### 1. Hulu's Communications With In-House Counsel for Its Parent Owners Are Privileged

NBC Universal and Fox are the parent companies of the joint venture members of Hulu. Plaintiff argues that these companies do not have a common legal interest with Hulu but fails to cite a single case involving a parent/subsidiary relationship. Such a relationship clearly establishes a sufficient common interest. "The universal rule of law, expressed in a variety of contexts, is that the parent and subsidiary share a community of interest, such that the parent (as well as the subsidiary) is the 'client' for purposes of the attorney-client privilege." *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 472 (W.D. Mich. 1997). The Fourth Circuit follows this principle, applying a "common interest" or "joint defense" privilege even where the parent and subsidiary were *not* co-defendants in the relevant action. *See In re Grand Jury Subpoenas,* 902 F.2d 244, 245 (4th Cir. 1990). Thus, a subsidiary, even if not a party, could not waive the privilege without the parent's consent. *Id.* at 249-50 ("persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims").

NBC Universal and Fox share a common, aligned interest in Hulu as joint venture owners, and together with Hulu are clearly entitled to assert the attorney-client privilege. *See*, *e.g.*, *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 518 (M.D.N.C. 1986) (attorney-

---

[24] The August 15 Andrew Racine email, Exhibit AA to Plaintiff's Brief has been produced. Hulu also updated its privilege log to clarify that the September 5 email from Jason Kilar, referenced as Exhibit BB to Plaintiff's brief, was a privileged communication and, therefore, properly redacted. *See* App. A, Ex. 12.

[25] Plaintiff's comparison to its own production in this matter is irrelevant. Plaintiff was responding to a different set of discovery requests. Plaintiff also had the same opportunity to redact nonresponsive and irrelevant information from its documents. It chose not to do so.

client privilege may be applied "between joint venturers where a common interest is the subject of shared communications made for the purpose of securing legal advice").[26]

Moreover, Hulu, its joint venture members, and the parent companies have entered into a joint defense agreement formally acknowledging their common interest. *See*, *e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 15-16 (D.D.C. 2007) ("the joint defense privilege, often referred to as the common interest rule, is an extension of the attorney-client privilege that protects from forced disclosure communications between two or more parties and/or their counsel if they are participating in a joint defense agreement").

### 2. The Communications With Board Members Are Privileged

Hulu properly asserted privilege as to communications involving Hulu employees and board members. For example, the email specifically referenced by Plaintiff, Exhibit BB to Plaintiff's brief, reflected Mr. Kilar's communication to the Hulu Board of legal advice received from Hulu's outside counsel concerning pending litigation. Such communications are privileged. *See Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001) (e-mail between non-attorney employees was privileged where it relayed legal advice of counsel); *McCook Metals, L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) ("management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege").

### CONCLUSION

For the foregoing reasons, Hulu respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction.

---

[26] Plaintiff cites one non-controlling case that involved sister companies for the proposition that a "common interest" privilege may exist only when there is a common legal interest or "a common attorney was representing both corporations." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 473-74 (S.D.N.Y. 2003). Although Hulu contends that it has a common legal interest with its parents, it is also sharing a "common attorney" – the parents' in-house and outside counsel.

This the 11th day of October, 2007.

/s/ Hayden J. Silver, III
_____

Hayden J. Silver, III
NC State Bar No. 10037
jaysilver@kilpatrickstockton.com
Betsy Cooke
NC State Bar No. 25353
bcooke@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, NC 27612
(919) 420-1700
(919) 420-1800 (facsimile)


William H. Brewster
GA State Bar No. 080422
bbrewster@kilpatrickstockton.com
Sara Maurer
GA State Bar No. 159056
smaurer@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309
(404) 815-6500
(404) 815-6555 facsimile

Attorneys for Defendant Hulu, LLC

11

**CERTIFICATE OF SERVICE**

This is to certify that on this date the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which will send notice to the following CM/ECF participants:

>Leslie C. O'Toole
>leslie.otoole@elliswinters.com
>Thomas Hamilton Segars
>tom.segars@elliswinters.com

This the 11th day of October, 2007.

/s/ Hayden J. Silver, III

KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 420-1700