# APPENDIX B
# UNPUBLISHED DECISIONS

1.   *Miguel Torres, S.A. v. Cantine Mezzacorona*, 108 Fed. Appx. 816 (4th Cir. 2004)

2.   *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed. Appx. 239 (4th Cir. 2007)



108 Fed.Appx. 816　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
108 Fed.Appx. 816
**(Cite as: 108 Fed.Appx. 816)**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.
MIGUEL TORRES, S.A., Plaintiff-Appellant,
v.
CANTINE MEZZACORONA, S.C.A.R.L.;  Prestige Wine Imports Corporation,
Defendants-Appellees.
**No. 99-1935.**

Argued April 6, 2000.
Decided Sept. 24, 2004.

**Background:**  Wine maker who owned trademarks "CORONAS" and "GRAN CORONAS" sued a competitor, claiming trademark infringement. The United States District Court for the Eastern District of Virginia, Claude M. Hilton, Chief Judge, granted a defense motion for summary judgment, and the maker appealed.

**Holding:**  The Court of Appeals held that the district court should have considered factual findings of the Trademark Trial and Appeal Board (TTAB).

Vacated and remanded.

Widener, Circuit Judge, filed concurring and dissenting opinion.

West Headnotes

**[1] Trademarks** 1314
382Tk1314 Most Cited Cases
(Formerly 382k702)
In considering the "similarity of the two marks" factor in a trademark infringement suit brought by a wine maker against a competitor, the district court should have considered the factual findings of the Trademark Trial and Appeal Board (TTAB) in a decision concluding that a mark of the competitor was not entitled to registration;  while the TTAB's findings were not presumptively correct or entitled to any sort of deference, as they might be if the district court were actually reviewing the TTAB's findings, the district court could not altogether omit consideration of factual determinations of the TTAB that were relevant to a given factor in the infringement analysis.  Lanham Trade-Mark Act, § 32, as amended, 15 U.S.C.A. § 1114.

**[2] Trademarks** 1314
382Tk1314 Most Cited Cases
(Formerly 382k702)
District court, in a trademark infringement suit, was not obligated to accord any special weight to the Trademark Trial and Appeal Board's (TTAB) factual findings that the goods to which marks were affixed were "identical" and "traveled in the same channels of trade" and "purchased by the same end users," where those findings were based simply on the fact that an application to register a mark set forth no limitation that would distinguish the goods;  such findings were not grounded in evidence of actual use that was fundamental in infringement litigation.  Lanham Trade-Mark Act, § 32, as amended, 15 U.S.C.A. § 1114.

***817**  Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Chief District Judge. (CA-98-115-A).

ARGUED:  Cynthia Clarke Weber, Sughrue, Mion, Zinn, MacPeak & Seas, P.L.L.C., Washington, DC, for Appellant.  Tom Michael Schaumberg, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, for Appellees.  **ON BRIEF:** Barbara A. Murphy, Gregory C. Anthes, Alfred M. Haas, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC; John Charles Thomas, Stephen P. Demm, Hunton & Williams, Richmond, Virginia, for Appellees.

Before WIDENER, TRAXLER, and KING, Circuit Judges.

Vacated and remanded by unpublished PER CURIAM opinion.  Judge WIDENER wrote a concurring and dissenting opinion.

Unpublished opinions are not binding precedent in this circuit.  See Local Rule 36(c).

**OPINION**

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

PER CURIAM.

Appellant Miguel Torres, S.A. ("Torres") is a Spanish wine maker that has sold wine in the United States under the trademarks CORONAS and GRAN CORONAS for over 30 years. In 1985, Torres obtained a certificate of federal registration for each mark. The CORONAS mark consists of the word "Coronas" in stylized lettering below a logo that features three crowns in its design. The GRAN CORONAS is registered in stylized form without a superimposed logo.

In 1987, appellee Cantine Mezzacorona, S.C.A.R.L. ("Cantine"), an Italian wine producer, began selling its wine in the United States under the mark Mezzacorona. In 1992, Cantine applied for registration of its Mezzacorona mark, which featured stylized lettering of the word Mezzacorona incorporated into a simple design.

The parties stipulated to a great many facts in this case. The word "corona" means crown in both the Spanish and Italian languages. The words "gran" and "mezza" are size designations. "Gran" means grand or large in Spanish and Italian; "mezza" means half in Italian.

The parties have similar chains-of-distribution for their wines. Torres sells its CORONAS and GRAN CORONAS wines to Paterno Imports Limited, its importer in the United States. Paterno, in turn, sells the wines to regional distributors that distribute the wines to local restaurants **\*818** and retail wine vendors. Cantine distributes its Mezzacorona wines in the United States through Prestige Wine Imports Corporation, which sells to regional distributors who, in turn, sell to local restaurants and retail wine vendors. Torres does not advertise its CORONAS or GRAN CORONAS wines through print media. Cantine, by contrast, has paid to advertise Mezzacorona wines in magazines such as *The Wine Spectator* and *The Wine Enthusiast*. Otherwise, the parties employ identical methods of product promotion, including wine tastings, trade shows, and point-of-sale product information.

