```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                      WESTERN DIVISION
                    NO. 5:07-cv-00347-D
```

LULU ENTERPRISES, INC.,
                                          Supplemental Declaration
            Plaintiff,                    of Dr. Gerald L. Ford

vs.

HULU, LLC, f/k/a N-F NEWSITE, LLC,
et al.,

            Defendants.
_____

         I, Gerald L. Ford, declare as follows:

                          INTRODUCTION

         1.   I am a partner in the marketing research and consulting firm of Ford Bubala & Associates, located in Huntington Beach, California, where I have been engaged in commercial marketing research and consulting for the past thirty-two years.  I am also an emeritus faculty member of the School of Business Administration, California State University, Long Beach, where I held a full-time teaching position for twenty-five years, prior to my retirement in 1994.

         2.   I am the same Gerald L. Ford who previously filed a declaration detailing the results of an awareness survey I designed and caused to be conducted in this matter.  My professional experience is further summarized in that prior declaration in paragraphs 27 through 37.

         3.   At the request of Kilpatrick Stockton LLP, counsel for Defendant, Hulu, LLC, f/k/a N-F Newsite, LLC, et al, ("Hulu"), I have been asked to review and comment on the survey report submitted by Guideline and the focus group report

submitted by NERA Economic Consulting.  I have also been asked to respond to Plaintiff's criticism of the awareness survey I submitted.

## GUIDELINE SURVEY

4.   In an attempt to offer evidence of a likelihood of confusion, Guideline offers a survey design that has been repeatedly rejected by courts.  See <u>National Distillers Products Co., LLC v. Refreshment Brands, Inc</u>, 198 F. Supp. 2d 474 (S.D.N.Y. 2002); <u>Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.</u>, 452 F. Supp. 2d  772 (W.D. Mich. 2006); <u>Kargo Global, Inc. v. Advance Magazine Publishers, Inc.</u>, 2007 U.S. Dist. LEXIS 57320 (S.D.N.Y 2007); and <u>Simon Property Group L.P. v. mySimon, Inc.</u>, 104 F. Supp. 2d 1033 (S.D. Ind. 2000).

5.   In the Guideline survey, respondents were initially shown and asked to review three websites:  Lulu.com, Createspace.com, and Veoh.com.  Subsequent to this, some respondents were shown an internet advertisement for Hulu and some respondents were shown an internet advertisement in which the Hulu name was replaced with the name Hala.  Respondents were then asked:

> Do you think this advertisement is for one of the websites that I showed you earlier, or do you think not, or don't you know?

Respondents who responded affirmatively were then asked:

> What makes you think so?

and

> You may have mentioned this already, but which of the websites I showed you earlier is this advertisement for?

Respondents who could not identify the website by name were then shown a printout of the home page of the three websites that they were originally shown and were asked:

> Which of these websites that you saw earlier was the advertisement for?

Respondents who did not evidence confusion to the initial question were asked:

> Do you think this advertisement is for a website that is affiliated with one of the websites I showed you earlier, or do you think not, or don't you know?

The same series of follow-up questions was asked but these follow-up questions addressed affiliation.

      6.    As clearly illustrated above, this survey employed leading questions and procedures that suffered from demand effects and was not representative of marketplace conditions.

<u>Leading Questions and Procedures</u>

      7.    Surveys which employ leading or suggestive questions do not provide an appropriate measurement for likelihood of confusion in Lanham Act matters. In the instant matter, the Guideline survey was clearly suggestive. Survey respondents were first shown three websites (i.e., Lulu, Createspace, Veoh) and then were shown an internet advertisement for Hulu and asked whether they thought the advertisement was for one of the websites they were shown earlier. This procedure not only suggested that survey respondents should find a connection between Hulu and one of the websites shown earlier but also improperly suggested that respondents find a connection specifically with one of the websites with the closest similarity to one they had seen earlier. There was simply no reason to show

survey respondents the Lulu website.  The use of a traditional likelihood of confusion survey format would have provided a more reliable indication of likelihood of confusion.  Under a traditional format survey, respondents would have been simply shown the current Hulu website and asked what company they believed owned or operated the website, whether or not the website was being operated with the approval of any other company or companies, and whether or not the company that operated the website had a business connection or affiliation with any other company or companies.  See <u>Leelanau</u>, 452 F. Supp. 2d 772, at 787.

<u>Demand Effects</u>

       8.   Rather than measuring any actual likelihood of confusion, the Guideline survey questions and procedures generated "demand effects" by suggesting to the survey respondents the existence of a connection between one of the internet sites and the advertisement that the survey respondents would not have made on their own.  Specifically, a question that asks survey respondents whether or not an array of products are put out by the same or related sources is likely to generate demand effects by suggesting to survey respondents, at least implicitly, that they should believe that there is some sort of relationship between one or more of the items in the array when the possibility might not have occurred to consumers who encounter the alleged infringing product by itself.  See <u>Kargo</u>, 2007 U.S. Dist. LEXIS 57320, at 25; and <u>Simon Property Group</u>, 104 F. Supp. 2d 1033, at 1048.

<u>Not Representative of Marketplace Conditions</u>

       9.   The Guideline survey structure does not appear to

be based upon any marketplace conditions.  Specifically, the Guideline report offers no empirical or circumstantial evidence that any consumer in real life would see or be exposed to the Lulu, Createspace, and Veoh websites, and Hulu advertising sequentially and within a few moments of one another.  Based upon the Ford Bubala & Associates awareness survey research results, it is clear that among potential visitors to Defendant's internet site a net of 2.0% report that they have ever heard of the Lulu self publishing internet site and zero percent have ever heard of the Lulu video content internet site.  Thus, contrary to market conditions, the Guideline survey planted the Lulu name in the minds of the survey respondents prior to asking the survey questions.  See <u>National Distillers</u>, 198 F. Supp. 2d 474, at 484.

