IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-347-D

LULU ENTERPRISES, INC.,              )
                                     )
                    Plaintiff,       )
            v.                       )            **ORDER**
                                     )
N-F NEWSITE, LLC,                    )
                                     )
a/k/a HULU, LLC, et. al.,            )
                                     )
                    Defendants.      )

     This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. In the underlying suit, Plaintiff asserts the following causes of action: (1) federal unfair competition, in violation of 15 U.S.C. § 1125(a); (2) federal cyberpiracy, in violation of 15 U.S.C. § 1125(d); (3) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and (4) unfair competition, in violation of North Carolina common law. (Compl. 1.)

*FACTS*

     Plaintiff Lulu Enterprises, Inc. is a Delaware corporation with its headquarters in Morrisville, North Carolina. (Compl. 2.) Plaintiff is an internet self-publishing company that provides various digital media services for internet users. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 2.) On Plaintiff's "Lulu.com" website, creators can sell their content to the world in the form of books, videos, images, calendars, and the like, and in turn receive a share of the sales revenue. (Id.) For example, on Lulu.com a person can publish a "[n]ovel or nature guide, manual or memoir, children's book or textbook." Lulu Paperback Books, http://www.lulu.com/en/products/paperback (last visited

1

Dockets.Justia.com

Oct. 17, 2007). On Plaintiff's "Lulu.tv" website, creators can post video, audio, and image content for others to view, and in turn receive a share of advertising revenue. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 2–3.) For example, a user can upload his or her "vlog"[1] and receive payments based on the number of persons who view the entries. Lulu.tv Overview, http://www.lulu.tv/signup.php (last visited Oct. 17, 2007). Plaintiff notes at oral argument that it is currently in the process of merging "Lulu.tv" into "Lulu.com."

Defendant N-F Newsite, now "Hulu, LLC," is a Delaware limited liability company with its headquarters in Los Angeles, California. (Answer 2.) Defendant plans to feature its products on the domain name "hulu.com" and other similar domain names. (Def.'s Mem. in Opp. to Pl.'s Mot. for Prelim. Inj. 5–6.) Defendant has yet to fully launch its business, but has disclosed its time frame for doing so under seal. (Sealed Supplemental Decl. of Jason Kilar ¶ 3.)

Defendant's line of business is of particular concern in this case. Defendant claims that it will offer only big-budget, premium TV shows and movies through "hulu.com." (Def.'s Mem. in Opp. to Pl.'s Mot. for Prelim. Inj. 5.) The extent of hulu.com's entertainment catalogue has been filed under seal with this Court. (Sealed Supplemental Decl. of Jason Kilar, Ex. A.) Plaintiff argues that Defendant intends to enter the very same line of business presently occupied by Plaintiff's "Lulu.com" and "Lulu.tv" websites. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 2.) Specifically, Plaintiff fears that hulu.com will offer user-uploaded content similar to that provided by Lulu.com rather than simply providing TV shows and movies with little user interaction. (See id. at 15–19.)

---

[1] A "vlog" is a personal telecast or video diary wherein a person records his or her entries and uploads them to the internet for others to view. See PC Magazine Encyclopedia, "Vlog," http://www.pcmag.com/encyclopedia_term/0,2542,t=vlog&i=54024,00.asp (last visited Oct. 17, 2007) (defining "vlog" as a video blog).

Plaintiff began this action on September 5, 2007. (Compl. 12.) Plaintiff initially requested a temporary restraining order. (Pl.'s Mot. for TRO 1–4.) However, on September 13, 2007, this motion was withdrawn in exchange for Defendant's agreement to expedite discovery and to hold a hearing on the instant Motion for Preliminary Injunction as quickly as possible. (Joint Mot. to Modify Ct.'s Order 1.) On September 14, 2007, the Court approved an expedited discovery schedule, which closed on October 5, 2007. (Order of Sept. 14, at 2.) Under that schedule, the parties filed opposing memoranda on the instant motion on October 9, 2007, and opposing reply memoranda on October 11, 2007. (Order of Sept. 14, at 2.) The Court held a hearing on this matter on October 16, and the issue is ripe for adjudication.