In 1992, Cantine applied for registration of the Mezzacorona mark in stylized form for use with its wines. Initially, the United States Patent and Trademark Office ("PTO") refused registration on the grounds that Cantine's proposed mark was "likely to be confused" with the CORONAS and GRAN CORONAS marks previously registered by Torres. J.A. 1577. Cantine, however, successfully sought reconsideration of the PTO's initial decision by suggesting that "crown" or "corona" is commonly used in connection with wines for purposes of International Class 33 registrations. Accordingly, the PTO issued a notice of publication that the mark Mezzacorona was entitled to registration.

Torres, which is engaged with Cantine in trademark disputes outside of the United States, filed an opposition based on its prior use and registration of the CORONAS and GRAN CORONAS marks. After receiving briefs and holding an opposition hearing, the Trademark Trial and Appeal Board (TTAB) concluded that "the use of [Cantine's] mark is likely to cause confusion, mistake or deception" and that the mark thus was not entitled to registration. J.A. 29. The TTAB's analysis focused on two considerations--"the similarity of the goods and the similarity of the marks." J.A. 26. The TTAB explained that "[i]n Board proceedings, 'the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in applicant's application vis-a-vis the goods and/or services recited in opposer's registration, rather than what the evidence shows the goods and/or services to be.' " J.A. 26-27 (quoting *Canadian Imperial Bank v. Wells Fargo Bank,* 811 F.2d 1490 (Fed.Cir.1987)). Moreover, the TTAB "presume[s] that [the goods at issue] travel in the same channels of trade and that they are purchased by the same end users" if the application itself does not distinguish the goods from those associated with the senior registered mark. J.A. 27. Focusing on the "visual appearance, pronunciation and connotation" of the opposing marks and the fact that the opposing marks were to be used in the sale of wine, the TTAB agreed with Torres that Cantine's Mezzacorona mark was not entitled to registration. J.A. 29.

Cantine then sought review of the TTAB decision in the United States Court of Appeals for the Federal Circuit. *See* 15 U.S.C. § 1071(a). [FN1] Concluding that none of the TTAB's factual findings regarding the similarity of the marks or the accompanying goods were clearly erroneous, the Federal Circuit held that the TTAB decision was correct:

> FN1. Cantine also had the option of seeking direct review of the administrative decision by filing an action in district court, where the aggrieved party can introduce additional evidence and raise additional claims. *See* 15 U.S.C. § 1071(b). The district court's

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

decision is subject to review in the appropriate federal appellate court. Cantine, however, did not elect this option.

We cannot find fault with the Board's factual determinations that the mark Cantine sought to register was similar in **\*819** physical appearance, sound, and meaning to the marks registered to Torres, whether the marks are considered as applied for or registered, or as actually used.... We conclude, therefore, that the Board's decision to grant the opposition and deny Cantine's registration because its mark was confusingly similar to two previously-registered marks was correct as a matter of law.

Cantine Mezzacorona v. Torres, No. 97-1339, at 5-6, 1997 WL 786911 (Fed.Cir. Dec. 17, 1997) (unpublished).

Although Cantine was unable to secure registration of the Mezzacorona mark, it continued to sell its wine varieties under the mark. Accordingly, in January 1998, Torres brought this trademark infringement action under the Lanham Act. See 15 U.S.C. § 1114. Torres also alleged unfair competition, see 15 U.S.C. § 1125, and common law trademark infringement and unfair competition under Virginia law. In addition to damages, Torres sought injunctive relief and attorney's fees.

In March 1998, Torres moved for summary judgment based on a collateral estoppel theory, arguing that Cantine was bound by the administrative decision upheld by the Federal Circuit that the Mezzacorona mark was not registrable because it was likely to cause confusion with the CORONAS and GRAN CORONAS marks. In an order dated April 16, 1998, the district court denied the motion for two reasons. First, one of the defendants in the infringement action, Prestige Wine Imports, was not a party to the proceedings before the TTAB. Second, the district court concluded that "the issue for which [Torres] seeks preclusive effect is not identical to the issue actually decided in the prior adjudication." J.A. 48. The district court explained that "[i]n infringement actions, instead of focusing on the trademarks as they appear in the registration or proposed registration, the issue is whether the actual use of the trademarks is likely to cause confusion." J.A. 49. The district court did not believe that the TTAB or the Federal Circuit undertook the type of "meaningful analysis of the marks in their entire marketplace context" that would entitle the administrative findings to preclusive effect in a trademark infringement action. J.A. 51.

[1] Subsequently, the parties filed cross motions for summary judgment. The district court concluded that "there is no likelihood of confusion between Plaintiff's and Defendants' marks, and that summary judgment in favor of the Defendants is appropriate." J.A. 1937. In so ruling, the district court applied the multi-factor test followed in this circuit:

To ascertain the likelihood of confusion between two trademarks, we consider ... (1) the distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; and (7) actual confusion.

Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463 (4th Cir.1996) (quoting Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.1984)). The district court considered the record before it in light of each of these factors, as well as a few additional factors that we have found to be appropriate in a trademark infringement analysis. [FN2] Although the district court **\*820** thoroughly considered the evidence before it under most of the relevant factors, its analysis was deficient in one respect. In considering the "similarity of the two marks" factor, the district court apparently did not consider the factual findings of the TTAB.

> FN2. The district court recognized that the following factors are sometimes relevant: "the quality of the defendant's products"; "the sophistication of consumers"; "the proximity of the products as they are actually sold"; and "the probability that the senior mark owner will ... enter[ ] the defendant's market." J.A. 1919.

We cannot agree with Torres, however, that the TTAB's findings are presumptively correct or entitled to some sort of deference, as they might be if the district court were actually reviewing the TTAB's findings pursuant to an action under 15 U.S.C. § 1071(b). [FN3] As the district court ably pointed out in rejecting Torres's collateral estoppel argument, the "likelihood of confusion" analysis employed in a TTAB proceeding is different than the "likelihood of confusion" analysis employed in a full-blown infringement action. See Levy v. Kosher Overseers Ass'n of America, Inc., 104 F.3d 38, 41 (2d Cir.1997). The key to whether any controlling effect is due in an infringement action is whether "the TTAB or the

108 Fed.Appx. 816                                                                                                                Page 4
108 Fed.Appx. 816
**(Cite as: 108 Fed.Appx. 816)**

Federal Circuit ... have taken into account, in a meaningful way, the *context* of the marketplace." Id. at 42. Here, the TTAB considered facts relevant only to a portion of the full multi-factor infringement analysis.

> FN3. Indeed, Torres has not appealed the district court's April 16, 1998, order rejecting its argument that the findings of the TTAB are entitled to preclusive effect. Thus, we could not address its argument in any event.

Nonetheless, a district court cannot altogether omit consideration of the TTAB's factual determinations that are relevant to a given factor in the infringement analysis. At the very least, such findings should be considered "powerful *evidence*" of the presence (or lack thereof) of one or more of the factors that must be considered in an infringement action. *Cf. America Online, Inc. v. AT & T Corp.,* 243 F.3d 812, 817 (4th Cir.2001) (internal quotation marks omitted).

Although the TTAB's analysis of whether Cantine's mark was "likely to cause confusion" was not sufficient to settle the infringement question, it engaged in more than a cursory analysis with respect to whether the marks were visually similar or similar in terms of pronunciation. Given the agency expertise of the TTAB, these findings are evidence that is entitled to "due respect" from the district court, *see Pizzeria Uno,* 747 F.2d at 1528 (internal quotation marks omitted), in its analysis of the "similarity of the two marks" factor. "Due respect" obligates the district court to give explicit and meaningful consideration to the bases underlying the TTAB's conclusion that the two marks were similar visually and in terms of pronunciation, and to the impact of these conclusions upon the district court's analysis of one or more of the nonexclusive factors set forth in *Sara Lee.* Because the matter was before the district court on summary judgment, we are constrained to return the matter for consideration of whether the TTAB findings of fact are sufficient to create an issue of material fact that would preclude summary judgment.

[2] By contrast, the TTAB's factual findings that the goods to which the marks were affixed were "identical" and "traveled in the same channels of trade" and "purchased by the same end users" were based simply on the fact that Cantine's application set forth no limitation that would distinguish the goods. Because these findings are not grounded in evidence of actual use that is fundamental in infringement litigation, the district court was not obligated to accord them any special weight.

Thus, we vacate the decision of the district court and remand for further proceedings in light of this opinion.

*VACATED AND REMANDED.*

**\*821** WIDENER, Circuit Judge, concurring and dissenting.

I concur in the vacation of the judgment of the district court and in the remand.

However, I respectfully dissent as to the action which the district court should take on remand. I would require the district court to give presumptive validity to the findings of the Patent and Trademark Office which have survived both administrative review and review by the Federal Circuit.

108 Fed.Appx. 816

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



227 Fed.Appx. 239 Page 1
227 Fed.Appx. 239
**(Cite as: 227 Fed.Appx. 239)**

H

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
RENAISSANCE GREETING CARDS, INCORPORATED, Plaintiff-Appellant,
v.
DOLLAR TREE STORES, INCORPORATED, Defendant-Appellee.
**No. 06-1131.**

Argued: Nov. 30, 2006.
Decided: March 30, 2007.

**Background:** Holder of the trademark "Renaissance," used with greeting cards, brought suit against an alleged trademark infringer selling gift bags using a mark containing that word, claiming violations of the Lanham Act's trademark infringement and false designation of origin provisions and Virginia common law of trademarks and unfair competition. The United States District Court for the Eastern District of Virginia, [405 F.Supp.2d 680,](#) T.S. Ellis, III, J., granted a defense motion for summary judgment, and the holder appealed.