<u>Invalid Research Design</u>

      10.  In addition to the leading questions and procedures, demand effects, and non-representative marketplace conditions, the invalidity of the Guideline survey design is evidenced by comparing the alleged likelihood of confusion between Lulu and Hulu and the likelihood of confusion measured between in-treatment controls Veoh and Hulu and Veoh and Hala.  Specifically, Guideline reports that 24.7% of the survey respondents reported that they believed that the Hulu advertisement was an advertisement for Lulu or for a website affiliated with Lulu.  See Guideline report pages 21-25.  Subsequently Guideline reports that 24.3% of the survey respondents reported that the Hulu advertisement was an advertisement for Veoh or for a website affiliated with Veoh.  Additionally, Guideline reported that 25.0% of the survey

respondents reported that the Hala advertisement was an advertisement for Veoh or for a website affiliated with Veoh. See Guideline report pages 25-26.

      11.    These results clearly evidence the invalidity of Guideline's survey design to measure trademark likelihood of confusion as opposed to non-trademark likelihood of confusion. I believe that there can be no doubt that no one would argue that there is a likelihood of trademark confusion between the Veoh mark and website and either the Hulu or Hala advertisements. Thus, how can the Guideline survey be relied upon to evidence a likelihood of trademark confusion between Lulu and Hulu? It simply cannot. Guideline suggests that the confusion measured between Veoh and Hulu generally captures the guessers and pattern matchers created by the leading and suggestive nature of the Guideline survey design. This is pure speculation because it asks the court to accept with blind faith that the likelihood of confusion reported between Lulu and Hulu is not guessing or pattern or name matching but rather likelihood of trademark confusion.

<u>Inadequacy of the Guideline Report</u>

      12.    The <u>Reference Guide on Survey Research</u>, by Shari Seidman Diamond, published by the Federal Judicial Center (2000), 229 @ 270, states that:

> The completeness of the survey report is one indicator of the trustworthiness of the survey and the professionalism of the expert who is presenting the results of the survey.

Guideline reports that:

> In designing and conducting studies intended to measure consumer perceptions and beliefs, we follow the

- 6 -

>   guidelines and standards generally employed in the
>   field of survey research, as well as the criteria set
>   forth in the <u>Reference Guide on Survey Research</u>
>   published by the Federal Judicial Center (2000).

Guideline report, page 13.

Despite this statement, the Guideline survey report is incomplete and does not provide the necessary data and information. Specifically, the Guideline survey report does not provide such underlying data as: on which of the criteria in the screening questions people qualified for inclusion in the survey (e.g., watch or download TV shows, watch or download video clips, and/or watch or download movies), the verbatim responses of respondents, the sample disposition, the coding of survey responses, etc.

<u>NERA FOCUS GROUP REPORT</u>

   13. In a second attempt to offer evidence of a likelihood of confusion, NERA offers data from six focus groups comprised of a total of forty people. Each of the focus groups consisted of six or seven people. Focus group participants were provided with a brief introduction and then participated in a discussion about what type of digital content participants had created for the internet or were using on the internet. Subsequently, participants were handed two pieces of paper that each contained the names of the same six websites. These website names were: www.lulu.com, www.bebo.com, www.lala.com, www.ebay.com, www.hulu.com, and www.dtda.com. The focus group moderator read the six names to the participants and then asked them, independently, (1) to draw a line between any of the website addresses on the first page that they thought were owned or hosted by the same company and (2) to draw a line between any

of the website addresses on the second page that they thought were associated with one another or were connected in some way. Subsequently, the focus group moderator asked questions about familiarity with the websites, why focus group participants made the connections they made between the website addresses, etc.

14. The manner in which the focus group participants were presented with the website addresses, in plain block letters on a sheet of paper, does not represent in any way the manner in which these marks would be encountered in the marketplace. As such, the data from the focus group regarding the relationship between the website addresses does not provide a valid measure of likelihood of confusion. See <u>Juicy Couture, Inc. and L.C. Licensing, Inc. v. L'Oreal USA, Inc. and Luxury Products, LLC</u>, 2006 U.S. Dist. LEXIS 20787 (S.D.N.Y. 2006), at *73.

15. Additionally, the NERA focus group procedures provided for a presentation of the marks essentially side-by-side. It is my understanding that in a trademark matter a side-by-side analysis is inappropriate unless the marks are encountered side-by-side in the marketplace.

16. Finally, like the Guideline report, the NERA focus group report is incomplete and does not provide the necessary data and information. Specifically, while the NERA focus group report notes that focus group respondents were asked such questions as familiarity with the websites, why focus group participants made the connections they made between the website addresses, etc., none of this data or information is reported.

<u>FORD BUBALA & ASSOCIATES AWARENESS SURVEY</u>

17. Plaintiff in the reply brief argues that the Ford

Bubala & Associates awareness survey of the Lulu mark is flawed because it was conducted via the telephone and thus did not measure the awareness of the mark as it appears in the marketplace. While the appropriate stimulus for the measurement of likelihood of confusion is a presentation of the mark as it is encountered in the marketplace, this is simply not the case for recognition or awareness studies involving just a word mark. The Ford Bubala & Associates survey was designed to broadly measure any awareness of Lulu and was not limited to any particular stylization, depiction, etc. The Ford Bubala & Associates survey employed the standard measure for awareness which is unaided and aided recognition of the mark at issue. As such, a survey conducted via the telephone is an appropriate methodology.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 15th day of October, 2007, in Huntington Beach, California.

_____
Dr. Gerald L. Ford