## *ANALYSIS*

A preliminary injunction is a form of extraordinary relief to be granted only sparingly. E.g., Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991). Accordingly, the movant must clearly demonstrate its entitlement to an injunction for preliminary relief to issue. E.g., Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994).

In the Fourth Circuit, courts must consider four factors in deciding whether to grant a preliminary injunction: (a) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (b) the likelihood of harm to the defendant if the injunction is granted; (c) the likelihood that the plaintiff will succeed on the merits; and (d) the public interest. E.g., Direx, 952 F.2d at 812. The court is to apply these factors using a four-step analysis: First, the plaintiff must make a clear showing of irreparable harm. E.g., Southtech Orthopedics, Inc. v. Dingus, 428 F. Supp. 2d 410, 416 (E.D.N.C. 2006). This irreparable harm must be actual and imminent, not remote or speculative. Direx, 952 F.2d at 812. Second, if the plaintiff is able to show an actual and imminent irreparable

3

harm, the court must weigh the likelihood of this harm to the plaintiff without the injunction against the likelihood of harm to the defendant if the injunction is granted. Southtech, 428 F. Supp. 2d at 416. Third, the court is to consider the plaintiff's likelihood of success on the merits. Id. The likelihood of success to be required of the plaintiff depends on the balance of harms — if the balance strongly favors the plaintiff, then the plaintiff need only show that there are serious questions as to the merits of the case such that it is fair grounds for litigation. Id. If the balance of harms does not strongly favor the plaintiff, then the plaintiff must show a strong probability (not mere possibility) of success on the merits. Id. Finally, the court is to consider whether granting the injunction would serve the public interest. Id.

Using this framework, the Court turns first to the unfair competition claims under 15 U.S.C. § 1125(a), N.C. Gen. Stat. § 75-1.1, and North Carolina common law.

*1. Unfair Competition Claims*

To prevail on a federal unfair competition claim, Plaintiff must show that it owns a valid, protectable mark, and that Defendant's use of a colorable imitation of that mark creates a likelihood of confusion. CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006). To determine whether there is a likelihood of confusion, courts in this Circuit look to at least seven factors: (1) the strength or distinctiveness of the plaintiff's mark; (2) the similarity of the plaintiff's mark and the defendant's mark; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the plaintiff's and defendant's facilities; (5) the similarity of the plaintiff's and defendant's advertising; (6) the defendant's intent; and (7) evidence of actual confusion of the two marks. Id. The North Carolina law of unfair competition, in both common and statutory form, requires essentially the same analysis. See Yellowbrix, Inc. v. Yellowbrick Solutions, Inc., 181 F.

4

Supp. 2d 575, 583 (E.D.N.C. 2001) (denying preliminary injunction under N.C. Gen. Stat. § 75-1.1 and under North Carolina common law for the same reasons injunction denied under 15 U.S.C. § 1125(a)).  See also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 2007 U.S. Dist. LEXIS 68345, at *44 (M.D.N.C. Sept. 14, 2007) (equating the federal and state statutory analyses because the state statute "prohibits the same type of activity that the Lanham Act prohibits").  The Court finds it unnecessary to analyze these factors individually at this time because, on the information presented, Plaintiff's asserted harm is not actual and imminent, a "condition precedent to the entry of any preliminary injunction."  In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 527 (4th Cir. 2003).

Irreparable harm is the irreducible minimum required for a preliminary injunction.  See, e.g., Direx, 952 F.2d at 812 (citing Sampson v. Murray, 415 U.S. 61, 88 (1974)).  But the mere existence of an irreparable harm is not enough; the Fourth Circuit has held that a plaintiff must make a clear showing of an irreparable harm that is both actual and imminent.  Id.  See also id. at 816 (declaring the Fourth Circuit's "stated rule" to be that "[a] plaintiff, seeking preliminary relief, must show the present threat of irreparable harm").  As such, the Fourth Circuit has found preliminary injunctive relief inappropriate in cases where the plaintiff's harm was only possible or speculative.