**Holdings:** The Court of Appeals, Faber, Chief District Judge for the Southern District of West Virginia, sitting by designation, held that:
 (1) evidence supported district court's determination that defendant did not infringe the trademark, and
 (2) exclusion of evidence relating the parties' settlement negotiations was not an abuse of discretion.
 Affirmed.

West Headnotes

**[1] Trademarks** 1086
382Tk1086 Most Cited Cases

**[1] Trademarks** 1092
382Tk1092 Most Cited Cases

**[1] Trademarks** 1110
382Tk1110 Most Cited Cases
Evidence supported district court's determination that a seller of gift bags containing the word "renaissance" did not infringe the trademark "Renaissance," used with greeting cards; the mark was weak, such that its ability to identify the source of products did not extend beyond the greeting card market, the holder of the mark did not advertise its greeting cards line in any way, and none of four instances of confusion demonstrated confusion among the actual consumer public. Lanham Act, §§ 32(1), 43(a), [15 U.S.C.A. § 1114(1),](#) [1125(a).](#)

**[2] Evidence** 213(1)
157k213(1) Most Cited Cases

**[2] Federal Civil Procedure** 1107
170Ak1107 Most Cited Cases
District court's exclusion of evidence relating the parties' settlement negotiations in a trademark infringement suit, specifically ordering such content stricken from two paragraphs of the trademark holder's original complaint, was not an abuse of discretion; the court narrowly tailored the portions of the paragraphs at issue to be excluded, and assured the holder's counsel that it would reconsider the matter if an exception to the rule excluding such evidence were later revealed. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**[3] Evidence** 213(1)
157k213(1) Most Cited Cases

**[3] Federal Civil Procedure** 2011
170Ak2011 Most Cited Cases
District court's exclusion of evidence relating the parties' settlement negotiations, specifically upholding a protective order precluding witness testimony on the issue, was not an abuse of discretion in a trademark infringement suit; the trademark holder did not say what fact it wished to discover through inquiry about the negotiations. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**Trademarks** 1800
382Tk1800 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

APPENDIX B
TAB 2

Renaissance.

**Trademarks** 🔑 **1800**
382Tk1800 Most Cited Cases
Renaissance Greeting Cards.

*240 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (1:05-cv-00341-TSE).

**ARGUED:** Michael Steven Culver, Millen, White, Zelano & Branigan, P.C., Arlington, Virginia, for Appellant. Beth Hirsch Berman, Williams, Mullen, Hofheimer & Nusbaum, P.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** Adam Casagrande, Williams, Mullen, Hofheimer & Nusbaum, P.C., Norfolk, Virginia, for Appellee.

Before WIDENER and WILKINSON, Circuit Judges, and DAVID A. FABER, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge FABER wrote the opinion, in which Judge WIDENER and Judge WILKINSON joined.

Unpublished opinions are not binding precedent in this circuit.

FABER, Chief District Judge:

Renaissance Greeting Cards, Inc., appeals the district court's grant of summary judgment to Dollar Tree Stores, Inc., and the court's determination of an evidentiary issue under Federal Rule of Evidence 408. For the following reasons, we affirm with regard to both issues.

I.

In connection with its greeting cards business, appellant Renaissance Greeting Cards, Inc. ("RGC"), owns three registered trademarks containing the words "Renaissance" and "Renaissance Greeting Cards." Although the marks were registered in 1992, 1996, and 2003, respectively, at least one of these marks has been in continuous use by RGC or its predecessors since 1977. The parties do not dispute that RGC's "Renaissance" mark is incontestible pursuant to 15 U.S.C. § § 1065 and 1115(b).

Although RGC operates one retail outlet store in Maine, the vast majority of RGC's sales are made on a wholesale basis to assorted retailers and to florists affiliated with RGC's parent company, Florists' Transworld Delivery, Inc. ("FTD"). Not surprisingly, RGC's advertising expenditures, which have averaged $358,000.00 in recent years, are targeted mostly at these wholesale customers. With recent annual sales averaging twelve million dollars, RGC claims approximately 0.2% of the greeting cards market. Although RGC's products at one time included a line of gift bags, gift wrap, bows, and ribbon, RGC abandoned this line in 1990, and has since confined itself to the sale of greeting cards.

Appellee Dollar Tree Stores, Inc. ("DTS"), owns and operates approximately 2,800 discount retail stores nationwide, with recent annual sales totaling in excess of $3 billion. Since 1993, DTS has sold a line of gift bags bearing a "Renaissance" or "Renaissance Gift Bags" mark. In 2002, it expanded this line to include gift wrap, boxes, bows, ribbon, and tissue paper. DTS estimates that it has sold somewhere between 250 million and 500 million units of these products since 1995. DTS also sells a line of greeting cards, but these cards, which are produced by American Greetings Corporation, are sold under the trademark "Tender Thoughts."

At the time it selected its "Renaissance" marks, DTS was unaware of RGC's trademarks. Indeed, DTS did not conduct a trademark search or consult counsel with regard to its use of the mark until 2003, when it discovered that the "Renaissance" mark was widely used by many companies. As a result of this discovery, DTS eventually *241 began marketing its line of gift products under the mark "Voila." The older "Renaissance" gift bags, however, remained available for purchase in some of DTS's stores as late as July 2005.