For example, in Direx, the Fourth Circuit considered whether preliminary injunctive relief was appropriate in a case between two medical device manufacturers.  952 F.2d at 804.  Direx sought to enjoin sales of the device by its competitor, Breakthrough.  Id. at 804–08.  Direx asserted that it would suffer irreparable harm because allowing Breakthrough to sell the device would destroy

5

Direx's "predominant position" in the market for the device. Id. at 815. The Fourth Circuit reversed the district court's grant of a preliminary injunction because the harm asserted by Direx was not imminent — Breakthrough could not sell the device anyway until it obtained approval from two key government agencies. The circuit court therefore reversed because the harm was "not present or immediate but merely problematic, conditioned on possible future events." Id. at 815–16. See also In re Microsoft, 333 F.3d at 530 (holding that the imminence requirement not satisfied where there was merely a serious risk that plaintiff would suffer its stated harm in the near future); Dan River, Inc. v. Ichan, 701 F.2d 278, 283–84, 292 (4th Cir. 1983) (holding that the imminence requirement not satisfied where plaintiff alleged illegalities in corporate takeover attempt because "however successful [the takeover] may turn out to be, any major changes in Dan River will take time").

Plaintiff contends that without an injunction, its growing business will be overrun by the massive resources of Fox and NBC-Universal that finance Hulu. (Aff. of Robert Young ¶ 17.) Plaintiff argues that Defendant intends to enter Lulu's business of user-uploaded media, and that Defendant's services will therefore be "closely related, if not identical, to the services that Lulu currently offers." (Pl.'s Reply Mem. 9.) Plaintiff argues that, were this to occur, consumers would confuse the two marks, or worse, assume that Lulu must be the one infringing Hulu's mark. (Pl.'s Reply Mem. 2–3.) Plaintiff's argument, and the irreparable harm it claims, relies on the premise that Defendant intends to enter Plaintiff's line of business.

In support, Plaintiff relies on three arguments from two key pieces of evidence. Plaintiff first contends that Hulu's intent to enter Lulu's market is clearly expressed by Defendant's application to the United States Patent and Trademark Office, where Defendant stated its intent to use its mark in nearly every line of business imaginable, including publication services identical to those provided by

6

Plaintiff. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 3–4.) However, the Fourth Circuit has stated that marks must be evaluated as they are actually used in the marketplace. CareFirst, 434 F.3d at 267. The Fourth Circuit has found "no merit" to the idea that a court should use federal registration statements to determine the similarity of goods and services represented by competing marks. Id. at 272 n.6.

Plaintiff next argues that various statements made by Hulu CEO Jason Kilar and his company during discovery adopt the broad list of uses found in the trademark application as the actual, present intent of the company. For example, Plaintiff repeatedly points to Defendant's interrogatory responses, where Defendant suggests its intent to engage in all the lines of business found in its trademark registration application, subject to its business judgment and market conditions. (Pl.'s Reply Mem. 9.) The Court finds that Plaintiff's argument is outweighed by the other evidence in this case, particularly the sealed evidence and Defendant's assurances to the Court at oral argument, which indicates that Defendant's plans are very narrow and are limited exclusively to making big-budget feature TV and movie content available for its users.

Finally, Plaintiff cites the deposition of Mr. Kilar, who testified on behalf of the company under Federal Rule of Civil Procedure 30(b)(6). Plaintiff argues that Mr. Kilar's sealed testimony in this deposition is inconsistent with his unsealed declarations' assertion that Hulu does not intend to feature the same type of user-generated content found on Lulu.com and Lulu.tv. (Pl.'s Reply Mem. 8–9.) The Court has reviewed this sealed testimony and compared it with Mr. Kilar's declarations, and finds that Defendant does not intend to invade Plaintiff's line of business.

Rather, the Court is persuaded that Defendant does not intend to enter Plaintiff's market when Defendant fully launches its business. Defendant has stated that "Hulu's business [will be] focused

exclusively on premium content — television shows and films — via the internet, and it will do precisely that — *and only that* — on launch." (Def.'s Mem. in Opp. to Pl.'s Mot. for Prelim. Inj. 2 (double emphasis in original).) Because Hulu does not intend to invade Lulu's market, the facts show no relevant distinction from those found in Direx. Here, as in Direx, Plaintiff faces no actual and imminent harm from the launch of Defendant's business.