When RGC discovered DTS's use of the mark in 2003, it sent a letter to Betta Products, Inc., the company it believed to have produced the bags. Betta Products directed RGC to DTS, and in December 2003, counsel for RGC sent a letter to DTS seeking to discuss the issue. When this and two subsequent letters produced no response, RGC filed suit on March 29, 2005, alleging (I) infringement of a federally registered trademark under 15 U.S.C. § 1114(1); (ii) trademark infringement and a false designation of origin under 15 U.S.C. § 1125(a); and (iii) common law infringement and unfair competition under Virginia state law. On December 19, 2005, the district court granted summary judgment in favor of DTS, the parties having previously agreed to a bench trial.

RGC filed a timely notice of appeal with regard to two issues: (1) the district court's determination that

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

227 Fed.Appx. 239 Page 3
227 Fed.Appx. 239
**(Cite as: 227 Fed.Appx. 239)**

no likelihood of confusion existed between RGC's and DTS's marks; and (2) the district court's decision to strike portions of the complaint and to preclude certain discovery pursuant to Federal Rule of Evidence 408. We have jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291.

II.

We review *de novo* the legal determinations made by a district court in granting summary judgment. *See* Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir.1995). A district court's likelihood of confusion inquiry, however, necessarily involves factual determinations. Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco, 329 F.3d 359, 362 (4th Cir.2003). Where, as here, the court is to be the ultimate finder of fact, the entire record is before the court at the summary judgment stage, [FN1] and only the inferences to be drawn from the underlying facts--as opposed to the facts, themselves--are in dispute, a court may properly proceed to final judgment. *See* Id.

> FN1. "The Court: 'All right. I don't need anything more. After that, the case is ready for disposition, isn't it, Mr. Hanes [Attorney for Dollar Tree], Mr. Culver [Attorney for RGC].' Attorney for Dollar Tree: 'Yes.' Attorney for RGC: 'Yes.' " (J.A. at 355.)

It makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts. If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should draw his inferences without resort to the expense of trial. Id. at 362 (quoting Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir.1991)(internal quotations and citations omitted)). In such circumstances, we review the district court's findings for clear error. Int'l Bancorp, 329 F.3d at 362; *see also* Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 91-92 (4th Cir.1997)("This circuit reviews district court determinations regarding likelihood of confusion under a clearly erroneous standard."). Under this standard, the district court's findings may not be disturbed unless there is no evidence in the record to support them, or when, having reviewed the record ourselves, "we are left with a definite and firm conviction that a mistake has been committed." Petro Stopping, 130 F.3d at 92. In no case, however, will this **\*242** standard permit a district court's decision to stand where the court incorrectly applied the law. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir.1984).

A.

[1] Actions for trademark infringement require proof of two elements: (1) that the plaintiff has a valid mark, and (2) that the similarity of the defendant's mark to the plaintiff's creates a "likelihood of confusion" in the marketplace. *See* Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir.1990); 15 U.S.C. § 1114(1). Because the parties do not dispute that RGC's "Renaissance" mark is incontestible pursuant to 15 U.S.C. §§ 1065 and 1115(b), the district court properly limited its inquiry to the "likelihood of confusion" element. [FN2]

> FN2. Because the "likelihood of confusion" test governs not only suits under the Lanham Act, but also Virginia common law actions for infringement and unfair competition, we analyze appellant's causes of action simultaneously. Lamparello v. Falwell, 420 F.3d 309, 312 n. 1 (4th Cir.2005).

Courts consider seven factors in evaluating whether a competing mark creates a likelihood of confusion:
 1) The strength or distinctiveness of the mark;
 2) The similarity of the two marks;
 3) The similarity of the goods or services the marks identify;
 4) The similarity of the facilities the two parties use in their businesses;
 5) The similarity of the advertising used by the two parties;
 6) The defendant's intent;
 7) Actual confusion.
Pizzeria Uno, 747 F.2d at 1527. These factors will not be of equal relevance in every case. Lone Star, 43 F.3d at 933. Indeed, "[c]ertain factors may not be germane to every situation," and certain factors other than those listed above may be relevant to the "likelihood of confusion" analysis in certain cases. Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463 (4th Cir.1996). RGC contends that the district court misapplied these factors in certain respects to such an extent that it committed legal error. We will consider each element in turn.

1.

RGC contends that the district court improperly weighed the strength of the "Renaissance" mark, and that it placed too much emphasis on the "strength of the mark" element in analyzing the likelihood of confusion. The district court began its evaluation of

the mark's strength by noting our statement in *Pizzeria Uno* that the "first and paramount factor under this set of factors is the distinctiveness or strength of the two marks." *Pizzeria Uno,* 747 F.2d at 1527. It then proceeded to apply the two-factor test set forth in *CareFirst of Md., Inc. v. First Care, P.C.,* 434 F.3d 263 (4th Cir.2006). Under that test, the court considers (1) the conceptual strength of the mark, and (2) the commercial strength of the mark. *Id.* at 269.