In the alternative, Plaintiff vigorously contends that given the evidence found in Defendant's trademark application, Defendant could at any time change its mind and enter Lulu's market. (Pl.'s Reply Mem. 9.) The Court is sympathetic, but the instant case is controlled by Direx. Even under Plaintiff's alternative argument, the harm is "merely problematic, conditioned on possible future events," and thus insufficient to support a preliminary injunction. Direx, 952 F.2d at 816. See also In re Microsoft, 333 F.3d at 530 (rejecting attempt to overcome Direx on grounds that presently speculative harm will become imminent too quickly for court to prevent its onset). The Fourth Circuit has clearly indicated that the imminence requirement serves "to limit the deployment of the heavy artillery of preliminary injunctive relief to situations in which it is readily apparent to the court that such relief is actually necessary to prevent a harm from occurring." In re Microsoft, 333 F.3d at 530.

For these reasons, Plaintiff's Motion for Preliminary Injunction is denied under the unfair competition claims. However, just as the Court accepts Defendant's word, the Court intends to hold Defendant to its word. The Court's decision is based on the record before it and Defendant's declarations at oral argument. The Court can certainly reconsider its decision "[i]f and when the fear of wrongdoing should ripen to imminence." Dan River, 701 F.2d at 292. Should Defendant subsequently decide to invade Plaintiff's line of business, the Court will be open to considering the

issue again under those new facts. The Court will hold Defendant to its good-faith assurances about what hulu.com will and will not contain.

### 2. Cyberpiracy Claim

Plaintiff has also asserted a federal cyberpiracy claim in this case. (Compl. 1.) To prevail on a federal cyberpiracy claim, Plaintiff must show (1) that Defendant had a bad faith intent to profit from its "hulu.com" domain name, and (2) that Defendant's "hulu.com" domain name is confusingly similar to or dilutive of Plaintiff's "Lulu.com" domain name. See, e.g., Lamparello v. Falwell, 420 F.3d 309, 318 (4th Cir. 2005). See also 15 U.S.C.S. § 1125(d) (LexisNexis 2007). Here, as in Yellowbrix, "Defendant's product is distinct from that of Plaintiff and, as discussed, is marketed to a different set of consumers. Because Defendant [will not be] a competitor of Plaintiff, it did not seek to 'syphon off' Plaintiff's customers by adopting the [allegedly infringing] domain name." Yellowbrix, 181 F. Supp. 2d at 582. Therefore, based on the evidence presented to the Court, Plaintiff cannot show bad faith on the part of Defendant. Accordingly, Plaintiff's Motion for Preliminary Injunction is also denied under the cyberpiracy claim.

### 3. Discovery Disputes

The parties have filed various complaints about the conduct of discovery. Plaintiff objects to Defendant's alleged withholding of information and improper assertions of attorney-client privilege. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 27–32.) Defendant objects to Plaintiff's tardy filing of two scientific surveys (Def.'s Mot. in Limine to Exclude Pl.'s Survey and Focus Group Decl. and Reports) and also contends that the survey results are unreliable and must be excluded under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) (Def.'s Mot. to Exclude Pl.'s Surveys and Expert Test.).

The Court has broad discretion in regulating discovery. <u>See generally</u> Fed. R. Civ. P. 37. After considering the arguments, the Court has decided as follows with respect to the survey issues: Plaintiff's Motion for Leave to File the Declaration of Hal Poret in Support of Motion for Preliminary Injunction, and Plaintiff's Motion for Leave to File the Declaration of Kent Van Liere in Support of Motion for Preliminary Injunction are granted. Defendant's Motion in Limine to Exclude Plaintiff's Survey and Focus Group Declarations and Reports is denied. Defendant's Motion to Exclude Plaintiff's Surveys and Expert Testimony under <u>Daubert</u> is also denied.

The Court has also considered Plaintiff's objections to Defendant's alleged withholding of information and assertions of attorney-client privilege, and Plaintiff's objections are overruled. The Court has reviewed considerable amounts of Defendant's confidential information under seal, and finds that further discovery will not alter the strength of Plaintiff's case.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is hereby DENIED. SO ORDERED, this 17 day of October, 2007.

TERRENCE W. BOYLE
United States District Judge