A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Pizzeria Uno,* 747 F.2d at 1527. Suggestive and arbitrary marks are deemed strong and presumptively valid, whereas generic and descriptive marks are deemed weak, and require proof of secondary meaning within the market in order to receive trademark protection. *Id.* After considerable analysis, the district court concluded that RGC's "Renaissance" mark is suggestive, because it "does not describe any particular *243 characteristic of RGC's greeting cards, but 'requires some imagination to connect it with the goods.' " (J.A. at 353) (quoting *Retail Servs., Inc. v. Freebies Publ'g,* 364 F.3d 535, 539 (4th Cir.2004).)

This categorization does not end a court's evaluation of a mark's conceptual strength, however. A court must also consider other registrations of the mark, because "the strength of a commonly-used mark decreases as the number of third-party registrations increases." *Pizzeria Uno,* 747 F.2d at 1531. The district court therefore considered evidence of 465 federal and 203 state trademark registrations or pending applications, all for marks using the word "Renaissance." (J.A. at 358.) It then specifically considered evidence that twenty-three of these registrations, including RGC's, are for marks that fall in the same class of paper products as RGC's, PTO International Class 16. [FN3] (*Id.* at 358, 344.) As a result, the court concluded that this widespread usage of the word "Renaissance" in other trademarks significantly diminished any distinctiveness inherent in RGC's marks.

> FN3. Under the regulations of the Patent and Trademark Office, Class 16 includes the following:
> Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); playing cards; printers' type; printing blocks.
> International Schedule of Classes of Goods and Services, 37 C.F.R. § 6.1(16).

Citing *CareFirst,* RGC asserts that the district court erred in considering evidence that "Renaissance" is used in products outside RGC's class of paper goods. *CareFirst* does not support such an argument. In that case, we explained that "the frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service,' illustrates the mark's lack of conceptual strength." *CareFirst,* 434 F.3d at 270 (quoting *Pizzeria Uno,* 747 F.2d at 1530-31). Because in that case there was ample use of "CareFirst" and similar marks in the health care industry alone, it was unnecessary to consider use of the mark in unrelated industries. As the above passage makes clear, however, evidence of third-party use of a mark in unrelated markets--although not as persuasive as use within the same product class--indicates a mark's lack of conceptual strength. [FN4]

> FN4. RGC further argues that the district court ought not to have discounted its attempts to police the use of its mark by third-parties. The district court's opinion makes evident that it gave due consideration to RGC's efforts in this regard, but was unimpressed with the "mixed results" RGC achieved. (J.A. at 359 n. 15.)

The second step in the "strength of the mark" analysis is to consider the mark's commercial strength, a concept similar to the "secondary meaning" inquiry considered in evaluating a mark's validity. *CareFirst,* 434 F.3d at 269 n. 3. While third-party use of the mark is relevant at this stage, as well, the court also considers a number of other factors, such as advertising expenditures, consumer awareness of the source of the mark, market share, and unsolicited media coverage. *See Perini,* 915 F.2d at 125. The district court faithfully considered these and other factors, noting RGC's market share of less than one percent of the greeting cards market, its average annual advertising expenditures of less than $360,000.00, and the lack of both independent media coverage of the business and survey evidence

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

indicating an association between RGC's mark and its *244 product. (J.A. at 361.) Because of the ample evidence supporting the district court's decision on this point, we find no error in the court's conclusion that RGC possesses a weak mark "such that its ability to identify the source of products does not extend beyond the greeting card market." (*Id.* at 361-62.) See Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 394 (2d Cir.1995). [FN5]

> FN5. On November 30, 2006, the day this matter was argued, this court issued its opinion in another trademark dispute, Synergistic Int'l, LLC v. Korman, 470 F.3d 162 (4th Cir.2006). Although RGC argues that Synergistic supports its position with regard to consideration of third-party registrations of a mark in unrelated industries, we must conclude otherwise. In Synergistic, we concluded that the appellant's mark was conceptually strong based in part on the fact that the mark's dominant word, although commonly used in other industries, was not commonly used in the appellant's industry or related industries. Id. at 174. By contrast, "Renaissance" is used not only by hundreds of businesses in industries unrelated to RGC's, but also by numerous businesses within RGC's PTO class of products. Furthermore, the appellant's mark in Synergistic was found to be commercially strong. As described above, that is not the case here.

2.

The second factor to be considered in the "likelihood of confusion" analysis is the similarity of the marks in question. In order for this factor to weigh in favor of the plaintiff, the marks need not be identical; rather, they must only be "sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." Lone Star, 43 F.3d at 936. For purposes of summary judgment, the district court assumed the marks to be similar in appearance. This factor thus weighs in favor of a finding of likelihood of confusion.

3.

Next, the court considers the similarity of the goods or services identified by the marks. With regard to this element, the products in question need not be identical or in direct competition with each other. Because confusion may arise even where products are merely "related," the court is to consider "whether the public is likely to attribute the products and services to a single source." CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 679 (7th Cir.2001). An important function of this "related goods" concept is to protect trademark owners' ability to expand into associated markets in the future. Id. at 680-81.

After considering the manner in which greeting cards and gift products are marketed in the industry, and the fact that RGC at one time marketed its own line of gift products, the district court concluded that the parties' products constituted related goods. The court then properly observed that, although the fact that goods are related weighs in favor of a finding of infringement, the similarity of the goods, alone, is not dispositive as to the likelihood of confusion. (J.A. at 364-65) (citing Arrow Distilleries, Inc. v. Globe Brewing Co., 117 F.2d 347, 351 (4th Cir.1941); Petro Stopping, 130 F.3d at 95; 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:62 (4th ed. 2006).)

4.

The fourth factor to be considered in the "likelihood of confusion" analysis is the similarity of the facilities used by the parties in their businesses. As McCarthy explains, the court is to consider the class of consumers purchasing the products, and the context in which they make their purchases. McCarthy, *supra,* § 24:51. Although noting that DTS's products were most likely to be purchased by "value-*245 conscious consumers," the district court concluded that the placement of the products within the stores and their general retail availability were sufficient to tilt this factor "very modestly" in favor of a finding of infringement. (J.A. at 365-66.) We see no error in this determination.

5.

We next consider the similarity of the advertising employed by the parties. It is undisputed that DTS does not advertise its greeting cards line in any way. Moreover, although RGC does engage in some limited advertising, its efforts are targeted almost entirely at its wholesale customer base. RGC contends that the district court erred in interpreting this factor as militating against infringement, rather than assigning it neutral effect. (Brief of Appellant at 54) (citing Carnival Brand Seafood Co. v. Carnival Brands, Inc., 187 F.3d 1307, 1314 (11th Cir.1999).) The district court's holding on this point was supported by sound authority, however, and we find no error. See IDV N. Am., Inc. v. S & M Brands, Inc., 26 F.Supp.2d 815, 828- 29 (E.D.Va.1998)(citing Pizzeria Uno, 747 F.2d at 1527; Petro Stopping, 130 F.3d at 95).

6.

The sixth factor to be considered is the defendant's intent in adopting its mark. [FN6] As we explained in Pizzeria Uno, "[i]f there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion." Pizzeria Uno, 747 F.2d at 1535.

> FN6. To the extent appellant argues that the district court's decision to strike portions of the complaint and to preclude certain discovery are relevant to this factor, the court notes that the district court's ruling on those points is affirmed in Section III below.

RGC contends that DTS exhibited bad faith by failing to conduct a trademark search or to obtain advice of counsel before adopting the "Renaissance" mark for use on its gift products, and by continuing to use the mark after being contacted by RGC. RGC's first argument necessarily fails, because, as the district court reasoned, "[a]t most, the failure to conduct a search is probative of Dollar Tree's carelessness, which even if true, has little bearing on the likelihood that its allegedly infringing mark will confuse the public." (J.A. at 367 (citing McCarthy, supra, § 23:109).) Moreover, DTS was justified in continuing its use of the "Renaissance" mark if, as the district court concluded, DTS believed RGC's mark to be too weak to prevent DTS's use of the mark on its gift products. See McCarthy, supra, § 23:120. Accordingly, the district court committed no error in concluding that the intent factor militated against a finding of infringement.

7.

Finally, the "likelihood of confusion" analysis requires consideration of instances of actual confusion among consumers. RGC produced evidence of four instances of confusion, one involving a shop owner, two involving shop managers, and one involving an independent sales representative. The district court found that this small number of cases, none of which demonstrated confusion among the actual consumer public, weighed against RGC's position, rather than in favor. In so holding, the district court took into account the large volume of sales from which RGC's instances of confusion were taken, as well as RGC's unsuccessful efforts to uncover additional examples of actual confusion.

*246 The court also appropriately considered our statement in Petro Stopping that, "[a]t worst, [a] company's failure to uncover more than a few instances of actual confusion creates a 'presumption against likelihood of confusion in the future.' " Petro Stopping, 130 F.3d at 95 (quoting Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir.1980)). In Petro Stopping, we determined that the appellant's evidence of actual confusion, consisting of only a few instances out of more than $2 billion in sales, was "at best *de minimis.*" Petro Stopping, 130 F.3d at 95. We see no error in the district court reaching the same conclusion in the instant case.

B.

Having determined that the district court committed no clear error in assessing each of the Pizzeria Uno factors, we turn to RGC's contention that the court erred in weighing these factors against each other. Specifically, appellant argues that the court placed excessive significance on the strength of the mark. This argument is similarly unavailing. As previously noted, these factors will be of varying relevance in every case. Lone Star, 43 F.3d at 933. Nonetheless, where only three of the seven Pizzeria Uno factors weighed in favor of a finding of likelihood of confusion, we are unable to conclude that the district court committed clear error in finding no infringement. Ample evidence supported the court's decision, and we will not disturb it.

III.

[2] The second issue RGC raises on appeal is the district court's exclusion, pursuant to Federal Rule of Evidence 408, of evidence relating the parties' settlement negotiations. [FN7] Specifically, the district court ordered such content stricken from two paragraphs of RGC's original complaint, and subsequently upheld a protective order entered by the magistrate judge precluding witness testimony on the issue. We review both decisions for an abuse of discretion. See Seay v. TVA, 339 F.3d 454, 480 (6th Cir.2003)( "We review the decision to grant or deny a motion to strike for an abuse of discretion, and decisions that are reasonable, that is, not arbitrary, will not be overturned."); Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1070 (9th Cir.2002)(reviewing ruling on motion to strike under Fed.R.Civ.P. 12(f) for abuse of discretion); Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir.2000)(same); M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir.1992)(protective order entered under Fed.R.Civ.P. 26(c) reviewable for abuse of

discretion).

> FN7. After a review of the record, we believe RGC made clear to the district court that it wished to introduce the disputed evidence to show DTS's intent for purposes of the "likelihood of confusion" analysis. We are thus unpersuaded by DTS's argument that RGC waived this issue below. (*See* Brief of Appellee at 32-34.)

Paragraphs 16 and 17 of RGC's original complaint detailed certain communications between the parties' attorneys made during settlement negotiations. (J.A. at 14.) In its answer to the complaint, DTS moved to strike these paragraphs pursuant to Federal Rule of Evidence 408, which provides as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements ***247** made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408. RGC contended that the passages, which included statements by counsel for DTS as to how many units of the "Renaissance" gift products remained in stock, were admissible as an exception to Rule 408 to show bad faith or willfulness.

The court took up the issue at a motions hearing on June 3, 2005, discussing the matter at length. The transcript of that hearing makes evident that the court was aware of the law governing motions to strike under Rule 12(f), and that such motions are to be granted infrequently. (J.A. at 92.) *See* Stanbury, 221 F.3d at 1063. It is equally clear that the court felt RGC's proffered exceptions to Rule 408 were impermissible under the rule, and that it did not consider the disputed information to be probative. As a result, the district court granted the motion to strike in part and directed RGC to file an amended complaint. In doing so, however, the court narrowly tailored the portions of Paragraphs 16 and 17 to be excluded, and assured counsel for RGC that it would reconsider the matter if an exception to Rule 408 were later revealed.

RGC made its argument on the basis of rather weak authority. It was able to cite no cases from this circuit in support of its position. Furthermore, one of its chief cases, Itron, Inc. v. Benghiat, No. 99-501, 2003 WL 22037710, 2003 U.S. Dist. LEXIS 15039 (D.Minn. Aug. 29, 2003), is an unpublished district court opinion from the District of Minnesota, and is therefore of questionable precedential value. Another case on which it relies actually militates against admission of the disputed paragraphs. Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc., 823 F.Supp. 1077 (S.D.N.Y.1993). In *Stern's,* the court considered statements made during settlement negotiations for purposes of showing the defendant's intent. The *Stern's* court only considered statements made by the plaintiff, however, and only to the extent they proved notice of the plaintiff's objection to the defendant's mark. Id. at 1088 n. 6 (adding that statements made during settlement negotiations are clearly inadmissible under Rule 408 where they may be considered admissions as to the merits of the action). Similarly, the district court here informed RGC that it would consider statements made by RGC to DTS. (J.A. at 94-96.) Because the district court's ruling on this point was reasonable and not overreaching, we find no abuse of discretion.

[3] The protective order arose from a notice of deposition issued by RGC that included a demand for the production of a witness to testify to "all factual representations made to plaintiff's counsel during negotiations with defendant's counsel in 2004 involving the mark RENAISSANCE...." (J.A. at 189.) Upon motion by DTS, the magistrate judge to whom the motion was referred concluded that, although evidence of settlement negotiations may be discoverable under some circumstances, RGC had not shown why the settlement negotiations were relevant to its "claims or defenses." (J.A. at 184.) Moreover, the magistrate judge observed that RGC did not say what fact it wished to discover through inquiry about the negotiations. (*Id.*) When RGC objected to ***248** the magistrate judge's order, the district court considered the issue at a subsequent motions hearing. Concluding, as it had at the prior hearing on DTS's motion to strike, that the disputed information was not probative and did not meet an exception to Rule 408, the district court overruled RGC's objections to the order. The district court's decision in this regard was supported by sound policy considerations. *See* Fiberglass Insulators, Inc. v.

227 Fed.Appx. 239
227 Fed.Appx. 239
**(Cite as: 227 Fed.Appx. 239)**

Page 8

*Dupuy,* 856 F.2d 652, 654 (4th Cir.1988)("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions."). Accordingly, we find no abuse of discretion.

IV.

For the foregoing reasons, we affirm the district court's rulings with regard to Federal Rule of Evidence 408, and its grant of summary judgment to Dollar Tree Stores.

*AFFIRMED.*

227 Fed.Appx. 239

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

APPENDIX B
TAB 2